1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone: (408) 429-6506
    Fax: (408) 369-0752
4   pgore@prattattorneys.com

5   *Attorneys for Plaintiffs*

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12

13  FRANK MORGAN and JANET HOOD,          Case No. **C13-0296**
    individually and on behalf of all others
14  similarly situated,                   **CLASS ACTION AND REPRESENTATIVE
                                          ACTION**
15             Plaintiffs,
                                          **COMPLAINT FOR DAMAGES,
16  v.                                    EQUITABLE AND INJUNCTIVE RELIEF**

17  WALLABY YOGURT COMPANY, INC.          **JURY TRIAL DEMANDED**

18             Defendant.

19

20         Plaintiffs, through their undersigned attorneys, bring this lawsuit against Defendant

21  Wallaby Yogurt Company, Inc. (hereafter, "Wallaby" or "Defendant") as to their own acts, upon

22  personal knowledge, and as to all other matters upon information and belief. In order to remedy

23  the harm arising from Defendant's unlawful conduct which has resulted in unjust profits,

24  Plaintiffs bring this action on behalf of themselves and (1) a nationwide class of consumers or, in

25  the alternative, (2) a statewide class of California consumers both of whom, within the last four

26  years, purchased Wallaby Yogurt products labeled with the ingredient "evaporated cane juice" or

27  "organic evaporated cane juice" (referred to herein as "Misbranded Food Products").

28

                              *Class Action Complaint*

## INTRODUCTION

1.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food has no economic value and is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of the purchase price of the misbrand food.

2.      Wallaby conducts its yogurt business throughout California and the United States.

3.      As part of its overall marketing strategy, Wallaby has recognized the desire of many of its consumers to eat a healthier diet comprised of natural foods and foods that do not contain added sugar.  Recognizing that natural and health claims drive sales, Wallaby actively promotes the health benefits of its products and markets its yogurt products through health food stores nationwide.  Wallaby products are sold at a premium price.

4.      Defendant's website, www.wallabyyogurt.com, is also dedicated to promoting the health qualities of its yogurt products.

## WALLABY'S MISBRANDED YOGURT PRODUCTS

5.      Wallaby currently markets at least seventeen (17) different yogurt products that are misbranded.   The majority of Wallaby's organic low fat and organic non fat blended yogurt product lines are misbranded under federal and California law because they list "evaporated cane juice" sometimes modified by the term "organic" as a listed ingredient[1].

6.      For example, the nutritional facts and ingredients of Wallaby's organic low fat blended yogurt product vanilla flavor lists the following ingredients:

---

[1] Wallaby's seventeen (17) misbranded yogurt products include the following organic low-fat and non-fat flavors in 6 oz. containers:  Banana Vanilla, Black Cherry, Blueberry, Key Lime, Lemon, Maple, Orange Passion Fruit, Peach, Raspberry, Strawberry, Vanilla, Vanilla Bean (low fat) Bartlett Pear, Blackberry, Mango Lime, Strawberry Guava and Vanilla Bean (non-fat).

## Vanilla 6oz

Blended Lowfat Yogurt

### Ingredients

Organic Cultured Pasteurized Reduced Fat Milk, Organic
Evaporated Cane Juice, Organic Extract of Vanilla, Organic
Locust Bean Gum, Pectin.

### Live Active Cultures

L. acidophilus, L. bulgaricus, S. thermophilus, bifidus.

### Certifications

 GRADE A

### Nutrition Facts

| | |
|---|---|
| Serving Size | 6oz (170g) |
| Servings Per Container | 1 |

**Amount Per Serving**

| | |
|---|---|
| Calories 140 | Calories from Fat 25 |

| | % Daily Value* |
|---|---|
| **Total Fat** 2.5g | 4% |
| Saturated Fat 1.5g | 8% |
| Trans Fat 0g | |
| **Cholesterol** 15mg | 5% |
| Sodium 75mg | 3% |
| Total Carbohydrates 24g | 8% |
| Dietary Fiber 0g | 0% |
| Sugars 20g | |
| **Protein** 6g | |

| |
|---|
| Vitamin A 2% |
| Vitamin C 0% |
| Calcium 25% |
| Iron 10% |

\* The Percent Daily Values are based on
a 2,000 calorie diet.

Although the nutritional facts section of this Wallaby Yogurt product list 20 g. of sugar, Wallaby chooses not to list "sugar" or "dried cane syrup" in the ingredient section; rather, it uses the false and misleading ingredient "evaporated cane juice" in place of sugar or dried cane syrup.

7.     In 2009, the U. S. Food and Drug Administration issued its Guidance Letter to Industry regarding ingredients declared as evaporated cane juice. In that letter, the FDA advised the food industry not to use "evaporated cane juice" as an ingredient in product labels because it is "false and misleading" and fails to list the ingredient, sugar, by its usual and common name.

1  Wallaby has actual knowledge of this FDA Guidance Letter and the fact that the FDA considers

2  the use of "evaporated cane juice" to be false and misleading yet continues to use such term in the

3  ingredient section of its product labels[2].

