UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MORGAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WALLABY YOGURT COMPANY, INC.,<br><br>Defendant. | Case No. 13-cv-00296-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

## INTRODUCTION

Plaintiffs Frank Morgan and Janet Hood bring this putative class action on behalf of either a nationwide class or statewide class of California customers who, "within the last four years, purchased Wallaby Yogurt products labeled with the ingredient 'evaporated cane juice' or 'organic evaporated cane juice.'" Compl. 1. Defendant Wallaby Yogurt Company, Inc. ("Wallaby"), filed a Motion to Dismiss. After considering the parties' briefs and argument, and for the reasons below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

The Court accepts the following factual allegations in the Complaint as true for purposes of the pending Motion to Dismiss:

Wallaby produces yogurt products, which the plaintiffs allege are misbranded. Plaintiffs Frank Morgan and Janet Hood both "purchased various flavors of Wallaby's Misbranded Food Products" during the past four years. Compl. ¶¶ 18-19. They "care about the nutritional content of food and seek to maintain a healthy diet." Compl. ¶ 68. The plaintiffs purchased Wallaby's yogurt products, "including but not limited to the blueberry, strawberry, raspberry and vanilla flavors, with the listed ingredient 'evaporated cane juice' on occasions during the Class Period."

Compl. ¶ 69.

"As part of its overall marketing strategy, Wallaby has recognized the desire of many of its consumers to eat a healthier diet comprised of natural foods and foods that do not contain added sugar. Recognizing that natural and health claims drive sales, Wallaby actively promotes the health benefits of its products and markets its yogurt products through health food stores nationwide. Wallaby products are sold at a premium price." Compl. ¶ 3. Wallaby's website is "dedicated to promoting the health qualities of its yogurt products." Compl. ¶ 4. The Complaint does not allege that either of the plaintiffs visited Wallaby's website and does not identify the bases for these claims.

Wallaby markets at least 17 different kinds of yogurt that are "misbranded" "because they list 'evaporated cane juice' sometimes modified by the term 'organic' as a listed ingredient." Compl. ¶ 5. They include the following "organic low-fat and non-fat flavors in 6 oz. containers": "Banana Vanilla, Black Cherry, Blueberry, Key Lime, Lemon, Maple, Orange Passion Fruit, Peach, Raspberry, Strawberry, Vanilla, Vanilla Bean (low fat)[,] Bartlett Pear, Blackberry, Mango Lime, Strawberry Guava[,] and Vanilla Bean (non-fat)." Compl. 2 n.1.

"Although the nutritional facts section of [the low-fat vanilla] Wallaby Yogurt product[1] list 20 g. of sugar, Wallaby chooses not to list 'sugar' or 'dried cane syrup' in the ingredient section; rather, it uses the false and misleading ingredient 'evaporated cane juice' in place of sugar or dried cane syrup." Compl. ¶ 6. Wallaby made the same claims on its websites and advertising. Compl. ¶ 58.

"Evaporated cane juice" is another name for "sugar or dried cane syrup." Compl. ¶ 49. Wallaby "has actual knowledge" of a United States Food and Drug Administration ("FDA") Guidance Letter which allegedly "advised the food industry not to use 'evaporated cane juice' as an ingredient in product labels because it is 'false and misleading' and fails to list the ingredient, sugar, by its usual and common name." Compl. ¶ 7. "In addition to its guidance to industry in general, the FDA has sent warning letters to specific companies regarding specific violations such

---

[1] The Complaint does not allege that either of the plaintiffs purchased this product.

as the ones at issue in this case." Compl. ¶ 40.

The FDA has a "Standard of Identify for yogurt" which prohibits inclusion of any "nutritive carbohydrate sweetener[]" other than those explicitly allowed, of which "evaporated cane juice" is not one. Compl. ¶ 48. Thus, putting evaporated cane juice into yogurt prevents the resulting product from being called "yogurt." Compl. ¶ 48. However, "sugar" is an "allowed sweetener" under the Standard of Identity for yogurt. Compl. ¶ 48.

The plaintiffs read Wallaby's labels, but would not have purchased Wallaby's products had they known that the products "contained sugar or dried cane syrup." Compl. ¶ 71. They "relied" and "based and justified their decision to purchase" Wallaby's products "in substantial part on [Wallaby's] package labeling including the ingredient, 'evaporated cane juice.'" Compl. ¶ 72. The plaintiffs "did not know, and had no reason to know" that Wallaby's products "were misbranded," and they "would not have bought the products had they known the truth about them." Compl. ¶ 73. Thus they "have been proximately harmed, and Defendant has been unjustly enriched." Compl. ¶ 78.