4      8.      Additionally, the FDA's Standard of Identity for yogurt (21 CFR §131.200)

5  prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of

6  identity.  Evaporated Cane Juice is not included on the list of allowed sweeteners which is limited

7  to:

8      sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar;
   refiner's sirup; molasses (other than blackstrap); high fructose, corn sirup,

9      fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract,
   dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the

10     sweeteners listed in part 168 of this chapter [21], except table sirup.  21 CFR
   §131.200 (d) (2).

11     9.      If a manufacturer makes a claim on a food label, the label must meet certain legal

12 requirements that help consumers make informed choices and ensure that they are not misled.  As

13 described more fully below, Defendant has made, and continues to make, false and deceptive

14 claims in violation of federal and California laws that govern the types of representations that can

15 be made on food labels.  These laws recognize that reasonable consumers are likely to choose

16 products claiming to be natural or to have a health or nutritional benefit over otherwise similar

17 food products that do not claim such properties or benefits or that disclose certain ingredients.

18 More importantly, these laws recognize that the failure to disclose the presence of risk-increasing

19 ingredients, like sugar, is deceptive because it conveys to consumers the net impression that a

20 food makes only positive contributions to a diet, or does not contain any ingredients at levels that

21 raise the risk of diet-related disease or health-related condition.

22     10.     Identical federal and California laws regulate the content of labels on packaged

23 food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

24 the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety

25 Code § 109875, *et seq*. (the "Sherman Law").  Under FDCA section 403(a), food is "misbranded"

26

27

28 [2] See Wallaby website:  www.wallabyyogurt.com/about-us/faq#whats-different, (last visited 9-
   28-12).

-4-
*Class Action Complaint*

1    if "its labeling is false or misleading in any particular," or if it does not contain certain

2    information on its label or its labeling. 21 U.S.C. § 343(a).

3        11.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

4    term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those

5    claims that might be technically true, but still misleading.  If any one representation in the

6    labeling is misleading, the entire food is misbranded. No other statement in the labeling cure a

7    misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and

8    the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

9    *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

10   that anyone was actually misled.

11       12.    Defendant's violations of law include the illegal advertising, marketing,

12   distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in

13   California and throughout the United States.

14       13.    Defendant has made and continues to make, unlawful ingredients and all natural

15   claims on food labels of is Misbranded Food Products that are prohibited by federal and

16   California law and which render these products misbranded.  Under federal and California law,

17   Defendant's Misbranded Food Products cannot legally be manufactured, advertised, distributed,

18   held or sold.  Defendant's false and misleading labeling practices stem from its global marketing

19   strategy.   Thus, the violations and misrepresentations are similar across product labels and

20   product lines.

21       14.    Defendant has made, and continues to make, false and deceptive claims on its

22   Misbranded Food Products in violation of federal and California laws.  In particular, Defendant

23   has violated federal and California labeling regulations by listing sugar and/or sugar cane syrup as

24   "evaporated cane juice."   According to the FDA, the term "evaporated cane juice" is not the

25   common or usual name of any type of sweetener, including sugar or dried cane syrup. Sugar or

26   sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and 21 C.F.R. §184.1854, as the

27   common or usual name for material obtained from the crystallization from sugar cane or sugar

28   beet juice that has been extracted by pressing or diffusion, then clarified and evaporated. Cane

1   syrup is defined by regulation in 21 C.F.R. § 168.130. The common or usual name for the solid

2   or dried form of cane syrup is "dried cane syrup."

3       15.     Sugar cane products exist in many different forms, ranging from raw sugars and

4   syrups to refined sugar and molasses. These products are differentiated by their moisture,

5   molasses, and sucrose content as well as by crystal size and any special treatments. Sugar cane

6   products are required by regulation (21 C.F.R. §101.4) to be described by their common or usual

7   names, sugar (21 C.F.R. 101.4(b)(20) and 21 C.F.R. §184.1854 or cane syrup (21 C.F.R.

8   168.1340). Other sugar cane products have common or usual names established by common

9   usage such as molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar and demerara

10   sugar.

11       16.     The FDA has instructed that sweeteners derived from sugar cane syrup should not

12   be listed in the ingredient declaration by names which suggest that the ingredients are juice, such

13   as "Dehydrated Cane Juice" or "Evaporated Cane Juice." The FDA considers such

14   representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C.

15   343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties

16   (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R § 102.5. Nevertheless,

17   Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food

18   Products in violation of federal and California laws that govern the types of representations that

19   can be made on food labels.

20       17.     Defendant's violations of law include the illegal advertising, marketing,

21   distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in

22   California and throughout the United States.

23                   **PARTIES**

24       18.     Frank Morgan is a resident of San Francisco, California, who purchased various

25   flavors of Wallaby's Misbranded Food Products during the four (4) years prior to the filing of this

26   Complaint (the "Class Period").

27

28

19. Janet Hood is a resident of Paradise, California, who purchased various flavors of Wallaby's Misbranded Food Products in Berkeley and San Francisco, California during the four (4) years prior to the filing of this Complaint (the "Class Period").

20. Wallaby Yogurt Company, Inc. is a California corporation doing business in the State of California and throughout the United States of America. Wallaby's manufacturing headquarters are located in American Canyon, California 94503, and it may be served with process by serving its registered agent: Jerry C. Chou, 2315 Bennington Drive., Vallejo, CA 94591.