Consumers are misled into "paying a premium price for inferior or undesirable ingredients" by the allegedly misleading labels. Compl. ¶ 56. Thousands of consumers purchased Wallaby's mislabeled products, which were "designed to increase sales" through "an extensive labeling, advertising and marketing campaign." Compl. ¶¶ 75-76.

**PROCEDURAL HISTORY**

The plaintiffs bring this suit on behalf of a class defined as "All persons in the United States or, in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's Yogurt products with the ingredient, 'Evaporated Cane Juice' or 'Organic Evaporated Cane Juice.'" Compl. ¶ 79. They bring seven causes of action: (1) violation of the "unlawful" prong of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (2) violation of the "unfair" prong of the UCL; (3) violation of the "fraudulent" prong of the UCL; (4) misleading and deceptive advertising under California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; (5) untrue advertising under the FAL; (6) violation of California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750

1  *et seq.*; and (7) "Restitution Based on Unjust Enrichment/Quasi-Contract." The plaintiff seeks

2  both damages and equitable relief. Wallaby moves to dismiss the Complaint in its entirety.[2]

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. FED. R. CIV. P. 9(b). This is true of claims state law claims, such as those under the UCL, CLRA, and FAL, that are grounded in fraud, which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51

---

[2] Both the plaintiffs and Wallaby filed motions for judicial notice, Dkt. Nos. 13, 21, and the plaintiffs filed an opposition to Wallaby's motion for judicial notice, Dkt. No. 19. While a court generally may not consider material beyond the complaint when considering a Rule 12(b)(6) motion, the court "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (quotation marks omitted). Appropriate materials for judicial notice include "records and reports of administrative bodies." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008). After considering the parties' arguments, the Court takes judicial notice of the following documents because they constitute "records and reports of [an] administrative bod[y]," the FDA: Dkt. No. 13, Exs. 4, 5; Dkt. No. 21, Exs. A-I.

4

1  Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines v. Super. Ct. of Los Angeles Cnty.*, 101

2  Cal. Rptr. 3d 323, 331 (Ct. App. 2009) (CLRA).  The challenged statements must be judged

3  against the "reasonable consumer" standard under the UCL, CLRA, and FAL.  *Consumer*

4  *Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).

5      If a motion to dismiss is granted, a court should normally grant leave to amend unless it

6  determines that the pleading could not possibly be cured by allegations of other facts.  *Cook,*

7  *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

**DISCUSSION**

**I.   THE PLAINTIFFS HAVE ARTICLE III STANDING.**

    Wallaby argues that the plaintiffs do not have standing because they have not plausibly alleged actual injury.  Br. 9.  The Court disagrees.

    Under Article III of the United States Constitution, a plaintiff must show "injury in fact" to have standing in federal court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

    Here, the plaintiffs allege that they purchased Wallaby's yogurt products that list "evaporated cane juice" as an ingredient.  They further allege that they "would not have bought the products had they known the truth about them."  Compl. ¶ 73.  They and other consumers paid "a premium price for inferior or undesirable ingredients."  Compl. ¶ 56.  As a result, they "have been proximately harmed."  Compl. ¶ 78.  As another judge in this district has very recently held, a plaintiff "claiming that she paid for products that she would not otherwise have purchased" is sufficient to confer standing.  *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2013 WL 4833413, at *13 (N.D. Cal. Sept. 6, 2013); *see also Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-02554-RMW, 2013 WL 685372, at *4 (N.D. Cal. Feb. 25, 2013).  While bare, the plaintiffs here plead sufficient facts to establish Article III standing.

    Wallaby argues that standing is lacking because "Plaintiffs paid for food products.  They consumed the products without incident or physical injury.  The goods were not tainted, spoiled, adulterated, or contaminated.  They do not allege that the ingredients were not fully disclosed on

5

1 the side panel or that the nutrition information was false." Br. 10. "Nor do they dispute that the *products* they purchased and consumed would have been *exactly the same* even if the labels had been different . . . ." Reply 8 (original emphases). This argument seriously misconstrues the plaintiffs' contentions. The plaintiffs' point is that they were misled, not that the products would somehow be different merely by placing a different label on the packaging. Wallaby's argument leads to the untenable conclusion that consumers have no legal recourse for intentionally misidentified products. Such a result has no basis in law, and the plaintiffs have standing.