21. Defendant is a producer of retail yogurt products, including the Misbranded Food Products. Defendant sells its food products to consumers through grocery and other retail stores throughout California and nationwide. Defendant has pursued a plan, design, and course of conduct to unlawfully advertise, market, distribute, deliver, and sell Defendant's Misbranded Food Products to consumers in California and throughout the United States.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

23. The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

24. The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

25. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

26. The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Amended Complaint occurred in California, Defendant is

1    authorized to do business in California, has sufficient minimum contacts with California, and

2    otherwise intentionally avails itself of the markets in California and the United States through the

3    promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by

4    this Court permissible under traditional notions of fair play and substantial justice.

5         27.    Because a substantial part of the events or omissions giving rise to these claims

6    occurred in this District and because this Court has personal jurisdiction over Defendant, venue is

7    proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

8    **FACTUAL ALLEGATIONS**

9    **A.    Identical California And Federal Laws Regulate Food Labeling**

10        28.    Food manufacturers are required to comply with identical federal and state laws

11   and regulations that govern the labeling of food products. First and foremost among these is the

12   FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

13        29.    Pursuant to the Sherman Law, California has expressly adopted the federal

14   labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

15   amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

16   or adopted on or after that date shall be the food regulations of this state." California Health &

17   Safety Code § 110100.

18        30.    In addition to its blanket adoption of federal labeling requirements, California has

19   also enacted a number of laws and regulations that adopt and incorporate specific enumerated

20   federal food laws and regulations. For example, a food product is misbranded under California

21   Health & Safety Code § 110660 if its labeling is false and misleading in one or more particulars;

22   is misbranded under California Health & Safety Code § 110665 if its labeling fails to conform to

23   the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted

24   thereto; is misbranded under California Health & Safety Code § 110670 if its labeling fails to

25   conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. §

26   343(r) and regulations adopted thereto; is misbranded under California Health & Safety Code §

27   110705 if words, statements and other information required by the Sherman Law to appear on its

28   labeling are either missing or not sufficiently conspicuous; is misbranded under California Health

1   & Safety Code § 110735 if it is represented as having special dietary uses but fails to bear

2   labeling that adequately informs consumers of its value for that use; and is misbranded under

3   California Health & Safety Code § 110740 if it contains artificial flavoring, artificial coloring and

4   chemical preservatives but fails to adequately disclose that fact on its labeling.

5       **B.**   **FDA Enforcement History**

6       31.   In recent years the FDA has become increasingly concerned that food

7   manufacturers have been disregarding food labeling regulations. To address this concern, the

8   FDA informed the food industry of its concerns and placed the industry on notice that food

9   labeling compliance was an area of enforcement priority.

10      32.   In October 2009, the FDA issued a Guidance For Industry: Letter regarding Point

11  Of Purchase Food Labeling to address its concerns about front of package labels ("2009 FOP

12  Guidance"). The 2009 FOP Guidance advised the food industry:

13  > … Accurate food labeling information can assist consumers in
    > making healthy nutritional choices. FDA intends to monitor and
14  > evaluate the various FOP [Front-of-Pack] labeling systems and
    > their effect on consumers' food choices and perceptions. FDA
15  > recommends that manufacturers and distributors of food products
    > that include FOP labeling ensure that the label statements are
16  > consistent with FDA laws and regulations. FDA will proceed with
    > enforcement action against products that bear FOP labeling that are
17  > explicit or implied nutrient content claims and that are not
    > consistent with current nutrient content claim requirements. FDA
18  > will also proceed with enforcement actions where such FOP
    > labeling or labeling systems are used in a manner that is false or
19  > misleading.
20

21  http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/Guidance
22  Documents/FoodLabelingNutrition/ucm187208.htm

23      33.   The 2009 FOP Guidance recommended that "manufacturers and distributors of

24  food products that include FOP labeling ensure that the label statements are consistent with FDA

25  law and regulations" and specifically advised the food industry that it would "proceed with

26  enforcement action where such FOP labeling or labeling systems are used in a manner that is

27  false or misleading."

28

34.     Defendant knew or should have known about the 2009 FOP guidance. Despite this fact, Defendant did not remove the unlawful and misleading labels from its Misbranded Food Products.

35.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part, the letter stated:

> Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. ...

> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not

1  attempt to cover all products with violative labels, they do cover a range
2  of concerns about how false or misleading labels can undermine the
   intention of Congress to provide consumers with labeling information
3  that enables consumers to make informed and healthy food choices.

4  ....

5  These examples and others that are cited in our warning letters are not
   indicative of the labeling practices of the food industry as a whole. In
6  my conversations with industry leaders, I sense a strong desire within the
7  industry for a level playing field and a commitment to producing safe,
   healthy products. That reinforces my belief that FDA should provide as
8  clear and consistent guidance as possible about food labeling claims and
   nutrition information in general, and specifically about how the growing
9  use of front-of-pack calorie and nutrient information can best help
10 consumers construct healthy diets.

11      36.     Defendant has continued to mislabel its Misbranded Food Products despite the

12 express admonition not to do so contained in the Open Letter.