Wallaby claims that *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. 09-cv-1597-CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), and *Boysen v. Walgreen Co.*, No. 11-cv-6262-SI, 2010 WL 2953069 (N.D. Cal. July 19, 2012), support its argument. Br. 10. Neither does. In *Herrington*, the court recognized "overpayment" as a cognizable actual economic injury, but the plaintiffs there did not allege "that they overpaid" for their products. *Herrington*, 2010 WL 3448531, at *4. Conversely, the plaintiffs here alleged that they paid "a premium price for inferior or undesirable ingredients." Compl. ¶ 56. Reading the Complaint in the light most favorable to the plaintiffs, as the Court must, the plaintiffs are presumably claiming overpayment. Thus, they adequately allege injury. In *Boysen*, the plaintiffs failed to establish standing since they "[did] not allege that the products [being challenged] violate FDA guidelines"; here, the plaintiffs do. *Boysen*, 2010 WL 2953069, at *7. *See Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL 2147413, at *11 (N.D. Cal. May 15, 2013) (finding standing and distinguishing *Herrington* and *Boysen* where plaintiff alleged mislabeling and having paid premiums "they would not have otherwise" paid).

**II.     THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY.**

Wallaby argues that the case should be dismissed under the primary jurisdiction doctrine because the FDA is still evaluating the term "evaporated cane juice." Br. 8. The Court declines to invoke this doctrine.

The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

6

The doctrine is discretionary but courts "considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

While food regulation is undoubtedly in the purview of, and an area of "special competence" for, the FDA, Wallaby has given no reason why determining whether a label is misleading is outside the ability of the Court. Such questions are frequently determined by courts. *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) ("[A]llegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading.") (Breyer, J). Other judges in this district have already addressed this issue with regard to products containing evaporated cane juice. *See, e.g.*, *Samet v. Procter & Gamble Co.*, No. 12-cv-01891-PSG, 2013 WL 3124647, at *7 (N.D. Cal. June 18, 2013) (declining to dismiss evaporated cane juice claims under the primary jurisdiction doctrine because "[w]hile it may be true that the FDA is developing a specific regulation on this issue, there is already an FDA regulation governing the use of evaporated cane juice as an ingredient"); *Ivie*, 2013 WL 685372, at *5 (declining to invoke primary jurisdiction doctrine because "[t]he FDA's position is thus clear that it considers 'evaporated cane juice' labels to be 'false and misleading'"). As one stated, "the Court is not persuaded that these claims should be dismissed or stayed on primary jurisdiction grounds. Significantly, the FDA has issued guidance (albeit informal guidance) regarding whether [evaporated cane juice] is consistent with FDA requirement. Thus, at this stage, the Court is not persuaded that the Court will be required to resolve an issue of 'first impression' without the benefit of the FDA's opinion." *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 WL 3703981, at *17 (N.D. Cal. July 12, 2013). The Court agrees with that conclusion.[3]

---

[3] The Court recognizes that other judges have concluded differently. *See, e.g.*, *Hood v. Wholesoy*

### III. THE PLAINTIFFS' YOGURT CLAIMS ARE NOT PREEMPTED.

Wallaby argues that the plaintiffs' claim based on the Standard of Identity for yogurt is preempted by the federal Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1—which amends the federal Food, Drug, and Cosmetic Act ("FDCA")—because federal law "explicitly authorizes the inclusion of evaporated cane juice in a product labeled 'yogurt.'" Br. 12. The Court disagrees.

"There are three categories of preemption: express, field, and conflict. Field and conflict preemption are subcategories of implied preemption." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013) (citation omitted). Because Wallaby does not make clear which kind of preemption it is arguing, the Court addresses all three.