13      37.     At the same time it issued its Open Letter, the FDA issued a number of publicly

14 disclosed warning letters to companies whose products were misbranded as result of their

15 unlawful labels.

16      38.     In its 2010 Open Letter to industry the FDA stated that the agency not only

17 expected companies that received warning letters to correct their labeling practices but also

18 anticipated that other firms would examine their food labels to ensure that they were in full

19 compliance with food labeling requirements and make changes where necessary. However,

20 Defendant did not change the labels on its Misbranded Food Products in response to these

21 warning letters.

22      39.     In addition to its general guidance about unlawful labeling practices the FDA has

23 issued specific guidance about the unlawful practices at issue here. For example, in October of

24 2009, the FDA issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice,

25 which advised industry and that the term Evaporated Cane Juice was unlawful.

26 http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/Foo

27 dLabelingNutrition/ucm181491.htm

28

40. In addition to its guidance to industry in general, the FDA has sent warning letters to specific companies regarding specific violations such as the ones at issue in this case.

41. In particular, as noted above, the FDA has issued warning letters to companies for utilizing the unlawful term "evaporated cane juice." The FDA's July 2012 Regulatory Procedures Manual indicates that a warning letter "communicates the agency's position on a matter" and that "[w]arning Letters are issued only for violations of regulatory significance." The FDA publicly posted these letters on its website with the expectation that food manufacturers would revise their product labels to correct any violations outlined in these warning letters.

42. Despite the numerous FDA warning letters and the issuance of the 2009 FDA Guidance on evaporated cane juice and the 2010 Open Letter, Defendant did not remove the unlawful and misleading labels from its Misbranded Food Products.

43. Defendant has continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims as well as the 2009 Guidance on Evaporated Cane Juice and the FDA warning letters on evaporated cane juice. As such, Defendant's Misbranded Food Products continue to run afoul of the 2009 FOP Guidance and the 2009 Guidance on Evaporated Cane Juice and the FDA warning letters on evaporated cane juice as well as federal and California law.

44. Despite the numerous FDA warning letters and the 2009 Guidance on Evaporated Cane Juice or the FDA evaporated cane juice warning letters and the 2010 Open Letter, Defendant has not removed the unlawful and misleading food labeling ingredients from Defendant's Misbranded Food Products.

45. Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make such claims.

46. Even in the face of direct FDA regulation that "Evaporated Cane Juice" is a "false and misleading" term, Defendant continues to use the term at the present time.

//

//

C. **Defendant's Unlawful and Misleading Evaporated Cane Juice Claims**

1. **The Standard Of Identity For Yogurt Does Not Permit The Use Of Evaporated Cane Juice As An Ingredient**

47.     As a matter of law it is unlawful to use evaporated cane juice as an ingredient in yogurt.

48.     The FDA's Standard of Identity for yogurt (21 CFR § 131.200) prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of identity. "evaporated cane juice" is not included on the list of allowed sweeteners which is limited to:

> "sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract, dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the sweeteners listed in part 168 of this chapter [21], except table sirup."   21 CFR §131.200 (d)(2)

49.     As discussed below, "evaporated cane juice" is an unlawful term in that it is a false and misleading name for another food or ingredient that has a common or usual name, namely sugar or dried cane syrup.  A food which purports to be a standardized product but which contains ingredients not recognized in the standard of identity is misbranded, even if the label accurately describes the ingredients.  Even if evaporated cane juice is considered to be the common or usual name of a type of sweetener, that sweetener is not authorized for use in yogurt and if included in violation of the prohibition against doing so, its presence would preclude the product it is added to from being called or sold as yogurt.

2. **Evaporated Cane Juice Is An Unlawful Term Prohibited From Use On A Product Label Or In Its Ingredient List Under Federal and California Law**

50.     21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California pursuant to the Sherman Law, prohibit manufacturers from referring to foods by anything other than their common and usual names.  21 C.F.R. § 101.4, which has also been adopted by California pursuant to the Sherman Law, prohibits manufacturers from referring to ingredients by anything other than their common and usual names.  Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law, or because the products lacked the ingredient entirely. In particular, the Defendant has used the unlawful term "evaporated cane

1  juice" on its food products in violation of numerous labeling regulations designed to protect

2  consumers from misleading labeling practices.

3       51.    The FDA "considers such representations to be false and misleading under section

4  403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food

5  and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21

6  U.S.C. 102.5."

7       52.    In October of 2009, the FDA issued Guidance for Industry: Ingredients Declared

8  as Evaporated Cane Juice, which advised the food industry that:

9       "...the term "evaporated cane juice" has started to appear as an ingredient on food
10      labels, most commonly to declare the presence of sweeteners derived from sugar
        cane syrup. However, FDA's current policy is that sweeteners derived from sugar
11      cane syrup should not be declared as "evaporated cane juice" because that term
        falsely suggests that the sweeteners are juice...
12

13      "Sweeteners derived from sugar cane syrup should not be listed in the ingredient
        declaration by names which suggest that the ingredients are juice, such as
14      "evaporated cane juice." FDA considers such representations to be false and
        misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they
15      fail to reveal the basic nature of the food and its characterizing properties (i.e.,
        that the ingredients are sugars or syrups) as required by 21 CFR 102.5.
16      Furthermore, sweeteners derived from sugar cane syrup are not juice and should
        not be included in the percentage juice declaration on the labels of beverages that
17      are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

18

19      53.    Despite the issuance of the 2009 FDA Guidance, Defendant did not remove the

20  unlawful and misleading food labeling from its Misbranded Food Products.