First, the NLEA and FDCA do not expressly preempt the plaintiffs' UCL "unlawful" claim based on the Standard of Identity for yogurt. The NLEA contains an express-preemption provision which says generally that no state or political subdivision of a state may directly or indirectly establish any requirement for a food subject to a standard of identity which is not identical to the requirements of the FDCA. 21 U.S.C. § 343-1(a)(1). However, Wallaby does not argue that the Sherman Law, on which the plaintiffs base their UCL "unlawful" claim, is not identical to the FDCA—indeed, the Sherman Law expressly incorporates the FDCA as California's own law. CAL. HEALTH & SAFETY CODE § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). "Congress specifically anticipated states enacting their own identical laws," and California enacted the Sherman Law as a result, which "is limited to the requirements of the FDCA." *Clancy v. The Bromley Tea Co.*, No. 12-cv-03003-JST, 2013 WL 4081632, at *8-9 (N.D. Cal. Aug. 9, 2013). Because the Sherman Law does not exceed the requirements of the FDCA, the plaintiffs' claims are not expressly preempted. *Kosta*, 2013 WL 2147413, at *7.

---

*& Co. et al.*, No. 12-cv-5550, 2013 WL 3553979 (N.D. Cal. July 12, 2013). However, for the reasons set out in this Order, and because the weight of authority in this district has declined to invoke the primary jurisdiction doctrine in cases nearly identical, if not identical, to this one, the Court is persuaded that abstention is unwarranted.

Second, the plaintiffs' claim is not barred by field preemption. Field preemption may be found when there is a "scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on that subject." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (citation and internal punctuation omitted). However, as one judge in this district noted, "the intent not to impliedly preempt does not need to be inferred because the preemption provisions added to the FDCA by the NLEA include an express savings clause that disavows any implied preemption," which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted . . . ." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009). Based on that provision, since the Sherman Law is not expressly preempted by the NLEA, the plaintiffs' claim also is not barred by field preemption.

Finally, the plaintiffs' claim is not barred by conflict preemption. Conflict preemption occurs when it would be "impossible for a private party to comply with both state and federal requirements," *English*, 496 U.S. at 79, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Here, as explained above, the state law mirrors the federal law, so a private party would not find it impossible to comply with both, and Wallaby has not explained why a private party would. Further, Congress has expressly allowed state laws regulating food labeling so long as they are not expressly preempted; thus, the Sherman Law is not an obstacle to Congress's purpose and objectives.

Judges in this district have rejected the same preemption arguments in similar food misbranding cases where the requirements under the Sherman Law (asserted here through the UCL) are identical to the requirements imposed under the FDCA. *See, e.g.*, *Clancy*, 2013 WL 4081632, at *7-10 ("Courts in this district 'have repeatedly refused to find preemption' where 'a requirement imposed by state law effectively parallels or mirrors the relevant sections of the [FDCA].'"); *Kosta*, 2013 WL 2147413, at *5-9. For all the reasons above, the Court agrees with

9

1  their conclusion.

## IV. THE PLAINTIFFS ARE NOT SEEKING TO ENFORCE FDA REGULATIONS.

Wallaby argues that even if its use of the term "yogurt" violates the Standard of Identity, the plaintiffs have no cause of action because violations of FDA regulations "are the exclusive province of the FDA." Br. 14 (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001)). Wallaby asserts that "[t]he FDCA establishes a uniform federal scheme of food regulation," and "private litigants are prohibited from suing to enforce FDA regulations." Br. 14. Wallaby cites *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), to support its proposition that "a private party . . . may not sue to enforce the FDCA or its regulations' under the guise of another statute that provides a private right of action." Br. 14-15. It claims that "Plaintiffs seek to re-package their attempt to enforce FDA regulations into state-law claims." Br. 15.

"There is no private right of action under the FDCA." *Ivie*, 2013 WL 685372, *1 (citation omitted). Only the federal government may enforce the FDCA. *Id.* Here, however, the plaintiffs are not seeking to enforce the FDCA—they are bringing strictly state law claims that happen to be based on the same requirements of the FDCA. These state laws "exist[] independently of [the FDCA], and violating its requirements would be a valid state cause of action even if the FDA ceased to exist." *Clancy*, 2013 WL 4081632, at *9. Their claims do not "depend on the FDA, except in the sense that the Sherman Law mirrors the requirements of the FDCA." *Id.* Wallaby has cited no authority showing that this is impermissible and, as explained earlier, Congress has not forbidden it through preemption, express or implied.