21      54.    Defendant often lists ingredients with unlawful and misleading names. The

22  Nutrition Facts label of the Misbranded Food Products list "Evaporated Cane Juice" as an

23  ingredient. According to the FDA, "'evaporated cane juice' is not the common or usual name of

24  any type of sweetener, including dried cane syrup." The FDA provides that "cane syrup has a

25  standard of identity defined by regulation in 21 C.F.R. 168.130, the common or usual name for

26  the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, Sugar or sucrose is

27  defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the common or usual name

28

1    for material obtained from the crystallization from sugar cane or sugar beet juice that has been
2    extracted by pressing or diffusion, then clarified and evaporated.

3        55.      Various FDA warning letters have made it clear that the use of the term evaporated
4    cane juice is unlawful because the term does not represent the common or usual name of a food or
5    ingredient. These warning letters indicate that foods that bear labels that contain the term
6    evaporated cane juice are misbranded.

7        56.      Such product labels mislead consumers into paying a premium price for inferior or
8    undesirable ingredients.

9        57.      Defendant's false, unlawful and misleading ingredient listings render products
10    misbranded under federal and California law. Misbranded products cannot be legally sold, have
11    no economic value and are legally worthless. Plaintiffs and the class paid a premium price for the
12    Misbranded Food Products.

13        58.      Defendant has also made the same illegal claims on its websites and advertising in
14    violation of federal and California law.

15        **D.**      **Defendant has Knowingly Violated Numerous Federal and California Laws**

16        59.      Defendant has violated California Health & Safety Code § 110390 which makes it
17    unlawful to disseminate false or misleading food advertisements or statements on products and
18    product packaging or labeling or any other medium used to directly or indirectly induce the
19    purchase of a food product.

20        60.      Defendant has violated California Health & Safety Code § 110395 which makes it
21    unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

22        61.      Defendant has violated California Health & Safety Code §§ 110398 and 110400
23    which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any
24    food that has been falsely advertised.

25        62.      Defendant has violated California Health & Safety Code § 110660 because its
26    product labeling is false and misleading in one or more ways.

27

28

63.     Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

64.     Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented to be for special dietary uses, and their labels fail to bear information concerning their vitamin, mineral, and other dietary properties that federal regulations have prescribed as necessary in order fully to inform purchasers as to their value for such uses.

65.     Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

66.     Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

67.     Defendant has violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the common and usual names of ingredients contained in its food products.  Defendant has also violated the standards set by 21 C.F.R. §§ 101.3 and 131.200 by violating the Standard of Identity for yogurt.

**E.      Plaintiffs Purchased Defendant's Misbranded Food Products**

68.     Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet.

69.     Plaintiffs purchased Defendant, Wallaby's misbranded Yogurt Products, including but not limited to the blueberry, strawberry, raspberry and vanilla flavors, with the listed ingredient "evaporated cane juice" on occasions during the Class Period.

70.     For example, the label of the Wallaby Yogurt low-fat vanilla flavor, 6 oz. container of the type Plaintiffs purchased lists organic evaporated cane juice as an ingredient:

 

LOWFAT
Inside this cup is a creamy blended lowfat yogurt created from the finest organic ingredients. Smooth and subtly sweet, Wallaby Yogurt is as delicious and distinct as the Australian yogurts that inspired it. Wallaby's signature style comes from a small batch cooking process that includes long culturing and gentle handling. The result? Yogurt with naturally creamy texture and delicate flavors.
Hop right in and enjoy!
wallaby

Amount Per Serving
Calories 140 Fat Cal. 25
% Daily Value*
Total Fat 2.5g 4%
Saturated Fat 1.5g 8%
Trans Fat 0g
Cholesterol 15mg 5%
Sodium 75 mg 3%
Total Carb. 24g 8%
Fiber 0g 0%
Sugars 20g
Protein 6g
Vitamin A 2% • Vitamin C 0%
Calcium 25% • Iron 10%
*Percent Daily Values (DV) are based on a 2,000 calorie diet.
USDA ORGANIC
OCT 31

Cane Juice, Organic Extract of Vanilla,
Locust Bean Gum, Pectin.
Our premium organic milk comes from pasture-based family farms in Northern California.
KEEP REFRIGERATED
GRADE A
LIVE ACTIVE CULTURES:
L. acidophilus, L. bulgaricus, S. thermophilus, bifidus.
WALLABY YOGURT COMPANY
110 B Mezzetta Court, American Canyon, Napa County, CA 94503
www.wallabyyogurt.com
CERTIFIED ORGANIC BY QUALITY ASSURANCE INTERNATIONAL
31 12

ORGANIC
ORGANIC LOWFAT YOGURT
CREAMY
NET WT 6OZ (170g)

Nutrition Facts
Serving Size 1 Container
Amount Per Serving
Calories 140 Fat Cal. 25
% Daily Value*
Total Fat 2.5g 4%
Saturated Fat 1.5g 8%
Trans Fat 0g
Cholesterol 15mg 5%
Sodium 75 mg 3%
Total Carb. 24g 8%
Fiber 0g
Sugars 20g
Protein 6g

This container is typical of the other flavors of Wallaby Yogurt products at issue in how it lists evaporated cane juice as an ingredient.