*Pom Wonderful* does not apply here. In that case, Pom Wonderful sued Coca-Cola under the *federal* Lanham Act (which allows a private right of action), as well as California's Sherman Law, the UCL, and the FAL, arguing that those state laws incorporate FDCA standards. Because the Lanham Act and FDCA can "conflict with each other," the Ninth Circuit found that "the FDCA limits claims under the Lanham Act." *Pom Wonderful*, 679 F.3d at 1175-76. It reasoned that" [a] plaintiff may not [] sue under the Lanham Act to enforce the FDCA or its regulations because allowing such a suit would undermine Congress's decision to limit enforcement of the

10

FDCA to the federal government." *Id.* However, the Ninth Circuit made clear that that is just a "presumption," and said that a court's "task in cases involving potentially conflicting statutes is to give as much effect to both statutes as possible." *Id.* at 1176 (citation and quotation marks omitted). Significantly, the court "limited its ruling to the federal Lanham Act and explicitly declined to address whether plaintiff's state law claims were also preempted." *Brazil*, 2013 WL 1209955, at *7.

Based on this, a number of courts have rejected the contention that state causes of action are end-runs around the FDCA and must be barred. *Id.*; *see also Trazo v. Nestle USA, Inc.*, No. 12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013) ("The FDCA therefore does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws. California chose to exercise this right by enacting the Sherman Law and allowing private plaintiffs to enforce that law through the UCL."); *Khasin v. Hershey Co.*, 12-cv-01862-EJD, 2012 WL 5471153, at *5 (N.D. Cal. Nov. 9, 2012) ("the *Pom Wonderful* holding is inapplicable as to whether section 337(a) preempts the claims based upon California state law"); *Delacruz v. Cytosport, Inc.*, 11-cv-3532-CW, 2012 WL 2563857, at *7-8, n.3 (N.D. Cal. June 28, 2012) ("the Ninth Circuit did not rule on whether the FDCA expressly preempted Pom's state law claims under the UCL and FAL. . . . The Ninth Circuit's preemption ruling was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act."). Wallaby has provided no persuasive reason why allowing the plaintiffs' UCL "unlawful" claim to go forward would frustrate the FDCA or Congress's intent. For all these reasons, the Court finds that the plaintiffs' claims are not barred merely because they mirror the FDCA.

Wallaby argues that *Perez v. Nidek Co.*, 711 F.3d 1109, 1112 (9th Cir. 2013), supports it. Based on that case, Wallaby claims that the plaintiffs are suing "*solely* on an alleged violation of the FDA's standard of identity regulation." Reply 11. Wallaby's appeal to *Perez* is also unavailing. In *Perez*, the Ninth Circuit said that there is a "'narrow gap' through which a state-law claim must fit to escape preemption by the FDCA," which is that "the plaintiff must not be suing *because* the conduct violates the FDCA." *Perez*, 711 F.3d at 1120 (9th Cir. 2013). As explained herein, the plaintiffs are not suing because the conduct violates the FDCA or "*solely* on an alleged

11

violation of the FDA's standard of identity regulation," Reply 11—they are suing because Wallaby's conduct allegedly violates the Sherman Law, which mirrors the FDCA. *See Kane*, 2013 WL 3703981, at *15 ("Plaintiffs are not suing because Defendant's labeling violates the FDCA, but rather because Defendant's labeling is allegedly deceptive and misleading in violation of California law.") (citation and quotation marks omitted).

Finally, Wallaby says that the Ninth Circuit considers "several factors in determining whether a state-law claim 'exist[s] solely by virtue of the FDCA . . . requirements,' any one of which may demonstrate that a claim is preempted under *Buckman*": (1) if "the existence of the[] federal enactments is a critical element in [the plaintiff's] case"; (2) "the timing of the enactment of the state law upon which the plaintiff relies"; and (3) "the nature of the plaintiffs' claimed injury." Reply 11-12 (brackets and ellipses in the original). These factors, Wallaby says, shows that the plaintiffs' claim cannot be allowed.

The three "factors" identified by Wallaby also do not help it. Wallaby mischaracterizes the case law by stating that "any one of [these factors] may demonstrate that a claim is preempted" and using the term "may demonstrate" loosely. Reply 11. The first "factor" takes *Perez*'s language out of context and ignores the principles following it, which state that a plaintiff "is not barred from bringing *any* fraud claim" merely because they are related to FDCA requirements even though a plaintiff "cannot bring a claim that rests *solely*" on those requirements. *Perez*, 711 F.3d at 1119 (9th Cir. 2013). Here, the plaintiffs' claims do not "rest solely" on the FDCA. The second "factor" is taken from a concurring opinion and is not controlling. As for the third "factor," the Court is unaware of the basis for Wallaby's legal contention since it only cites to the entire factual "Background" section of *Perez* and a portion of its "Analysis" section on "Standing." For all the reasons above, Wallaby fails to persuade the Court that the plaintiffs' claim based on a violation of the Standard of Identity for yogurt cannot be considered.