71.     Plaintiffs would not have purchased Defendant's Misbranded Food Products had Plaintiffs known that the Misbranded Food Products contained sugar or dried cane syrup. Plaintiffs read the labels on Defendant's Misbranded Food Products, including the Ingredient, "evaporated cane juice" on the labels before purchasing them.

72.     Plaintiffs relied on Defendant's package labeling including the ingredient, "evaporated cane juice" and based and justified their decision to purchase Defendant's products in substantial part on Defendant's package labeling including the ingredient, "evaporated cane juice".

73.     At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had they known the truth about them.

74.     At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's "evaporated cane juice" claims were unlawful and unauthorized as set forth herein, and would not have bought the products had they known the truth about them.

75.     As a result of Defendant's unlawful "evaporated cane juice" claims, Plaintiffs and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

76.     Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.     Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

77.     A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's Misbranded Food Products had they known they were not capable of being legally sold or held.

78.     As a result of Defendant's unlawful use of the terms "Evaporated Cane Juice or "yogurt," Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive and unlawful scheme.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States or, in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's Yogurt products with the ingredient, "Evaporated Cane Juice" or "Organic Evaporated Cane Juice" (the "Class").

80.     The following persons are expressly excluded from each Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

81.     The following persons are expressly excluded from each Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

82.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and each proposed Class is easily ascertainable.

83.     <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that each Class numbers in the thousands, and that joinder of all Class members is impracticable.

84.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include:

    a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its food products it sold to consumers;

    b.    Whether the food products at issue were misbranded as a matter of law;

    c.    Whether Defendant made unlawful and misleading ingredient and natural claims with respect to its food products sold to consumers;

    d.    Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

    e.    Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

    f.    Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

    g.    Whether Defendant was unjustly enriched by its deceptive practices.

85.     <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiffs bought Defendant's Misbranded Food Products during the Class Period.

1   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices

2   described herein irrespective of where they occurred or were experienced. Plaintiffs and each

3   Class sustained similar injuries arising out of Defendant's conduct in violation of California law.

4   The injuries of each member of each Class were caused directly by Defendant's wrongful

5   conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class

6   members of each class and represents a common thread of misconduct resulting in injury to all

7   members of each Class. Plaintiffs' claims arise from the same practices and course of conduct

8   that give rise to the claims of the member of each Class and are based on the same legal theories.

9           86.     Adequacy: Plaintiffs will fairly and adequately protect the interests of each Class.

10  Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to

11  the interests of either Class's members.   Plaintiffs have retained highly competent and

12  experienced class action attorneys to represent their interests and those of the members of each

13  Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and

14  vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary

15  responsibilities to the member of each class and will diligently discharge those duties by

16  vigorously seeking the maximum possible recovery for each Class.

17          87.     Superiority:   There is no plain, speedy or adequate remedy other than by

18  maintenance of this class action. The prosecution of individual remedies by members of each

19  Class will tend to establish inconsistent standards of conduct for Defendant and result in the

20  impairment of each Class member's rights and the disposition of their interests through actions to

21  which they were not parties. Class action treatment will permit a large number of similarly

22  situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

23  and without the unnecessary duplication of effort and expense that numerous individual actions

24  would engender. Further, as the damages suffered by individual members of the Class may be

25  relatively small, the expense and burden of individual litigation would make it difficult or

26  impossible for individual members of the Class to redress the wrongs done to them, while an

27  important public interest will be served by addressing the matter as a class action.  Class

28  treatment of common questions of law and fact would also be superior to multiple individual

1  actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

2  the litigants, and will promote consistency and efficiency of adjudication.

3      88.     The prerequisites to maintaining a class action for injunctive or equitable relief

4  pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

5  generally applicable to each Class, thereby making appropriate final injunctive or equitable relief

6  with respect to each Class as a whole.

7      89.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

8  are met as questions of law or fact common to each class member predominate over any questions

9  affecting only individual members, and a class action is superior to other available methods for

10  fairly and efficiently adjudicating the controversy.

11      90.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to

12  be encountered in the management of this action that would preclude its maintenance as a class

13  action.

14

15                          **CAUSES OF ACTION**

16                          **FIRST CAUSE OF ACTION**
17                  **Business and Professions Code § 17200,** *et seq.*
                         **Unlawful Business Acts and Practices**
18

19      91.     Plaintiffs incorporate by reference each allegation set forth above.

20      92.     Defendant's conduct constitutes unlawful business acts and practices.

21      93.     Defendant sold Misbranded Food Products in California and throughout the United

22  States during the Class Period.

23      94.     Defendant is a corporation and, therefore, is a "person" within the meaning of the

24  Sherman Law.

25      95.     Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

26  Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

27  misbranded food provisions of Article 6 of the Sherman Law.