**V. UCL, CLRA, AND FAL CLAIMS**

Claims under the UCL, CLRA, and FAL are generally held to the "reasonable consumer" standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff must show that consumers are "likely to be deceived" by the challenged statements. *Id*. (citation

omitted). As the Ninth Circuit noted, "The California Supreme Court has recognized that these laws prohibit not only [statements] which are false, but also [statements] which, although true, [are] either actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quotation marks and brackets omitted).

### A. Unfair Competition Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

#### 1. The plaintiffs fail to state a claim under the "fraudulent" prong.

The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). The plaintiffs fail to adequately state a claim under the "fraudulent" prong because they do not adequately state how or why the term "evaporated cane juice" is likely to mislead consumers, or how they themselves were misled.

While the plaintiffs claim that they would not have purchased Wallaby's products had they known that the products "contained sugar or dried cane syrup," Compl. ¶ 71, that claim is contradicted by the fact that the plaintiffs nonetheless purchased the products despite the fact that the sugar content is listed right next to the ingredients list, as the images in their Complaint reflect. Compl. 17. While the Ninth Circuit has said that "reasonable consumers should [not] be expected to look beyond misleading representations on the *front* of the box to discover the truth from the ingredient list in small print on the *side* of the box," *Williams*, 552 F.3d at 939 (emphases added), here, the "truth" is literally next to the allegedly misleading representation in the same print size. If a reasonable consumer was concerned about sugar content, he or she can see how much sugar is in a Wallaby product next to the ingredient list. The plaintiffs do not explain what precisely a reasonable consumer would find misleading about the term "evaporated cane juice."

13

The plaintiffs argued in their opposition brief and at the hearing that they never asserted that yogurt was sugar-free. Opp'n 12. Rather, "their complaint is that the use of the term [evaporated cane juice] concealed the fact that the product has added sugar (or syrup) as an ingredient." However, the plaintiffs' argument that their "complaint" is principally about "added sugar"—an allegation which is not in the Complaint—is belied by their blanket claim—which *is* in the Complaint—that they would not purchase products that "contained sugar or dried cane syrup." Compl. ¶ 71. The plaintiffs *did* purchase Wallaby's products despite the clear presence of sugar. The plaintiffs' claims contradict themselves and, thus, do not meet the heightened standard for pleading fraud. If their claim is that they would purchase products containing naturally occurring sugar, but not those with added sugar, they need to allege that with particularity in their complaint.

## 2. The plaintiffs state a claim under the "unlawful" prong.

### i. Evaporated Cane Juice

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty*, 51 Cal. Rptr. 3d at 128. The plaintiffs allege that Wallaby violated California's Sherman Law, which adopted all federal food labeling requirements. Compl. ¶ 67; CAL. HEALTH & SAFETY CODE § 110100(a). Those requirements appear to prohibit using the term "evaporated cane juice" instead of "sugar," so the plaintiffs adequately state a claim under the "unlawful" prong.

Federal law requires calling ingredients by their "common and usual name." 21 C.F.R. §§ 101.3, 203.5. The FDA's Draft Guidance, which interprets its own regulations, "Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as 'evaporated cane juice.'" Brown Decl. Ex. A at 3. The FDA has issued a number of "warning letters" faulting companies for improperly using the term "evaporated cane syrup" instead of "sugar." *See, e.g.*, Brown Decl. Exs. B, E. As another judge in this district observed, "The FDA's position is thus clear that it considers 'evaporated cane juice' labels to be 'false and misleading' under 21 U.S.C. 343(a)(1)." *Ivie*, 2013 WL 685372, at *12.

14

Here, though asserting that there are certain minor differences between the two, Wallaby admits that it is using the term "evaporated cane juice" instead of "sugar" on its products. The Court need not decide now whether Wallaby is in fact violating federal labeling requirements and, thus, the Sherman Law as well. The plaintiffs allege facts that plausibly show that Wallaby is not complying with the law, and that is enough at the pleading stage.