28

96. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

97. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

98. Defendant sold Plaintiffs and the Class Misbranded Food Products that were not capable of being sold, or legally held and which had no economic value and were legally worthless. Plaintiffs and each Class paid a premium price for the Misbranded Food Products.

99. As a result of Defendant's illegal business practices, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

100. Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and each Class.

101. As a result of Defendant's conduct, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

102. Plaintiffs incorporate by reference each allegation set forth above.

103. Defendant's conduct as set forth herein constitutes unfair business acts and practices.

104. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

1    105.    Plaintiffs and the members of each Class suffered a substantial injury by virtue of
2    buying Defendant's Misbranded Food Products that they would not have purchased absent
3    Defendant's illegal conduct.

4    106.    Defendant's deceptive marketing, advertising, packaging and labeling of its
5    Misbranded Food Products and its sale of unsalable misbranded products that were illegal to
6    possess were of no benefit to consumers, and the harm to consumers and competition is
7    substantial.

8    107.    Defendant sold Plaintiffs and the members of each Class Misbranded Food
9    Products that were not capable of being legally sold or held and that had no economic value and
10   were legally worthless.  Plaintiffs and the members of each Class paid a premium price for the
11   Misbranded Food Products.

12   108.    Plaintiffs and the members of each Class who purchased Defendant's Misbranded
13   Food Products had no way of reasonably knowing that the products were misbranded and were
14   not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably
15   avoided the injury each of them suffered.

16   109.    The consequences of Defendant's conduct as set forth herein outweigh any
17   justification, motive or reason therefor.  Defendant's conduct is and continues to be unlawful,
18   unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the
19   members of each Class.

20   110.    As a result of Defendant's conduct, Plaintiffs and the members of each Class,
21   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future
22   conduct by Defendant, and such other orders and judgments which may be necessary to disgorge
23   Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food
24   Products by Plaintiffs and the members of each Class.

25
### THIRD CAUSE OF ACTION
26   **Business and Professions Code § 17200, *et seq.***
**<u>Fraudulent Business Acts and Practices</u>**
27

28   111.    Plaintiffs incorporate by reference each allegation set forth above.

112.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

113.   Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

114.   Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were capable of sale, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and the members of each Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

115.   Defendant's fraud and deception caused Plaintiffs and the members of each Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

116.   Defendant sold Plaintiffs and the members of each Class Misbranded Food Products that were not capable of being sold or legally held and that had no economic value and were legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

117.   As a result of Defendant's conduct as set forth herein, Plaintiffs and each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### FOURTH CAUSE OF ACTION
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

118.   Plaintiffs incorporate by reference each allegation set forth above.

119.   Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

1    120.    Defendant sold Misbranded Food Products in California and throughout the United

2    States during the Class Period.

3    121.    Defendant engaged in a scheme of offering Defendant's Misbranded Food

4    Products for sale to Plaintiffs and the members of each Class by way of, *inter alia*, product

5    packaging and labeling, and other promotional materials. These materials misrepresented and/or

6    omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's

7    advertisements and inducements were made within California and throughout the United States

8    and come within the definition of advertising as contained in Business and Professions Code

9    §17500, *et seq.* in that such product packaging and labeling, and promotional materials were

10   intended as inducements to purchase Defendant's Misbranded Food Products and are statements

11   disseminated by Defendant to Plaintiffs and the members of each Class that were intended to

12   reach the members of each Class. Defendant knew, or in the exercise of reasonable care should

13   have known, that these statements were misleading and deceptive as set forth herein.

14   122.    In furtherance of its plan and scheme, Defendant prepared and distributed within

15   California and nationwide via product packaging and labeling, and other promotional materials,

16   statements that misleadingly and deceptively represented the composition and the nature of

17   Defendant's Misbranded Food Products. Plaintiffs and the members of each Class necessarily

18   and reasonably relied on Defendant's materials, and were the intended targets of such

19   representations.

20   123.    Defendant's conduct in disseminating misleading and deceptive statements in

21   California and nationwide to Plaintiffs and the members of each Class was and is likely to

22   deceive reasonable consumers by obfuscating the true composition and nature of Defendant's

23   Misbranded Food Products in violation of the "misleading prong" of California Business and

24   Professions Code § 17500, *et seq.*

25   124.    As a result of Defendant's violations of the "misleading prong" of California

26   Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the

27   expense of Plaintiffs and the members of each Class. Misbranded products cannot be legally sold

28

or held and have no economic value and are legally worthless. Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

125.    Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Untrue Advertising</u>

126.    Plaintiffs incorporate by reference each allegation set forth above.

127.    Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

128.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

129.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and the members of each Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiffs and the members of each Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

130.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and

1  falsely misrepresented the nature of those products. Plaintiffs and the members of each Class

2  were the intended targets of such representations and would reasonably be deceived by

3  Defendant's materials.

4      131. Defendant's conduct in disseminating untrue advertising throughout California

5  deceived Plaintiffs and the members of each Class by obfuscating the contents, nature and quality

6  of Defendant's Misbranded Food Products in violation of the "untrue prong" of California

7  Business and Professions Code § 17500.

8      132. As a result of Defendant's violations of the "untrue prong" of California Business

9  and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of

10  Plaintiffs and the members of each Class. Misbranded products cannot be legally sold or held and

11  have no economic value and are legally worthless. Plaintiffs and the members of each Class paid

12  a premium price for the Misbranded Food Products.