Wallaby contends that the FDA does not ban the use of the term "evaporated cane juice" and that the Draft Guidance explicitly states that it "does not create or confer any rights" and does not "bind" the FDA. Br. 5. Wallaby admits that the FDA's "tentative view was that the term 'syrup' would be preferred over 'juice'" since the FDA questioned whether sugar cane was a fruit, and the FDA has a particular definition for "juice." Br. 5-6. However, Wallaby points out that the FDA made clear in its Draft Guidance that the document "represent[s] the agency's current thinking on the use of the terms 'dried cane syrup' and 'evaporated cane juice' in food labeling" only "when finalized." Reply 6. The FDA then solicited comments and has not issued a final guidance yet.

While the FDA does not "ban" the term "evaporated cane juice," it has expressed its view about how the term may be used under federal law. "As set forth by the Supreme Court in *Auer v. Robbins,* an agency's interpretation of its own regulation, even if set forth in an informal document, is controlling unless plainly erroneous or inconsistent with the regulation." *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 WL 3703981, at *17 (N.D. Cal. July 12, 2013) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (quotation marks and brackets omitted). Furthermore, Wallaby cannot credibly argue that the FDA has such "expertise" that the Court must defer to it under the primary jurisdiction doctrine and then turn around and suggest that the FDA's views, even if tentative, should not guide the Court in determining whether Wallaby may have violated the law. As noted above, at this juncture, the plaintiffs are not required to unequivocally establish that Wallaby has in fact broken the law—they merely need to plead sufficient facts to show that it is plausible that Wallaby broke the law. More to the point, the purpose of pleading is to put Wallaby on fair notice of the bases for the plaintiffs' claims, which the Complaint does. Thus, the plaintiffs' "unlawful" claim under the UCL survives.

### ii. Yogurt Standard of Identity

The plaintiffs fail to adequately state a claim on the theory that the FDA's Standard of Identity for yogurt prohibits putting "evaporated cane juice" in yogurt. "Standards of identity define a given food product, its name, and the ingredients that must be used, or may be used, in the manufacture of the food." Br. 16. As the plaintiffs admit in their Complaint, the FDA's Standard of Identity allows a number of sweeteners to be placed in yogurt, including "sugar (sucrose)," and only explicitly prohibits "table sirup,"[4] which "evaporated cane juice" is not. Compl. ¶ 48 (citing 21 C.F.R. § 131.200). As the plaintiffs also admit in their Complaint, "evaporated cane juice" is simply "sugar." Compl. ¶ 49.

The Standard of Identity for yogurt only regulates what ingredients may be present in yogurt; it does not regulate what those ingredients may be called. *See* 21 C.F.R. § 131.200(a) (identifying ingredients that may be "used" or "included" in yogurt). Contrary to the plaintiffs' assertion, the mere fact that the plaintiffs are calling sugar "evaporated cane juice" and placing it in yogurt does not violate the Standard of Identity. The plaintiffs therefore fail to plead a violation of the "unlawful" prong based on an alleged violation of the FDA's Standard of Identity for yogurt.

### 3. The plaintiffs fail to state a claim under the "unfair" prong.

"California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." *Rubio*, 613 F.3d at 1204; *Davis v. Ford Motor Credit Co.*, 101 Cal. Rptr. 3d 697, 707 (Ct. App. 2009). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provisions." *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006). (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d

---

[4] "Sirup" is another spelling for "syrup."

16

439, 456 (Ct. App. 2000).

Under the first test, because the plaintiffs fail to identify under their unfair-prong pleading what "*specific* constitutional, statutory or regulatory provisions" Wallaby's practice of calling sugar "evaporated cane juice" offends, nor do they claim that the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," they fail to state a claim under the first test of the "unfair" prong. Under the second test, the plaintiffs fail to plead sufficient facts for the Court to say whether the utility of the defendant's conduct does or does not outweigh the gravity of the alleged harm to the plaintiffs, which is their burden. Most importantly, because all of the plaintiffs' claims are grounded in fraud (except the "unlawful" claim), the plaintiffs must sufficiently allege that Wallaby's alleged mislabeling would deceive a reasonable customer. Here, as above, they have not done so. Thus, the plaintiffs fail to state a claim under either test of the "unfair" prong.