13      133. Plaintiffs and the members of each Class, pursuant to Business and Professions

14  Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such

15  other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and

16  restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members

17  of each Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

20      134. Plaintiffs incorporate by reference each allegation set forth above.

21      135. This cause of action is brought pursuant to the CLRA. This cause of action does

22  not currently seek monetary damages and is limited solely to injunctive relief. Plaintiffs intend to

23  amend this Complaint to seek damages in accordance with the CLRA after providing Defendant

24  with notice pursuant to Cal. Civ. Code § 1782.

25      136. At the time of any amendment seeking damages under the CLRA, Plaintiffs will

26  demonstrate that the violations of the CLRA by Defendant were willful, oppressive and

27  fraudulent, thus supporting an award of punitive damages.

28      137. Consequently, Plaintiffs and the members of each Class will be entitled to actual

1   and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to

2   Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the

3   above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering

4   payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the

5   Court pursuant to Cal. Civ. Code § 1780.

6       138.    Defendant's actions, representations and conduct have violated, and continue to

7   violate the CLRA, because they extend to transactions that are intended to result, or which have

8   resulted, in the sale of goods to consumers.

9       139.    Defendant sold Misbranded Food Products in California and throughout the United

10  States during the Class Period.

11      140.    Plaintiffs and members of the Class are "consumers" as that term is defined by the

12  CLRA in Cal. Civ. Code §1761(d).

13      141.    Defendant's Misbranded Food Products were and are "goods" within the meaning

14  of Cal. Civ. Code §1761(a).

15      142.    By engaging in the conduct set forth herein, Defendant violated and continues to

16  violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair

17  methods of competition and unfair or fraudulent acts or practices in that they misrepresent the

18  particular ingredients, characteristics, uses, benefits and quantities of the goods.

19      143.    By engaging in the conduct set forth herein, Defendant violated and continues to

20  violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods

21  of competition and unfair or fraudulent acts or practices in that they misrepresent the particular

22  standard, quality or grade of the goods.

23      144.    By engaging in the conduct set forth herein, Defendant violated and continues to

24  violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods

25  of competition and unfair or fraudulent acts or practices in that they advertise goods with the

26  intent not to sell the goods as advertised.

27      145.    By engaging in the conduct set forth herein, Defendant has violated and continues

28  to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair

1   methods of competition and unfair or fraudulent acts or practices in that they represent that a

2   subject of a transaction has been supplied in accordance with a previous representation when it

3   has not.

4          146.    Plaintiffs request that the Court enjoin Defendant from continuing to employ the

5   unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If

6   Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class

7   will continue to suffer harm.

8                                    **SEVENTH CAUSE OF ACTION**

9                      **Restitution Based on Unjust Enrichment/Quasi-Contract**

10         147.    Plaintiffs incorporate by reference each allegation set forth above.

11         148.    As a result of Defendant's fraudulent and misleading labeling, advertising,

12   marketing and sales of Defendant's Misbranded Food Products, Defendant was enriched at the

13   expense of Plaintiffs and the members of each Class.

14         149.    Defendant has sold Misbranded Food Products to Plaintiffs and each Class that

15   were not capable of being sold or legally held and which had no economic value and were legally

16   worthless.  Plaintiffs and members of each Class paid a premium price for the Misbranded Food

17   Products.  It would be against equity and good conscience to permit Defendant to retain the ill-

18   gotten benefits it received from Plaintiffs and the members of each Class, in light of the fact that

19   the products were not what Defendant purported them to be.  Thus, it would be unjust and

20   inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the members of

21   each Class of all monies paid to Defendant for the products at issue.

22         150.    As a direct and proximate result of Defendant's actions, Plaintiffs and the

23   members of each Class have suffered damages in an amount to be proven at trial.

24                                          **JURY DEMAND**

25         Plaintiffs hereby demand a trial by jury of their claims.

26                                        **PRAYER FOR RELIEF**

27         WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and

28   on behalf of the general public, pray for judgment against Defendant as follows:

- 30 -
*Class Action Complaint*

1      A.    For an order certifying this case as a national class action, and also a separate and

2 distinct California class action and appointing Plaintiffs and their counsel to represent each Class;

3      B.    For an order awarding, as appropriate, damages, restitution or disgorgement to

4 Plaintiffs and the Class for all causes of action other than the CLRA, as Plaintiffs do not seek

5 monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

6      C.    For an order requiring Defendant to immediately cease and desist from selling its

7 Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to

8 market, advertise, distribute, and sell these products in the unlawful manner described herein; and

9 ordering Defendant to engage in corrective action;

10      D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

11      E.    For an order awarding attorneys' fees and costs;

12      F.    For an order awarding punitive damages;

13      G.    For an order awarding pre-and post-judgment interest; and

14      H.    For an order providing such further relief as this Court deems proper.

Dated: January 18, 2013.      Respectfully submitted,

Ben. F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com