**B. The plaintiffs fail to state a claim under the Consumer Legal Remedies Act.**

The CLRA prohibits "[r]epresenting that goods . . . have . . . characteristics, . . . benefits, or quantities which they do not have" or "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another." CAL. CIV. CODE § 1770 (West 2013). The challenged statements must be judged against the "reasonable consumer" standard. *Consumer Advocates*, 8 Cal. Rptr. 3d. at 29.

Because the plaintiffs' CLRA claim is subject to the "reasonable consumer" standard, the plaintiffs fail to state a claim under the CLRA for the same reasons they fail to state a claim under "fraudulent" prong of the UCL. Since "evaporated cane juice" is essentially sugar, as the plaintiffs concede, Wallaby cannot be said to have "[r]epresent[ed] that [their] goods . . . have . . . characteristics, . . . benefits, or quantities which they do not have" or "[r]epresent[ed] that goods . . . are of a particular standard, quality, or grade . . . if they are of another." Nor do the plaintiffs allege that Wallaby misrepresented its products to be sugar-free or healthier, or that they have any other characteristic or benefit that is untrue or misleading. Without alleging any representation or fraudulent omission, no CLRA claim survives.

### C. The plaintiffs fail to state a claim under the False Advertising Law.

The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." *Williams*, 552 F.3d at 938. The statute prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (brackets and quotation marks omitted). The plaintiff must show that the challenged statements will mislead an "ordinary consumer acting reasonably under the circumstances." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 498 (Ct. App. 2003). "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself," and the "misleading character of a given representation appears on applying its words to the facts." *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 46 (Ct. App. 2006) (citations and quotation marks omitted).

For the same reasons that the plaintiffs fail to adequately state a claim under the "fraudulent" and "unfair" prongs of the UCL, and the CLRA, they also fail to adequately state a claim under the FAL. Aside from the yogurt products' packaging itself, the Complaint does not identify any specific advertising that Wallaby did, let alone ones that are false or that the plaintiffs relied upon.

## VI. "RESTITUTION BASED ON UNJUST ENRICHMENT/QUASI-CONTRACT."

Courts are divided over whether restitution based on unjust enrichment or quasi-contract states a cause of action. For the reasons described in *Ang v. Bimbo Bakeries USA, Inc.*, "this Court finds the more persuasive approach is that 'restitution based on unjust enrichment/quasi contract' does not state an independent cause of action that can stand on its own." No. 13-cv-1196-WHO, slip op. at 18 (N.D. Cal. Sept. 25, 2013). The plaintiffs argue that the weight of authority supports a cause of action for unjust enrichment and argue that it "makes no difference that unjust enrichment may be duplicative of other claims." Opp'n 25. But where a "claim is simply a reformulation of plaintiff's UCL, FAL and CLRA claims," a "restitution claim is superfluous." *Ivie*, 2013 WL 685372, at *13. For the reasons above, the plaintiffs fail to state a claim for "restitution based on unjust enrichment/quasi-contract."

18

**CONCLUSION**

The plaintiffs fail to adequately plead that Wallaby's use of the term "evaporated cane juice" violates the "fraudulent" and "unfair" prongs of the UCL, the CLRA, and the FAL. If the basis of the plaintiffs' claims is that it is fraudulent or otherwise illegal to fail to disclose that sugar is added to products that otherwise contain only naturally occurring sugar, they must do so with particularity. They also fail to adequately plead that including "evaporated cane juice" in yogurt violates the "unlawful" prong of the UCL or that they are entitled to relief for "restitution based on unjust enrichment/quasi-contract." However, they adequately plead that using the term "evaporated cane juice" instead of "sugar" violates the "unlawful" prong of the UCL. Accordingly, Wallaby's Motion to Dismiss the plaintiffs' Second, Third, Fourth, Fifth, and Sixth Causes of Action is GRANTED WITH LEAVE TO AMEND. Wallaby's Motion to Dismiss the plaintiffs' First Cause of Action is DENIED except to the extent that the cause of action is premised on a violation of the FDA's Standard of Identity for yogurt.

Because the Court finds that additional pleading would be futile on the plaintiffs' Seventh Cause of Action and First Cause of Action premised on an alleged violation of the FDA's Standard of Identity for yogurt, Wallaby's Motion to Dismiss those claims is GRANTED WITH PREJUDICE.

The plaintiffs shall file any amended complaint within 20 days from the date of this ORDER.

**IT IS SO ORDERED.**

Dated: October 4, 2013

WILLIAM H. ORRICK
United States District Judge