1  Ben F. Pierce Gore (SBN 128515)
2  PRATT & ASSOCIATES
   1871 The Alameda, Suite 425
3  San Jose, CA 95126
   Telephone:  (408) 369-0800
4  Fax:  (408) 369-0752
   pgore@prattattorneys.com
5
   Darren L Brown (*pro hac vice*) (TX SBN 03108350)
6  PROVOST ✶ UMPHREY LAW FIRM, LLP
   490 Park Street
7  Beaumont, TX 77701
   Telephone: (409) 838-8881
8  Fax: (409) 813-8630
   dbrown@pulf.com
9
   *Attorneys for Plaintiffs*
10

11

12                    IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                            OAKLAND DIVISION

15

16  FRANK MORGAN and JANET HOOD,          Case No.  13-CV-00296-WHO
    Individually and on behalf of all others
17  similarly situated                    **FIRST AMENDED CLASS ACTION AND
                                          REPRESENTATIVE ACTION**
18                 Plaintiffs,
                                          **FIRST AMENDED COMPLAINT FOR
19  v.                                    DAMAGES, EQUITABLE AND
                                          INJUNCTIVE RELIEF**
20  WALLABY YOGURT COMPANY, INC.
                                          **JURY TRIAL DEMANDED**
21                 Defendant.

22

23        Plaintiffs, through their undersigned attorneys, bring this lawsuit against Defendant

24  Wallaby Yogurt Company, Inc., (hereafter "Wallaby" or "Defendant") as to their own acts, upon

25  personal knowledge, and as to all other matters upon information and belief.  In order to remedy

26  the harm arising from Defendant's illegal conduct which has resulted in unjust profits, Plaintiffs

27  bring this action on behalf of themselves and (1) a nationwide class of consumers and/or, in the

28  alternative, (2) a statewide class of California consumers both of whom, within the last four years,

purchased any Wallaby yogurt product labeled with the ingredient "evaporated cane juice" and/or "organic evaporated cane juice" referred to herein as "Misbranded Food Products".

## DEFINITIONS

1.     "Class Period" is January 22, 2009 to the present.

2.     "Purchased Products" means Wallaby's Organic Low Fat Yogurt in the following flavors:  blueberry, strawberry, raspberry and vanilla, in 6 oz. containers that were purchased by Plaintiffs during the Class Period. Photographs of a representative label of the vanilla flavor of the Purchased Products are included in paragraph 112 below.

3.      "Class Products" are all Wallaby Yogurt products that list ECJ as an ingredient during the class period, including, but not limited to, the Wallaby Organic Low fat and non-fat blended yogurt flavors in 6 oz. containers listed in Exhibit 1 attached hereto and incorporated herein for all purposes[1].    Each of these Class Products: (1) make the same label misrepresentations, as described herein, as the Purchased Products and (2) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law") as the Purchased Product, as described herein. Class Products are all Wallaby's organic low-fat and non-fat blended yogurt products in 6 oz. containers like the Purchased products. They differ primarily by flavoring.  All are manufactured from the same primary ingredients (Organic Cultured Pasteurized Reduced Fat Milk).  All of the Purchased Products and Class Products contain the ingredients Evaporated Cane Juice (hereafter sometimes referred to as "ECJ"), Pectin, and Locust Bean Gum.  Each of the Class Products are substantially similar to the purchased products in their use of ECJ.

4.     "Misbranded Products" are the Purchased Products and the Class Products identified herein.

5.     Upon information and belief, these Purchased Products and Class Products are Wallaby yogurt products, sold during the class period and listed below in Exhibit 1.  Plaintiffs reserve the right to supplement Exhibit 1 if evidence is adduced during discovery to show that

---

[1] Exhibit 1 lists the Purchased Products and Class Products that are misbranded and at issue in this case, the corresponding label violation and/or misrepresentation, and the statute and/or regulation that is violated thereby.

1   other Wallaby yogurt products had labels which violate the same provisions of the Sherman Law

2   and have the same label representations as the Purchased Products.

3                               **SUMMARY OF THE CASE**

4          6.     Plaintiffs' case has two facets.  The first is the "UCL unlawful" part. Plaintiffs'

5   first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition

6   Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  *See,* First Cause of Action below. Plaintiffs

7   allege that Defendant packages and labels the Misbranded Products in violation of California's

8   Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug &

9   Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  These violations (which do not require a

10  finding that the labels are "misleading") render the Purchased Products and Class Products

11  "misbranded".   Under California law, a food product that is misbranded cannot legally be

12  manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold,

13  possessed, have no economic value, and are legally worthless.   Indeed, the sale, purchase or

14  possession of misbranded food is a criminal act in California and the FDA even threatens food

15  companies with seizure of misbranded products.   This "misbranding" – standing alone without

16  any allegations of deception by Defendant other than the failure to disclose as per its duty, the

17  material fact that the product was illegal, or review of or reliance on the labels by Plaintiffs –

18  gives rise to Plaintiffs' first cause of action under the UCL unlawful prong and is a strict liability

19  claim.

20         7.     The second aspect to this case is the "fraudulent" and "deceptive" part. Plaintiffs

21  allege that the labels on the Misbranded Products – aside from being unlawful under the Sherman

22  Law – are also misleading, deceptive, unfair and fraudulent.  Plaintiffs describe these labels and

23  the ways in which they are misleading.  Each Plaintiff alleges that he/she reviewed the labels on

24  the respective Purchased Products that he/she purchased, reasonably relied in substantial part on

25  the labels, and was thereby deceived, in deciding to purchase these products.  Moreover, the very

26  fact that Defendant sold the Misbranded Products and did not disclose this fact to consumers is a

27  deceptive act in and of itself.  Plaintiffs would not have purchased a product that is illegal to own

28  or possess.  Had Defendant informed Plaintiffs of this fact there would have been no purchases.

1  Plaintiffs relied upon the Defendant's implied representation that Defendant's products were legal

2  that arose from Defendant's material omission of the facts.

3         8.     If a manufacturer makes a claim on a food label, the label must meet certain legal

4  requirements that help consumers make informed choices and ensure that they are not misled. As

5  described more fully below, Defendant has made, and continues to make, unlawful as well as

6  false and deceptive claims in violation of federal and California laws that govern the types of

7  representations that can be made on food labels. These laws recognize that reasonable consumers

8  are likely to choose products claiming to have a health or nutritional benefit over otherwise

9  similar food products that do not claim such properties or benefits or that disclose certain

10  ingredients. More importantly, these laws recognize that the failure to disclose the presence of

11  risk-increasing ingredients is deceptive because it conveys to consumers the net impression that a

12  food makes only positive contributions to a diet, or does not contain any ingredients that raise the

13  risk of diet-related disease or health-related condition.

14         9.     Defendant has made, and continues to make, misleading and unlawful ingredient

15  claims on food labels of its Misbranded Food Products that are prohibited by federal and

16  California law and which render these products misbranded. Defendant's false and misleading

17  labeling practices stem from its global marketing strategy. Thus, the violations,

18  misrepresentations and material omissions are similar across product labels and product lines.

19        10.    Plaintiffs and Consumers have paid a premium price for Misbranded Food

20  Products that they have been misled into believing do not contain added sugars or syrups.

21        11.    Plaintiffs did not know, and had no reason to know, that Defendant's products

22  were misbranded under the Sherman Law and bore food labeling claims despite failing to meet

23  the requirements to make those food labeling claims. Similarly, Plaintiffs did not know, and had

24  no reason to know, that Defendant's products were false and misleading.

25        12.    In order to remedy the harm arising from Defendant's illegal conduct, which has

26  resulted in unjust profits, Plaintiffs bring this action on behalf of a nationwide class of consumers

27  and/or alternatively, a California class of consumers who, within the Class Period, purchased

28  Defendant's Purchased Products and Class Products labeled with the ingredient "evaporated cane

juice" when such ingredient was not "juice" but was actually sugar(s) or syrup(s) and which is not the common and usual name of any sweetener.

13. Identical California and federal laws require truthful, accurate information on the labels of packaged foods. The law is clear: misbranded food cannot legally be sold or possessed and has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a refund of their purchase price.

14. Identical California and federal laws regulate the content of labels on packaged food. The FDCA of requirements were adopted by the California Sherman Law. Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

15. Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.

## BACKGROUND

16. Wallaby currently markets at least seventeen (17) different yogurt products that are misbranded. The majority of Wallaby's organic low fat and organic non fat blended yogurt product lines are misbranded under federal and California law because they list "evaporated cane juice" sometimes modified by the term "organic" as a listed ingredient.

17. The ingredient that Defendant lists as ECJ on the ingredient list of its product labels is "sucrose" as defined in 21 C.F.R. § 184.1854, and for the purposes of ingredient listing is properly listed simply as "sugar" under the applicable labeling regulations.[2] There are no significant nutritional differences between the variety of sucrose that Defendant labels as ECJ and

---

[2] There are many different types of sugars, but for the purposes of food labeling regulations, "sugar" standing alone refers to sucrose. *See* 21 C.F.R. § 101.4(b)(20). Unless the context indicates otherwise, including but not limited to quotations, references to "sugar" in this Complaint refers to sucrose.

1  what consumers know as ordinary refined white sugar.

2          18.     For example, the nutritional facts and ingredients list for Wallaby's organic low fat

3  blended yogurt product vanilla flavor lists the following ingredients:

4                          ## Vanilla 6oz

5                          Blended Lowfat Yogurt

6                          ### Ingredients

7                          Organic Cultured Pasteurized Reduced Fat Milk, Organic
                           Evaporated Cane Juice, Organic Extract of Vanilla, Organic
8                          Locust Bean Gum, Pectin.

9                          ### Live Active Cultures

10                         L. acidophilus, L. bulgaricus, S. thermophilus, bifidus.

11                         ### Certifications

12                          GRADE A

13

14                         ### Nutrition Facts

| Serving Size | 6oz (170g) |
|---|---|
15| Servings Per Container | 1 |

| **Amount Per Serving** | |
|---|---|
16| **Calories** 140 | Calories from Fat 25 |

|  | **% Daily Value\*** |
|---|---|
17| **Total Fat** 2.5g | **4%** |
| Saturated Fat 1.5g | **8%** |
18| Trans Fat 0g | |
| **Cholesterol** 15mg | **5%** |
19| Sodium 75mg | **3%** |
| Total Carbohydrates 24g | **8%** |
| Dietary Fiber 0g | **0%** |
20| Sugars 20g | |
| **Protein** 6g | |
21| Vitamin A 2% | |
| Vitamin C 0% | |
22| Calcium 25% | |
| Iron 10% | |

23

24                         \* The Percent Daily Values are based on
                           a 2,000 calorie diet.

25  Although the nutrition facts panel of this Wallaby Yogurt product list 20 g. of sugar, Wallaby

26  chose not to list "sugar" or ("dried cane syrup"[3]) that it adds as an added ingredient to its

27  _____

[3] In this Complaint Plaintiffs refer to "dried cane syrup" as a possibly permissible alternative to
28  "sugar" because the FDA has suggested that "dried cane syrup" might be an acceptable way to
    refer to the ingredient.

*1st Amended Class Action*
*Complaint*                                          *Case No. CV 13-CV-00296=WHO*

1  Misbranded Food Products in the ingredient list.  Rather, Wallaby uses the false and misleading

2  term "evaporated cane juice" in place of sugar (or dried cane syrup) in order to disguise the fact

3  that it adds sugar as an ingredient to its yogurt products at issue, specifically the sugar, sucrose.

4          19.     The above nutritional facts panel and ingredients list is typical and uniform of all

5  Purchased Products and Class Products in its use of evaporated cane juice as an ingredient and its

6  omission of "sugar" or "syrup" as an added ingredient.  Exhibit 2, attached hereto and

7  incorporated herein for all purposes, contains screenshot photograph printouts from the

8  www.wallabyyogurt.com website of the nutritional facts panel and ingredient list of the

9  Purchased Products and Class Products and demonstrates the similarity of these products in their

10  use of ECJ as an ingredient and the omission of "sugar" and "syrup" from the ingredient list.

11         20.     Wallaby's website, www.wallabyyogurt.com, and all linked Wallaby websites, are

12  incorporated into the label for each of Defendant's respective products. The Purchased Products

13  and the Class Products contain these website addresses. According to the FDA, and as a matter of

14  law, the Wallaby website and all linked websites constitute the labeling of any product bearing

15  these website addresses.

16                                         **PARTIES**

17         21.     Frank Morgan is a resident of San Francisco, California, who purchased various

18  flavors of Wallaby's Misbranded Food Products during the four (4) years prior to the filing of this

19  Complaint.

20         22.     Janet Hood is a resident of Paradise, California, who purchased various flavors of

21  Wallaby's Misbranded Food Products in Berkeley and San Francisco, California during the four

22  (4) years prior to the filing of this Complaint.

23         23.     Wallaby Yogurt Company, Inc. is a California corporation doing business in the

24  State of California and throughout the United States of America.  Wallaby's manufacturing

25  headquarters are located in American Canyon, California 94503, and it may be served with

26  process by serving its registered agent:  Jerry C. Chou, 2315 Bennington Drive., Vallejo, CA

27  94591.  Defendant is properly before the Court.

28         24.     Defendant is a producer of retail yogurt products, including the Misbranded Food

1    Products. Defendant sells its food products to consumers through grocery and other retail stores

2    throughout California and nationwide. Defendant has pursued a plan, design, and course of

3    conduct to unlawfully advertise, market, distribute, deliver, and sell Defendant's Misbranded

4    Food Products to consumers in California and throughout the United States.

5                               **JURISDICTION AND VENUE**

6          25.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

7    because this is a class action in which: (1) there are over 100 members in the proposed class;

8    (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

9    of the proposed class members exceed $5,000,000 in the aggregate.

10         26.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28

11    U.S.C. § 1331, because it arises under the laws of the United States.

12         27.     The Court has jurisdiction over the California claims alleged herein pursuant to 28

13    U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

14    United States Constitution.

15         28.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

16    28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

17    between citizens of different states.

18         29.     The Court has personal jurisdiction over Defendant because a substantial portion

19    of the wrongdoing alleged in this Amended Complaint occurred in California, Defendant is

20    authorized to do business in California, has sufficient minimum contacts with California, and

21    otherwise intentionally avails itself of the markets in California and the United States through the

22    promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by

23    this Court permissible under traditional notions of fair play and substantial justice.

24         30.     Because a substantial part of the events or omissions giving rise to these claims

25    occurred in this District and because this Court has personal jurisdiction over Defendant, venue is

26    proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL ALLEGATIONS**

A.    **Identical California And Federal Laws Regulate Food Labeling**

31.    Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101 et. seq.

32.    Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

33.    In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example and without limitation, a food product is misbranded under California Health & Safety Code § 110660 if its labeling is false and misleading in one or more particulars. Further, a food product is misbranded under California Health & Safety Code §110725 which makes it unlawful for a person to fail to list each ingredient by its common and usual name.

B.    **Defendant's Use of "Evaporated Cane Juice" As An Ingredient on Its Labels is Unlawful**

34.    All of Wallaby's products at issue have unlawfully utilized the illegal term ECJ in the ingredient list on their labels.

35.    Wallaby unlawfully uses the illegal term "Evaporated Cane Juice" on its package labels, instead of the proper term sugar.[4]

---

[4] Plaintiffs allege that the ingredient called "evaporated cane juice" by Defendant was in fact sugar. It is possible, however, that instead of adding crystallized sugar as the ingredient at issue that the Defendant added dried sugar cane syrup as the ingredient at issue. The common and usual name of such a syrup is "dried cane syrup" as detailed in 21 C.F.R. § 168.130. Regardless of whether the ingredient in question was sugar or dried cane syrup, calling the ingredient ECJ is unlawful and violates the same state and federal statutory and regulatory provisions and is contrary to FDA policy and guidance. Moreover, the use of the term ECJ renders the products misbranded and illegal to sell or possess regardless of whether the ECJ refers to sugar or sugar cane syrup. While Plaintiffs allege that the ingredient in question was in fact sugar, the Plaintiffs' allegations that ingredient listed as ECJ was sugar should be read to mean the ingredient listed as

36.     Wallaby uses the term ECJ to make its products appear healthier than a product that contains "added sugar" as an ingredient.  This illegal label term is used to increase sales and to charge a premium by making a product seem healthier than it is in reality by making it appear that no sugar has been added as an ingredient.

37.     Each of the "Purchased Products" and "Class Products" at issue in this case are misbranded in the same way in that they list "evaporated cane juice" in the ingredient list and omit the term "sugar" or "syrup" as an added ingredient.

38.     Wallaby's product labeling fails to accurately identify sugar as an "added ingredient" of its yogurt products. Rather, the label identifies "Evaporated Cane Juice" as an ingredient, despite the fact that the FDCA requires that the ingredient be called "sugar" or "dried cane syrup." The ingredient is not "juice," but is "sugar" or "syrup." FDA regulations provide "[i]ngredients required to be declared on the label or labeling of a food…shall be listed by common or usual name… ." 21 C.F.R. § 101.4 (a)(1); see also, Cal. Health & Safety Code §110725.  The common or usual name for an ingredient is the name established by common usage or by regulation." 21 C.F.R. § 102.5.  These federal regulations have been adopted by California pursuant to the Sherman Law.  As discussed below, ECJ is not the common or usual name of any sweetener as established by common usage or by regulation.

39.     Consistent with the common and usual name regulations, the FDA has specifically warned companies not to use the term "Evaporated Cane Juice."   The FDA has issued these warnings because a label containing the term ECJ (1) is "false and misleading"; and (2) it is a violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and (3) the ingredient in questions is not a juice.

40.     According to the FDA's published policy, "evaporated cane juice" is simply a "false and misleading" way of describing sugar, and therefore, it is improper to disguise sugar in a product as a type of "juice."

41.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared*

ECJ was sugar or, in the alternative, dried cane syrup.

*as Evaporated Cane Juice*, *Draft Guidance*, ("2009 ECJ Guidance") (*emphasis* added) which

advised industry that:

> [T]he term "evaporated can juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

> "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree."…

> As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food… shall be listed by common or usual name…" The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

> Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

> The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." **FDA considers such representations to be false and misleading** under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30). (emphasis added).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.html, see Plaintiffs' Request for Judicial Notice Ex. A, Dkt. 21-2.

42. Wallaby has actual knowledge of this FDA Guidance Letter and the fact that the FDA considers the use of "evaporated cane juice" to be false and misleading yet continues to use such term in the ingredient section of its product labels[5].

---

[5] See Wallaby website: www.wallabyyogurt.com/about-us/faq#whats-different, (last visited 9-28-12). See also Exhibit 3, printout from Wallaby's website dated 9-28-12 attached hereto and

43.     The FDA's position is clear: labels listing "evaporated cane juice" are "false and misleading." ECJ is an unlawful term because it is not the common or usual name for sugar. The ingredient listed as "evaporated cane juice" on Defendant's labels is really "sucrose" as defined in 21 C.F.R. § 184.1854 which is required to be listed as "sugar". While FDA regulations generally provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name," the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20)(emphasis in original). 21 C.F.R. § 184.1854 lists the chemical names and identifies "sucrose", CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside)  as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers and includes products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." The ingredient identified by Defendant as ECJ meets this definition and is sucrose.  As such, Defendant cannot call its sweetener ingredient "evaporated cane juice," but must call it "sugar" or alternatively, "dried cane syrup" pursuant to FDA regulations.

44.     It is well established FDA policy that ingredients must always be declared by their common and usual names.  In its October 2009 *Guidance for Industry: A Food Labeling Guide (6. Ingredient Lists)*, the FDA advises:

> Should the common or usual name always be used for ingredients?
>
> **Answer:** Always list the common or usual name for ingredients unless there is a regulation that provides for a different term. For instance, use the term "sugar" instead of the scientific name "sucrose."

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064880.htm#common; See Plaintiffs' Request for Judicial Notice Exhibit G, Dkt. 21-8.

45.     Defendant could easily have complied with the FDA and Sherman Law labeling

---

incorporated herein for all purposes.  Exhibit 3 is the same as Plaintiffs' Request for Judicial Notice Exhibit M, Dkt 21-14.

1    regulations by simply following the FDA's clear example and listing "sugar" on the ingredient

2    list instead of resorting to the illegal term "evaporated cane juice."  In fact, Defendant does use

3    "sugar" instead of "evaporated cane juice" on its 32 ounce size containers of the same flavors of

4    its yogurt.

5            46.    When the food industry first approached the FDA in 1999 with the idea of calling

6    sugar "evaporated cane juice," the FDA responded with a guidance letter ("2000 Guidance

7    Letter"), saying that certain sweeteners have "well recognized common or usual name[s]" and the

8    common or usual name of "[t]he product extracted from sugar cane is either 'sugar' [21CFR §

9    101.4(b)(20) and 184.1854], or 'cane sirup' [21 CFR § 168.130]."  The 2000 Guidance Letter

10   went on to point out to the industry that sweeteners such as the sugar at issue here:

> should not be declared in the ingredient declaration by names which suggest that
> the ingredients are juice, e.g "evaporated _ juice" or "_nectar", or in such a way as
> to suggest that the ingredients contain no sugar, e.g. "natural extract of _". Such
> representations are false and misleading and fail to reveal the basic nature of the
> food and its characterizing properties, i.e. the ingredients are sugar or syrups. They
> are not juice and we should also point out that it is false and misleading to include
> any of these sweeteners in the fruit juice percentage declaration on the label. As
> you know, many of FDA's criminal prosecutions of manufacturers and seizures of
> fruit juices for economic adulteration have involved precisely these sweeteners
> being misrepresented in such a way as to mislead consumers.
>
> We are concerned about the potential of these ingredients to be labeled in such a
> way as to mislead consumers. We trust that the foregoing will be helpful in
> providing guidance on the appropriate labeling of these ingredients.
>
> www.regulations.gov/#!documentDetail; D=FDA-2009-D-0430-0005.  See Plaintiffs'

Request for Judicial Notice Exhibit B, Dkt. No. 21-3.

        47.    Since it issued the 2000 Guidance Letter, the FDA has sent out numerous warning

letters to food manufacturers putting the food industry on notice that ECJ is not the common or

usual name of any sweetener, and that its use on food labels is unlawful. Pursuant to FDA policy,

warning letters are issued for violations of regulations that the FDA considers to be "violations of

regulatory significance".  The FDA warning letters, some of which were issued before 2009 and

others after the 2009 ECJ Guidance, have expressly stated that "evaporated cane juice" is not the

common or usual name of any type of sweetener and that it is not "juice". See Plaintiffs' Request

for Judicial Notice Exhibits C-F, Dkt. No. 21-4 through 21-7.  The FDA has stated that the proper

1    way to declare this ingredient can be found on the FDA website in the 2009 ECJ Guidance.

2         48.    The FDA has not wavered from its position that "evaporated cane juice" is a false

3    and misleading term that violates numerous labeling regulations and misbrands products since it

4    was first set out in 2000. Despite the FDA's  numerous policy statements, warning letters and

5    guidance, including the issuance of the 2009 ECJ Guidance which merely reiterates a position the

6    FDA has taken for at least a full decade, Wallaby failed to remove the unlawful term ECJ from

7    their misbranded food products' ingredient lists.

8         49.    21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers

9    from referring to ingredients by anything other than their common and usual names. It

10   specifically specifies in subsection (b)(20) that "[f]or purposes of ingredient labeling, the term

11   sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with

12   the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20). 21 C.F.R. § 184.1854 lists

13   the chemical names, CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No.

14   57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar,

15   sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of

16   sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice

17   that has been extracted by pressing or diffusion, then clarified and evaporated[6]."  The ingredient

18   identified as "ECJ" by Wallaby is sucrose and therefore must be listed in ingredient list as sugar.

19        50.    Defendant Wallaby violated 21 C.F.R. §§ 101.3, 101.4 and 102.5[7] (adopted and

20   _____

21   [6] The Federal Register makes clear that the definition of sugar/sucrose in 21 C.F.R. § 184.1854
     was specifically modified by the FDA to cover sugar/sucrose that was obtained by the
22   evaporation of sugar cane juice stating:
     In addition, the agency notes that the description of sucrose in proposed § 184.1854(a) does not
23   explicitly cover the extraction, by pressing, of sugar cane juice from sugar cane or beet juice from
     sugar beets and also does not mention the evaporation of the extracted sugar cane juice or beet
24   juice. Therefore, the agency has modified § 184.1854(a) to include "pressing" as a possible
     extraction procedure and "evaporated" as a step in the refinement of sucrose.
25   53 F.R. 44862.

26   [7] Pursuant to 21 C.F.R. §102.5 the common or usual name must accurately describe the basic
     nature of the food or its characterizing properties or ingredients, and may not be "confusingly
27   similar to the name of any other food that is not reasonably encompassed within the same name"
     (21 C.F.R. 102.5(a)). Defendant's use of the term ECJ fails this requirement because that term
28   does not accurately describe the basic nature of the food or its characterizing properties or
     ingredients, and may not be "confusingly similar to the name of any other food that is not

1   incorporated by reference by Sherman Law § 110100. Sherman Law § 110725 mandates that a

2   product is misbranded if the common and usual ingredient names are not used. Therefore,

3   Wallaby violated the UCL's unlawful prong by misbranding its products with ECJ instead of

4   using the term "sugar"; or the alternative term "dried cane syrup."

5        51.   Plaintiffs' unlawful ECJ claims are brought pursuant to the unlawful prong of

6   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and the Consumers Legal

7   Remedies Act, Cal. Civ. Code §1750, *et seq.*  Plaintiffs allege that Defendant packaged and

8   labeled the Purchased Products and Class Products in violation of California's Sherman Law

9   which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug &

10  Cosmetics Act, 21 U.S.C. § 301 *et. seq.* ("FDCA").  The Purchased Products and the Class

11  Products with this identical type of ECJ labeling violations are "misbranded."

12       52.   The unlawful sale of Misbranded food products that are illegal to sell or possess–

13  standing alone without any allegations of deception by Defendant, other than the implicit

14  misrepresentation that its products are legal to sell or possess, or any review of or reliance on the

15  particular labeling claims by Plaintiffs – gives rise to Plaintiffs' cause of action under the UCL

16  and the CLRA. In short, Defendant's injury causing unlawful conduct is the only necessary

17  element needed for UCL liability under the unlawful prong. All Plaintiffs need to show is that

18  they bought an unlawful product that they would not have otherwise purchased absent the

19  Defendant's failure to disclose the material fact that the product was unlawful to sell or possess.

20  Defendant is strictly liable for its misbranded products pursuant to the above cited provisions of

21  the federal law and Sherman Law.

22       53.   Defendant's act of selling a misbranded product violates Sherman Law § 110760

23  (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is

24  misbranded). The sale of a misbranded product results in an independent violation of the unlawful

25  prong that is separate from the labeling violations listed above. When Plaintiffs purchased

26  ─────────────────────────────────

27  reasonably encompassed within the same name. Here the true nature of the ingredient is a type of
    added sugar added to sweeten food. The characterizing properties of this ingredient were falsely
28  misrepresented as a juice when in fact they were a sugar or syrup. Defendant hid this fact by
    unlawfully using a confusing name (a type of juice) that is not reasonably encompassed within the
    same name.

1   Defendant's misbranded products there was causation and injury even absent reliance on the

2   misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale

3   of an illegal product that is crime to sell and crime to possess. Plaintiffs were deprived of money

4   in an illegal sale and given a worthless illegal product in return. In addition, due to the law's

5   prohibition of possession of such a product, consumers have been unwittingly placed by the

6   Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

7       54.    Thus, in this case, where Defendant unlawfully sold products containing the

8   unlawful term ECJ there is 1) a violation of specific labeling regulations and 2) an independent

9   violation of the unlawful prong due to the Defendant's sale of an illegal product that is unlawful

10  to possess. The Plaintiffs would not have bought the misbranded food products had they known

11  or had Defendant disclosed the material fact that the misbranded food products were illegal to sell

12  and possess. The Plaintiffs were injured by the Defendant's unlawful act of selling them an illegal

13  product that was illegal to sell or possess.

14      55.    Defendant's practices violated a number of laws as set forth in Exhibit 1 and

15  ¶¶101--109 above which render the Purchased Products and Class Products misbranded.

16      56.    Defendant uses the term ECJ to make its products appear healthier than a product

17  that contains added sugar (sucrose) as an ingredient.  This illegal label term is used to increase

18  sales and to charge a premium by making a product seem healthier than it is in reality by making

19  it appear that no sugar (sucrose) has been added as an ingredient to Defendant's Misbranded Food

20  Products.

21      57.    Defendant's labeling as alleged herein is false and misleading and was designed to

22  increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic

23  labeling practice and a reasonable person would attach importance to Defendant's

24  misrepresentations in determining whether to purchase the products at issue.

25      **C.    Defendant's Use of "Evaporated Cane Juice" as an Ingredient on Its Labels is
        Fraudulent, Unfair, Deceptive; and "False and Misleading" Because It
26      Conceals the Fact that Defendant Adds Sugar (Sucrose) to its Yogurt as an
        Ingredient"**

27

28      58.    The Plaintiffs were health conscious consumers who wished to avoid "added

sugars" in the yogurt products they purchased. "Added sugar" is a recognized term that has a distinct meaning as described below. The Plaintiffs were unaware that the Wallaby yogurt products they purchased contained "added sugars" that were added as an ingredient into Defendant's yogurt during processing or preparation. While Plaintiffs were aware that the Wallaby yogurt products contained some sugars, they believed these sugars were naturally occurring sugars that were found *naturally* in the ingredients used by Wallaby such as fruit (fructose) and milk (lactose). The reason that Plaintiffs were unaware of this fact was that Wallaby utilized the false and misleading term "evaporated cane juice" to identify the sugar it added as an ingredient to its yogurt product. The FDA deems the term "evaporated cane juice" to be "false and misleading" because 1) it "fail[s] to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups)" and 2) "sweeteners derived from sugar cane syrup are not juice."

59. Plaintiffs who scanned the ingredient lists of the Purchased Products for forms of added sugar failed to recognize the term "evaporated cane juice" as a form of added sugar. This is hardly surprising since 1) the FDA considers the term to be false and misleading *because* it fails to reveal that the ingredient is a sugar or a syrup; 2) "juice" is considered to be a healthy food that does not contain added sugars, 3) most lists of "added sugars" and sugar aliases do not list evaporated cane juice as an added sugar or sugar alias; and 4) consumer studies confirm that most purchase decisions are made in a fraction of a second and thus the potential for a false and misleading term to mislead is significant. Plaintiffs were thus deceived by Wallaby's use of the false and misleading term ECJ. Members of the public who purchased Wallaby's yogurt products at issue were likewise deceived by Defendant's unethical, unscrupulous business and marketing practice of using the false and misleading term ECJ to identify the sugar (sucrose) that it added to its yogurt.

60. The Nutrition Facts listing of total sugars does not allow a consumer to determine if a product has any added sugars. Consumers are only able to determine the presence of added sugars by reading a product's ingredient list. Companies like Wallaby that mislabel their sugars in the ingredient list with false and misleading terms frustrate a consumer's ability to discover

1    added sugar by hiding it with the use of disguise terms like ECJ. In addition, the inclusion of

2    words such as "juice" or "cane" do not mitigate the false and misleading nature of the term.  In

3    fact, "juice" actually makes the phrase misleading in the eyes of the FDA since ECJ is an added

4    sugar and not a juice. In contrast, the failure to utilize words like "sugar" or "syrup" to describe

5    the ingredient identified by Wallaby as evaporated cane juice is false and misleading because it

6    conceals the fact that the ingredient is in fact an added sugar.

7        61.    The Plaintiffs' desire to avoid added sugars was reasonable. Added sugar is a

8    known health risk that consumers are advised to avoid by the United States government, scientific

9    and educational institutions, and food related companies such as grocery store chains and food

10   manufacturers. All of these entities know and publish: 1) there is a distinction between added

11   sugars and naturally occurring sugars; 2) added sugars have no beneficial nutritional value, and

12   contribute only empty calories and have recognized health risks 3) consumers should either

13   eliminate or greatly limit their consumption of added sugars and foods containing added sugars;

14   4) it is the ingredient list and not the nutrition facts panel of a food's label that informs consumers

15   of the presence of added sugars; and 5) consumers need to be careful to avoid added sugar that is

16   disguised by another name.

17       62.    Disclosure of the total number of grams of sugar in the Nutrition Panel of a foods

18   label does not render the use of ECJ in the ingredients list non-misleading.  First, the total sugars

19   disclosure does not disclose the presence of added sugars as opposed to sugars occurring naturally

20   in other ingredients.  Second, the disclosure of the total sugars does not disclose the nature of the

21   added sugars.  Not all sugars are created equal.  Some, like honey for instance, may be perceived

22   by reasonable consumers as relatively innocuous or even nutritionally beneficial.  Others, like

23   high fructose corn syrup, have acquired a negative reputation, and many reasonable consumers

24   seek to avoid them.  Sucrose – the one that consumers know simply as "sugar" on food ingredient

25   lists – is decidedly in the latter category, especially among the health-conscious consumers that

26   Defendant targets.  Thus, regardless of any total sugars disclosure, the use of the term ECJ on the

27   ingredient list is doubly misleading because it conceals both the presence of added sugar in

28   general, *and* the nature of the sugar added.

63.     The 2010 Dietary Guidelines promulgated by U.S. Department of Health and Human Services and the U.S. Department of Agriculture make clear that 1) there is a distinction between "added sugars" and naturally occurring sugars; 2) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 3) it is the ingredient list and not the nutrition facts portion of a food's label that informs consumers of the presence of "added sugars." Available at:

http://www.health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf.

64.     The 2010 Dietary Guidelines indicate that consumers should "[l]imit calorie intake from … added sugars "and "[c]hoose foods prepared with little or no added sugars." *Id.* It further states: "*[u]se the Nutrition Facts label* to choose …. packaged foods with less total sugars, and *use the ingredients list* to choose foods with little or no added sugars." *Id. These* Guidelines indicate that:

> An important underlying principle is the need to control calorie intake to manage body weight and limit the intake of food components that increase the risk of certain chronic diseases. This goal can be achieved by consuming fewer foods that are high in sodium, solid fats, **added sugars**, and refined grains and, for those who drink, consuming alcohol in moderation.
> *Id. (emphasis added).*

65.     The 2010 Dietary Guidelines also define "added sugars":

> **"added sugars**—Sugars, syrups, and other caloric sweeteners that are added to foods during processing, preparation, or consumed separately. Added sugars do not include naturally occurring sugars such as those in fruit or milk. Names for added sugars include: brown sugar, corn sweetener, corn syrup, dextrose, fructose, fruit juice concentrates, glucose, high-fructose corn syrup, honey, invert sugar, lactose, maltose, malt syrup, molasses, raw sugar, turbinado sugar, trehalose, and sucrose".

*Id.*

66.     Further, the 2010 Dietary Guidelines make clear that consumers who wish to avoid added sugars should read the ingredient list and cannot rely on the Nutrition Facts line item listing of total sugars:

> THE FOOD LABEL: A USEFUL TOOL
>
> "Using the Food Label to Track Calories, Nutrients, and Ingredients" (Appendix 4) provides detailed guidance that can help Americans make healthy food choices.
>
> The Nutrition Facts label provides information on the amount of calories;

beneficial nutrients, such as dietary fiber and calcium; as well as the amount of certain food components that should be limited in the diet, including saturated fat, trans fat, cholesterol, and sodium.

**The ingredients list can be used to find out whether a food or beverage contains solid fats, added sugars**, whole grains, and refined grains.

*Id.* (emphasis added).

67.     These Guidelines confirm that it is the ingredients list and not the Nutrition Facts portion of the label that lets consumers determine whether added sugars are present in a product such as Wallaby's yogurt that contains milk and/or fruit ingredients.  Appendix 4 states:

INGREDIENTS LIST

The ingredients list can be used to find out whether a food or beverage contains synthetic trans fats, solid fats, added sugars, whole grains, and refined grains.

NUTRITION FACTS LABEL
The Nutrition Facts label provides the total amount of sugars (natural and added), but does not list added sugars separately. Natural sugars are found mainly in fruit and milk products. Therefore, for all foods that do not contain any fruit or milk ingredients, the total amount of sugars listed in the Nutrition Facts label approximates the amount of added sugars. For foods that contain fruit or milk products, added sugars can be identified in the ingredients list.

The ingredients list can be used in the same way to identify foods that are high in added sugars. Added sugars that are often used as ingredients are provided in Table A4-2.

68.     Table A4-2 of the 2010 Dietary Guidelines lists a number of examples of added ingredients that can be listed as an ingredient in a food product's ingredient list:

Examples of Added Sugars That Can Be Listed as an Ingredient:

Anhydrous dextrose, Lactose, Brown sugar, Malt syrup, Confectioner's powdered sugar, Maltose, Corn syrup, Maple syrup, Corn syrup solids, Molasses, Dextrin Nectars (e.g., peach nectar, pear nectar), Fructose Pancake syrup, High-fructose corn syrup, Raw sugar, Honey, Sucrose, Invert sugar, Sugar, and White granulated sugar.

69.     The list above does not indicate that ECJ is a form of added sugar. However, the 2010 Dietary Guidelines indicate that while ECJ is not recognized by the FDA as an ingredient name, this added sugar is sometimes listed as an ingredient on the labels of food products stating:

Other added sugars may be listed as an ingredient but are not recognized by FDA as an ingredient name. These include cane juice, evaporated corn sweetener, fruit

juice concentrate, crystal dextrose, glucose, liquid fructose, sugar cane juice, and fruit nectar.

*Id.*

70.     Other federal government agencies adopt a similar approach to added sugars. For instance, the National Institute of Health 1) confirms the health risks posed by added sugar, 2) indicates the need to read the ingredient list to find added sugars and 3) utilizes a list that fails to include the false and misleading term evaporated cane juice.

71.     The National Institute of Health publishes the following about "added sugar":

Added Sugars

With both the USDA Food Patterns and the Dietary Approaches to Stop Hypertension (DASH) Eating Plan, added sugars mean more calories without more nutrients. For some people, added sugars can lead to higher levels of fats in the blood, raising their risk of heart disease.

Read the ingredients label to see if the processed food you are eating has added sugar. Key words on the label to look for:

- brown sugar
- corn sweetener
- corn syrup
- dextrose
- fructose
- fruit juice concentrate
- glucose
- high-fructose corn syrup
- honey

- invert sugar
- lactose
- maltose
- malt syrup
- molasses
- raw sugar
- sucrose
- sugar
- maple syrup

http://www.nia.nih.gov/health/publication/whats-your-plate/solid-fats-added-sugars

72.     The United States government's approach to added sugars is echoed by other scientific, educational and medical entities. For example, the American Heart Association ("AHA") states the following about "added sugar":

There are two types of sugars in American diets: naturally occurring sugars and added sugars.

- Naturally occurring sugars are found *naturally* in foods such as fruit (fructose) and milk (lactose).

- Added sugars include *any* sugars or caloric sweeteners that are *added* to foods or beverages during processing or preparation (such as putting sugar in your coffee or adding sugar to your cereal). Added sugars (or added sweeteners) can include natural sugars such as white sugar, brown sugar and honey as well as other caloric sweeteners that are chemically manufactured (such as high fructose corn syrup).

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp

73.     The American Heart Association cautions consumers that the Nutrition Facts panel is not the place to look for "added sugar":

**Finding added sugars in food**

Unfortunately, you can't tell easily by looking at the nutrition facts panel of a food if it contains added sugars. The line for "sugars" includes both added and natural sugars. Naturally occurring sugars are found in milk (lactose) and fruit (fructose). Any product that contains milk (such as yogurt, milk or cream) or fruit (fresh, dried) contains some *natural* sugars.

Reading the ingredient list on a processed food's label can tell you if the product contains added sugars, just not the exact amount if the product also contains natural sugars.

Names for added sugars on labels include:

- Brown sugar
- Corn sweetener
- Corn syrup
- Fruit juice concentrates
- High-fructose corn syrup
- Honey
- Invert sugar
- Malt sugar
- Molasses
- Raw sugar
- Sugar
- Sugar molecules ending in "ose" (dextrose, fructose, glucose, lactose, maltose, sucrose)
- Syrup

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp.   Like the United States government's list, this list also fails to contain the term evaporated cane juice.

74.     In addition, the AHA warns that consumers "need to reduce added sugar" in their diets and therefore the AHA has recommended very strict added sugar guidelines stating:

Over the past 30 years, Americans have steadily consumed more and more added sugars in their diets, which has contributed to the obesity epidemic. Reducing the amount of added sugars we eat cuts calories and can help you improve your heart health and control your weight.

The American Heart Association recommends limiting the amount of added

sugars you consume to no more than half of your daily discretionary calorie allowance. For most American women, this is no more than 100 calories per day and no more than 150 calories per day for men (or about 6 teaspoons per day for women and 9 teaspoons per day for men) *(emphasis added)*.

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp

75.     Similarly, the Harvard School of Public Health takes the same position with respect to added sugar. According to the Harvard School of Public Health:

Added Sugar in the Diet

Your body doesn't need to get any carbohydrate from added sugar. That's why the Healthy Eating Pyramid says sugary drinks and sweets should be used sparingly, if at all, and the Healthy Eating Plate does not include foods with added sugars.

The American Heart Association (AHA) has recommended that Americans drastically cut back on added sugar to help slow the obesity and heart disease epidemics.

- The AHA suggests an added-sugar limit of no more than 100 calories per day (about 6 teaspoons or 24 grams of sugar) for most women and no more than 150 calories per day (about 9 teaspoons or 36 grams of sugar) for most men.

- There's no nutritional need or benefit that comes from eating added sugar. A good rule of thumb is to avoid products that have a lot of added sugar

http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content/.

76.     The Harvard School of Public Health further notes that "[S]ome ingredient lists mask the amount of sugar in a product and informed consumers how to avoid being fooled by such practices stating:

**How to spot added sugar on food labels**

Spotting added sugar on food labels can require some detective work. Though food and beverage manufacturers list a product's total amount of sugar per serving on the Nutrition Facts Panel, they are not required to list how much of that sugar is added sugar versus naturally occurring sugar. That's why you'll need to scan the ingredients list of a food or drink to find the added sugar.

When you eat an apple or carrot or bowl of steel-cut oatmeal, you know what you are eating—an apple or carrot or steel-cut oats. That's not the case with ready-to-eat breakfast cereals, cookies, frozen dinners, or any of the thousands of other processed foods. Think of these as terra incognita, and the ingredient list on the package as your map to it. But like an old pirate map, some ingredient lists are designed to confuse and muddle rather than lead you to the treasure. The biggest sleight of hand involves sugar. ……

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The Nutrition Facts Label isn't much help. By law, it must list the grams of sugar in each product. But some foods naturally contain sugar, while others get theirs from added sweeteners, and food labeling laws don't require companies to spell out how much sugar is added….

http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content/ .

77.     A term like ECJ that purports to be a juice conceals the presence of added sugars because by definition, 100% juice is a source of natural sugars and no added sugars. Thus as confirmed by University of Florida "100% fruit juice has no added sugars." https://edis.ifas.ufl.edu/pdffiles/FY/FY135800.pdf. Thus, accurate descriptions are necessary in ingredient lists because:

> although the [nutritional facts] panel is helpful for finding total sugar, it does not differentiate between natural sugar and added sugars. For example, sugar would be listed on the Nutrition Facts Panel for both 100% orange juice and an orange drink, but only the orange drink will have sugar added to it.

*Id.*

78.     The Mayo Clinic also is on record confirming 1) the difference between added sugar and naturally occurring sugar; 2) the health risks posed by added sugar; 3) the need to avoid added sugars and limit consumption of foods containing added sugars; 4) the importance of the ingredient list in identifying added sugar; 5) the inability to use the Nutrition Facts line item for sugar to determine whether added sugar was present and 6) the numerous names used for added sugars. According to the Mayo Clinic:

> **Added sugar: Don't get sabotaged by sweeteners -**
>
> **Do you know how much sugar is in your diet? See why added sugar is a concern and how you can cut back.**
>
> "Added sugar" refers to sugars and syrups added to foods during processing.
>
> **Why is added sugar a problem?**
>
> Foods with a lot of added sugar contribute extra calories to your diet but provide little nutritional value. In addition, added sugar is often found in foods that also contain solid fats.
>
> Eating too many foods with added sugar and solid fats sets the stage for potential health problems. . .

http://www.mayoclinic.com/health/added-sugar/my00845.

79.     The Mayo Clinic Reports that:

Identifying added sugar can be confusing. Most people look at the Nutrition Facts part of the label for the total number of grams of sugar in a serving of the product. It's important to realize, however, that the amount shown includes natural sugars found in certain ingredients, such as grain, fruit and milk. The only reliable way to identify added sugar is to look at the ingredient list….Know that sugar goes by many different names, though.

**Different names for added sugar**

Sugar goes by many different names, depending on its source and how it was made. This can also make it hard to identify added sugar, even when you read ingredient lists and food labels.

http://www.mayoclinic.com/health/added-sugar/my00845.

80.     Not only do government and nationally recognized health institutions and associations advise on the manners in which to detect and determine added sugar, but reputable food related companies such as grocery store chains and food manufacturers have adopted a similar approach with respect to added sugars: For example the Shoprite chain of grocery stores states that:

The nutrition panel of packaged foods lists the total amount of sugars in a serving of food. This number includes sugars found naturally in food as well as the sugar that is added. The ingredient list must state all the sugars which are added to the product.

Sugar can often be "disguised" on food labels since there are many different forms and names for sugar. ….

What's the bottom line?

Choose healthy foods that contain natural sugars most often and limit your consumption of foods high in added sugar. Be an informed shopper. Read the ingredient panel to be sure you are truly getting a product without a lot of added sugar.

http://www.shoprite.com/for-your-family/dietitians-corner/archives/sugar-by-any-other-name-is-still-sugar/

81.     Similarly, the Publix chain of grocery stores states:

Controlling added sugars is important because it helps us avoid excess calories, which can lead to increased weight and triglycerides—two factors that can put you at higher risk of obesity, heart attack and stroke.

The AHA suggests women limit their intake of added sugars to 6 teaspoons daily; men should limit intake to 9 teaspoons. The recommendations do not apply to naturally occurring sugars, such as those found in fruits, vegetables or dairy products.

Check food label ingredients for hidden sugars like corn syrup, fructose, dextrose, molasses or evaporated cane juice.

http://www.publix.com/wellness/greenwise/products/ProductDetail.do?id=1930.

82.     Similarly, Atkins Nutritionals, the company behind the Atkins line of food products states:

**Finding Added Sugars**

Taking control of your health is about focusing on carbohydrate foods that are high in nutrients and fiber. That's why added sugar in any form should be avoided in the weight loss phases of Atkins. No matter what it's called sugar has virtually no nutritional value.

**What's the Difference?**

*Naturally occurring sugars,* found in dairy products or in fruit or vegetables, for instance, are an organic part of the food, and they are perfectly acceptable. An example: sugar free ice cream has some naturally occurring sugars from the milk and cream with which it is made. That same ice cream might also include some strawberries (which contain fruit sugar). Both sugars are natural, making the ice cream suitable for healthy lifestyles.

*Added sugars* lurk in many foods and not just in the form of sucrose (table sugar). Added sugar is often disguised with misleading names in packaged foods. These include cane sugar and evaporated cane juice, brown sugar, beet sugar or any other ingredient ending in "sugar," as well as syrups (or syrup solids) such as maple, corn or cane. Many ingredients ending in "ose" are also sugars, although exceptions include sucralose and cellulose.

To complicate matters, a natural sugar, such as fructose, is considered an added sugar from a regulatory point of view and can also take the form of an added sugar when it's included in processed foods. The Nutrition Facts panel tells you the number of grams of sugars in a serving, but because it lumps together all sugars, it does not distinguish between integral and added sugars. Instead, you'll need to go to the ingredients list. If you see fructose listed instead of fruit, for example, even though that sugar has a natural source, you'll know it's an added ingredient you should limit your exposure to. Here are various aliases for added sugars:  brown sugar, cane syrup, corn sweetener, corn syrup, corn syrup solids, dextrose, fructose, fruit juice concentrate, galactose, glucose, high-fructose corn syrup, honey, invert sugar, lactose, malt, maltose, malt syrup, maple syrup, molasses, raw sugar, rice syrup, and sucrose.

http://www.atkins.com/Science/Articles---Library/Sugar/Finding-Added-Sugars.aspx

83.     In addition, a number of food evaluation systems recognize the unhealthiness and lack of desirability of added sugar.  Therefore, systems like NuVal penalize products like Wallaby Yogurt which contain added sugar and specifically distinguish between added sugar and naturally occurring sugar.  By hiding the sugar in its yogurt, Wallaby was able to make its yogurt

look more nutritious than its competitor's yogurts and more nutritious than it actually was.

84.     All varieties of Wallaby yogurt other than its plain varieties have significant added sugar. This added sugar is hidden from consumers, such as the Plaintiffs, by Wallaby's unlawful practice of using the false and misleading term "evaporated cane juice" in the ingredient lists of its flavored yogurts instead of the term sugar which is the name mandated by state and federal law. The labeling laws violated by Wallaby were designed to ensure that consumers receive the information they need to make informed decisions so that, for example, consumers looking for added sugar can find it when they look for it in the ingredient list.

85.     The Plaintiffs would not have bought the Wallaby yogurt products that they purchased had they known they contained "added sugar." Although Plaintiffs read the ingredient lists of the Wallaby yogurt they purchased, they did not realize that evaporated cane juice was 1) sugar or a syrup; 2) a form of added sugar; 3) a refined sugar or 4) not a juice. Plaintiffs' failure to realize that evaporated cane juice was 1) sugar or a syrup; 2) a form of added sugar; 3) a refined sugar or 4) not a juice was reasonable and any reasonable consumer would have been mislead by the false and misleading term evaporated cane juice. Plaintiffs would not have bought the Wallaby yogurt products they purchased if they had known they contained an added sugar or syrup; a refined sugar or sweetener; or that evaporated cane juice was not a juice but rather sugar or syrup and an added sugar and a refined sweetener. The Nutrition Facts panels of the Wallaby yogurts purchased by Plaintiffs did not reveal the presence of added sugars, and the false and misleading term evaporated cane juice in the ingredient list concealed the presence of the added sugar or refined sugar.

86.     When Plaintiffs read the ingredient list they did not realize that there was added sugar in the Defendant's yogurt because they did not recognize the term ECJ as being sugar because the term (which the FDA has held to be a false and misleading term) misled them. ECJ was not the common or usual term for the ingredient in question which was actually a refined form of sugar or cane syrup. Defendant's use of a term that included the word juice, but not the words sugar or syrup, failed to accurately characterize the ingredient in question and the FDA concurs with this allegation. While Plaintiffs might have been able to determine the total amount

1    of sugars in the product from the nutritional facts table, assuming it was accurate, they could not

2    determine if there were any added sugars/syrups because the Defendant's ingredient lists

3    concealed the presence of such added sugars by the use of a the a false and misleading term ECJ.

4    Plaintiffs could also not determine the relative amount of any added sugars because the term ECJ

5    was not recognized by them as a sugar and thus its relative position in the ingredient list (where

6    ingredients are required to be listed in descending order by weight) did not inform them of the

7    level of added sugar.

8    87.    Defendant's failure to utilize either the term "sugar" or the term "syrup" to

9    describe the ingredient it identified as evaporated cane juice failed to reveal the basic nature of

10   the ingredient and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups).

11   According to the FDA:

12   > FDA's regulatory approach for the nomenclature of sugar and syrups is that sugar
     > is a solid, dried, and crystallized food; whereas syrup is an aqueous solution or
13   > liquid food. FDA's regulations permit the term "sugar" as part of the name for
     > food that is solid, dried, and crystallized, specifically the standards of identity for
14   > dextrose monohydrate (21 CFR 168.111) and lactose (21 CFR 168.122), and the
     > GRAS regulation for sucrose (21 CFR 184.1854). FDA's regulations provide for
15   > the terms "syrup" or "sirup" for food that is liquid or is an aqueous solution,
     > specifically the standards of identity for glucose sirup (21 CFR 168.120), cane
16   > sirup (21 CFR 168.130), maple sirup (21 CFR 168.140), sorghum sirup, (21 CFR
     > 168.160), and table sirup (21 CFR 168.180).  FDA's approach is consistent with
17   > the common understanding of sugar and syrup as referenced in a dictionary.

18   88.    Based on the inclusion of the word "evaporated" in the term evaporated cane juice,

19   Plaintiffs would show that the sweetener in the Defendant's yogurt is sugar, a dried crystallized

20   ingredient, as defined in 21 C.F.R. § 101.4(b)(20) and 21 C.F.R. § 184.1854. However, even if

21   the added sugar was a form of cane syrup, it would make no difference. In either case the

22   Defendant utilized a false and misleading term, evaporated cane juice, to conceal the fact that

23   Defendant was utilizing an added sugar to sweeten it yogurt.   In either case the false and

24   misleading term, evaporated cane juice, failed to reveal the basic nature of the ingredient and its

25   characterizing properties (*i.e.*, that the ingredients are sugars or syrups).

26   89.    While FDA regulations provide that "[t]he name of an ingredient shall be a

27   specific name and not a collective (generic) name" the regulations expressly provide that "[f]or

28   purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from

1   sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter. 21 C.F.R.

2   § 101.4(b)(20)(emphasis in original). 21 C.F.R. § 184.1854 list the chemical names, CAS number

3   and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-

4   D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21

5   C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by

6   crystallization from sugar cane or sugar beet juice that has been extracted by pressing or

7   diffusion, then clarified and evaporated." As such, Defendant was required to identify the

8   ingredient in question as sugar and could not call it evaporated cane juice.

9        90.    The term "sugar" indicates to reasonable consumers the ingredient sugar.

10  Similarly, the term syrup connotes a type of sweetener that contains sugar.  Syrup is defined by

11  numerous dictionaries as some variation of "a concentrated solution of sugar in water" ("a

12  concentrated solution of sugar in water;" "a concentrated solution of a sugar, such as sucrose, in

13  water;" a thick sticky liquid consisting of a concentrated solution of sugar and water;" "a very

14  sweet, thick light colored liquid made by dissolving sugar in water;" "a sweet liquid made from

15  sugar and water;" etc. Thus, had the Defendant used  the words sugar or syrup to describe the

16  ingredient it described as evaporated cane juice it could have informed consumers of the presence

17  of added sugar. The Defendant's failure to utilize either term concealed the presence of added

18  sugars in the Defendant's yogurt products and is a misrepresentation that its yogurt products had

19  or contained benefits, qualities and/or characteristics that it did not have or involve, namely the

20  lack of added sugar (sucrose) or syrup, which is a material omission.

21       91.    The FDA further confirms that:

22      "evaporated cane juice" and other sweeteners derived from sugar cane syrup are
        not "juice" as defined in 21 CFR 120.1…. Sweeteners derived from sugar cane
23      syrup should not be listed in the ingredient declaration by names which suggest
        that the ingredients are juice, such as "evaporated cane juice." FDA considers such
24      representations to be false and misleading under section 403(a)(1) of the Act (21
        U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its
25      characterizing properties (i.e., that the ingredients are sugars or syrups) as required
        by 21 CFR 102.5 … sweeteners derived from sugar cane syrup are not juice…
26
         92.    It was thus false and misleading for the Defendant to use the term evaporated cane
27
28  juice to identify the added sugar derived from sugar cane it used as an ingredient. Moreover,

reasonable consumers do not consider juice to be a sugar or syrup or a refined sugar. Thus, it was false and misleading for the Defendant to use the term evaporated cane juice to describe the refined sugar (or in the alternative syrup) its yogurts used as a sweetener. Nor do reasonable consumers consider juice to be an added sugar. To the contrary, consumers are instructed by the federal government and other entities that if they wish to avoid added sugar, they should look for "juice" because juice is not an added sugar nor does it contain added sugar and is thus a way to avoid added sugars. Thus, it was false and misleading for the Defendant to use the term evaporated cane juice to describe the added sugar its yogurts used as a sweetener.

93.    Moreover, it is clear that the term evaporated cane juice was intended to and did mislead consumers about the presence of sugars. In fact industry participants have openly discussed this fact.

94.    For example, the in-house magazine for Whole Foods (which has been sued for the illegal and deceptive use of the term ECJ) contains an article entitled "Could Cane Juice Evaporate?" which details the following:

> A regulatory issue on the U.S. Food and Drug Administration's (FDA) backburner, and one that is therefore flying under the radar, involves the fate of the sweetener evaporated cane juice. Like high fructose corn syrup's ongoing name battle, this is a question of language, not substance. According to Jim Morano, Ph.D., technical affiliate of Suzanne's Specialties, New Brunswick, NJ, FDA has taken exception to the use of the word "juice" to describe this sugar cane-based sweetener on product labels…..The agency feels that the term fails to reveal the defining property of the sweetener, that the ingredients are sugars or syrups, and so the term may be false and misleading to consumer.
>
> "It's only been the last 15 years that we've had the ability to use sugar. In the beginning in the health food industry, sugar was a bad word," says Morano. Sugar was often considered to be a violation of the natural tenet, even though it is, of course, natural. Though times have changed, this negative connotation still clings to sugar for many shoppers. Therefore, if FDA takes away the term "evaporated cane juice," essentially dictating that it be referred to as a type of cane sugar, Morano believes the jig may be up for this sweetener, at least when it comes the natural market.
>  http://www.wholefoodsmagazine.com/grocery/features/sweeteners-rising.

95.    Similarly, according to the CEO of ASSURKKAR Sugar Company in Costa Rica, which provides raw sugar to U.S. companies, the term is wrongly used in the food industry, "prostituted" he put it. "Nowadays the food companies are trying to sell more 'natural' products, so they use the most impressive or high impact wording to call the customers' attention", he said.

1    In reality, the "evaporated cane juice" that is used in food products is a very processed form of

2    sugar, unequivocally the same as refined white sugar.

3    http://www.processedfreeamerica.org/index.php?option=com_content&view=article&id=535:raw

4    -sugar.

5         96.    Defendant's use of the word "cane" was not sufficient to advise Plaintiffs that

6    "evaporated cane juice" was sugar.  The term "cane" is not exclusively a reference to sugar or

7    sugar cane. Many other types of cane exist and are used in foods, for example, bamboo cane and

8    sorghum cane, both which produce juice.  See e.g. 21 C.F.R. § 168.160 ("sorghum cane"). Corn is

9    a form of cane. There are over 1000 species just of bamboo and over 10,000 members of the

10   family of plants that includes corn and sugar cane. Most common berries such as blackberries,

11   raspberries, blue berries and goji berries grow on canes and are referred to as "cane berries." Of

12   course, Defendant utilized the term "cane" with the term "juice," a defined, regulated term not

13   commonly associated with sugar or added sugar.

14        97.    Moreover, even to the extent the word "cane" might be construed to necessarily or

15   obviously referring to sugar cane, the use of the term ECJ is misleading because it implies that the

16   product is just dehydrated cane squeezings, which it is not.  That would be another product,

17   known as "panela,"[8] which is prepared by evaporating the "juice" of the sugar cane plant without

18   stripping away the nutrients in the refining process as is done with the ingredient Defendant lists

19   as ECJ.  The cane sugar utilized as an ingredient by Wallaby was far removed from natural sugar

20   cane or unrefined sugar cane juice. Natural sugar cane is described by sources as healthy and

21   nutritious, containing vitamins, minerals, enzymes, fibers, and phytonutrients that help the body

22   digest naturally occurring sugars, such as lactose, glucose and fructose. It also is reported to

23   contain vitamins A, C, B1, B2, B6, niacin, and pantothenic acid, which work synergistically with

24   the minerals to nourish the body. Sugar cane also reportedly contains a unique mix of antioxidant

25   polyphenols. The polyphenols, vitamins, and minerals present in sugar cane are claimed to help

26

27   [8] In January 31, 2013, the Codex Alimentarius Commission of the Joint FAO/WHO Food
     Standards Programme published a request for comments on the proposed change of the name for
28   the purposes of the Codex standard from "panela" to "non-centrifuged dehydrated sugar cane
     juice."  See ftp://ftp.fao.org/codex/Circular_Letters/CxCL2012/cl12_35e.pdf.

slow down the absorption of the sugars and prevent the sharp rise in blood sugar levels associated

with refined sugar. [9] Similarly, raw sugar cane juice has been described by some as a "wonder

food" that has many beneficial properties. For example, one website states:

> Sugarcane is a tall grass with a stout, jointed and fibrous stalk that looks similar to
> bamboo. As a member of the grass family, its juice has a high potency equivalent
> to wheatgrass juice, only with less chlorophyll and more sugar content. However,
> counter to what you might think, sugarcane juice contains only about fifteen
> percent total sugar content, all of which is in a raw unrefined form. The rest of the
> juice consists of water brimming with an abundance of vitamins and minerals.
> Sugarcane is rich in calcium, chromium, cobalt, copper, magnesium, manganese,
> phosphorous, potassium and zinc. It also contains iron and vitamins A, C, B1, B2,
> B3, B5, and B6, plus a high concentration of phytonutrients (including
> chlorophyll), antioxidants, proteins, soluble fiber and numerous other health
> supportive compounds. Working synergistically, these nutrients provide a
> supremely health-promoting food which has been studied for its role in fighting
> cancer, stabilizing blood sugar levels in diabetics, assisting in weight loss,
> reducing fevers, clearing the kidneys, preventing tooth decay, and a host of other
> health benefits.

http://www.processedfreeamerica.org/index.php?option=com_content&view=article&id=535:raw

-sugar. The "evaporated cane juice" in the Wallaby's yogurt products contains none of these

health benefits because during processing the nutrients have been pressed, boiled and strained

out.[10]

98.     Thus, evaporated cane juice is neither "juice" nor only subject to "evaporation" – a

process that absent pressing, boiling, and separation would leave the sugar crystals with their

nutrients still intact. [11]*Id.* In truth, evaporated cane juice is the equivalent of added refined sugar.

Refined sugar and evaporated cane juice both have 111 calories per ounce. Both types of sugar

come from the same cane crop, and they are both about 99% sucrose (*i.e.*, empty calories) and not

the 15% sucrose content ascribed to raw sugar cane juice.[12]  Wallaby admits that the "evaporated

---

[9] *See* McCaffree, D., The Truth About Evaporated Cane Juice, Processed-Free America (Nov. 1, 2010) *available at* http://www.processedfreeamerica.org/resources/health-news/405-the-truth-about-evaporated-cane-juice?format=pdf.

[10] During refinement, the sugarcane juice is pressed from the sugar cane and boiled at high temperatures. The boiling destroys the enzymes and many of the nutrients. The juice is then separated into a sugar stream and a molasses stream. Most of the minerals from the sugar cane go into the molasses, leaving the sugar stream virtually void of nutrients. To further refine it (removing any remaining nutrients), the sugar stream is then crystallized through evaporation." McCaffree, D., The Truth About Evaporated Cane Juice, Processed-Free America (Nov. 1, 2010),

[11] *Id.*

[12] *See id.* (stating that "[a]nother important aspect of natural sugar cane is the balance of the different types of sugars. Raw natural sugar has a balance of sucrose, glucose, and fructose, whereas refined sugars are almost exclusively sucrose (the fructose and glucose have been

cane juice" that it uses as a sweetener in its yogurt is the same as sugar.  See Exhibit 3.

99.     Defendant's use of the term "evaporated cane juice" misleads consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

100.    Plaintiffs and the class paid a premium price for the Misbranded Food Products.

**D.      Defendant has Knowingly Violated Numerous Federal and California Laws**

101.    Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements or statements on products and product packaging, labeling or any other medium used to directly or indirectly induce the purchase of a food product.

102.    Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

103.    Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

104.    Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

105.    Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented to be for special dietary uses, and their labels fail to bear information concerning their vitamin, mineral, and other dietary properties that federal regulations have prescribed as necessary in order fully to inform purchasers as to their value for such uses.

106.    Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

107.    Defendant has violated California Health & Safety Code § 110770 which makes it

washed out). The more sucrose, the more it raises your blood sugar").

1  unlawful for any person to receive in commerce any food that is misbranded or to deliver or

2  proffer for delivery any such food.

3      108.    Defendant has violated California Health & Safety Code § 110725 which makes it

4  unlawful for any person to fail to list each ingredient by its common and usual name.

5      109.    Defendant has violated California Health & Safety Code § 110760 which makes it

6  unlawful for any person manufacture, sell, deliver, hold or offer for sale any food that is

7  misbranded.

8      **E.    Plaintiffs Purchased Defendant's Misbranded Food Products**

9      110.    Plaintiffs care about the nutritional content of food and seeks to maintain a healthy

10  diet.  During the Class Period, Plaintiffs spent more than twenty-five dollars ($25.00) on the

11  Purchased Products.

12      111.    Plaintiffs read and reasonably relied on the labels on Defendant's Purchased

13  Products before purchasing it as described herein.  Plaintiffs relied on Defendant's labeling as

14  described herein and based and justified the decision to purchase Defendant's products, in

15  substantial part, on the label.

16      112.    For example, the label of the Wallaby Yogurt low-fat vanilla flavor, 6 oz.

17  container of the type Plaintiffs purchased lists organic evaporated cane juice as an ingredient:



18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1
2
3
4
5
6
7
8
9
10
11

 

This container is typical of the Purchased Products and Class Products at issue in how it lists evaporated cane juice as an ingredient.

113.   Plaintiffs would not have purchased Defendant's Misbranded Food Products had Plaintiffs known that the Misbranded Food Products contained added sugars or syrups. Plaintiffs read the labels on Defendant's Misbranded Food Products, including the Ingredient, "evaporated cane juice" on the labels before purchasing them.

114.   Plaintiffs relied on Defendant's package labeling including the ingredient list which listed "evaporated cane juice," but did not list "sugar" or "syrup," and based and justified their decision to purchase Defendant's products in substantial part on Defendant's package labeling and ingredient list.

115.   At point of sale, Plaintiffs did not know, and had no reason to know, that the Purchased Products were unlawful and misbranded as set forth herein, and would not have bought the product had he known the truth about it, *i.e.*, that the product was illegal to purchase and possess.

116.   After Plaintiffs learned that Defendant's Purchased Products were falsely labeled, each of them stopped purchasing them.

117.   As a result of Defendant's unlawful misrepresentations, Plaintiffs and thousands of

1  others in California and throughout the United States purchased the Purchased Products and the

2  Class Products at issue.

3      118.  Defendant's labeling as alleged herein is false and misleading and was designed to

4  increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic

5  labeling practice and a reasonable person would attach importance to Defendant's

6  misrepresentations in determining whether to purchase the products at issue.

7      119.  A reasonable person would also attach importance to whether Defendant's

8  products are "misbranded," i.e., legally salable, and capable of legal possession, and to

9  Defendant's representations about these issues in determining whether to purchase the products at

10  issue. Plaintiffs would not have purchased Defendant's products had they known they were not

11  capable of being legally sold or held.

12      120.  Plaintiffs' purchases of the Purchased Products damaged Plaintiffs because

13  misbranded products cannot be legally sold, possessed, have no economic value, and are legally

14  worthless.

15      121.  As a result of Defendant's unlawful use of the terms "Evaporated Cane Juice,"

16  Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and

17  the Class members have been proximately harmed, and Defendant has been unjustly enriched, by

18  Defendant's deceptive and unlawful scheme.

19      122.  Plaintiffs did not know that the ingredient listed as ECJ was in fact sucrose and

20  essentially the nutritional equivalent of ordinary white sugar, and Plaintiffs relied on the

21  Defendant's explicit ECJ representations and the absence of "sugar" on the ingredient list.

22  Plaintiffs would not have bought the Purchased Products had they known that the ingredient

23  declared as "ECJ" was really sugar (i.e., sucrose).  As a result of such reliance, Plaintiffs thought

24  that Defendant's Misbranded Food Products were preferable to other similar products lacking

25  such statements, or accurately listing "sugar" as an ingredient.

26      123.  Reasonable consumers would be, and were, misled in the same manner as

27  Plaintiffs in that a reasonable consumer would not recognize that the ingredient listed as ECJ is

28  really what is more commonly known as "sugar."

1

*Plaintiff Frank Morgan*

2      124.    Plaintiff Morgan cares about the nutritional content of food and seeks to maintain a

3   healthy diet.  Plaintiff would show that he seeks to avoid and/or minimize added sugar in the

4   yogurt products that he purchases.  Plaintiff would show that at the time he read the labels of

5   Defendant's yogurt products, he attempted to determine whether Defendant's Yogurt products

6   contained "added sugar" by reading the ingredient list.  He would show that when he read the

7   ingredient list of Defendant's Yogurt product to determine if sugar had been added as an

8   ingredient, "sugar" was not listed thus he was led to believe that Defendant's Yogurt product that

9   he purchased did not contain added sugar as an ingredient.  He did not know that the ingredient

10  "evaporated cane juice" was, in reality, sugar at the time he made his purchase.   Had he known

11  "evaporated cane juice" was the same thing as added sugar or syrup, Plaintiff would not have

12  purchased Defendant's yogurt product.  Plaintiff would show that while he did not know what

13  evaporated cane juice was at the time he purchased Defendant's yogurt product, because of the

14  fact it used the term "juice", it sounded like something healthy.

15      125.    Based on the Product labels, Plaintiff believed Defendant's products that he

16  purchased contained only natural sugars from milk and fruit and did not contain added sugars or

17  syrups.  Likewise, at point of sale, Plaintiff did not know, and had no reason to know, that

18  Defendant's "evaporated cane juice" claims were unlawful and unauthorized as set forth herein.

19  Had Plaintiff known Defendant's products that he purchased contained added sugar or syrup, he

20  would not have purchased the Products.  As a result, Plaintiff suffered injury-in-fact and lost

21  money.

22

*Plaintiff, Janet Hood*

23      126.    Plaintiff Hood cares about the nutritional content of food and seeks to maintain a

24  healthy diet.  Plaintiff would show that she seeks to avoid and/or minimize added sugar in the

25  yogurt products that she purchases.  Plaintiff would show that at the time she read the labels of

26  Defendant's yogurt products, she attempted to determine whether Defendant's yogurt products

27  contained "added sugar" by reading the ingredient list.  She would further show that when she

28  read the ingredient list of Defendant's Yogurt product to determine if sugar had been added as an

ingredient, "sugar" was not listed thus she was led to believe that Defendant's yogurt product that she purchased did not contain added sugar as an ingredient.  She did not know that the ingredient "evaporated cane juice" was, in reality, sugar at the time she made her purchase.   Had she known "evaporated cane juice" was the same thing as added sugar or syrup, Plaintiff would not have purchased Defendant's yogurt product.  Plaintiff would show that while she did not know what evaporated cane juice was at the time she purchased Defendant's yogurt product, because it used the term "juice", it sounded like something healthy.

127.    Based on the Product labels, Plaintiff believed Defendant's products that she purchased contained only natural sugars from milk and fruit and did not contain added sugars or syrups.  Likewise, at point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "evaporated cane juice" claims were unlawful and unauthorized as set forth herein. Had Plaintiff known Defendant's products that she purchased contained added sugar or syrup, she would not have purchased the Products.  As a result, Plaintiff suffered injury-in-fact and lost money.

128.    Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendant's misrepresentations and material omissions are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations and material omissions in determining whether to purchase the products at issue.

129.    A reasonable person would also attach importance to whether Defendant's products were legal for sale, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's Misbranded Food Products had they known they were not capable of being legally sold or held.

F.    **Plaintiffs Were Injured as a Result of Defendant's Conduct**

130.    Plaintiffs and the Class paid a premium price for Wallaby products with the illegal

term ECJ listed on their labels. Plaintiffs would not have purchased these products had they known the products (1) contained sugar as an added ingredient, and (2) were illegal to sell and possess.  Likewise, Plaintiffs would not have expended the purchase price for products that were worthless due to their illegality.

131.   Plaintiffs and the Class have been damaged by Wallaby's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess.

132.   Pursuant to Sherman Law § 110825, the sale of such a misbranded product (*i.e.* one whose label fails to use the common and usual ingredient name as required by law) constitutes a criminal act punishable by up to twelve month in jail.  As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiffs and the Class have been unlawfully deprived of money in an illegal transaction that occurred because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by Wallaby's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. This harm goes beyond mere economic injury.  When Plaintiffs and the Class purchased an illegally misbranded product (such as the Purchased Products and Class Products), there is causation and injury even absent reliance on the ECJ misrepresentation that misbranded the product.

133.   The Plaintiffs were injured by the loss of the purchase price in an illegal transaction, the illegality of which Plaintiffs were unaware, and which the Defendant had a duty to disclose.  Defendant misled Plaintiffs to believe that the Wallaby Yogurt products were legal to purchase and possess.  Had Plaintiffs known that the Wallaby products were misbranded, they would not have bought Defendant's products.   Plaintiffs relied on the Defendant's explicit ECJ representations.   As a result of such reliance, Plaintiffs thought that Wallaby's yogurt was preferable to other similar products lacking such statements.  Plaintiffs further relied upon the Defendant's implicit representation based on Defendant's material omission of material facts that these Wallaby Yogurt products were legal to sell and possess.  Reasonable consumers would be,

and were, misled in the same manner as Plaintiffs.  Defendant had a duty to disclose the illegality of their misbranded products because (a) they had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; and (b) the Defendant actively concealed such material facts from the Plaintiffs.  The Defendant had a duty to disclose the information required by the labeling laws discussed herein because of the disclosure requirements contained in those laws.  In addition, Plaintiffs were injured because they were unwittingly placed in legal jeopardy due to the possession of Defendant's illegal and misbranded products.  No reasonable consumer would buy a product that was illegal to sell or possess.

134.    Defendant's use of the term ECJ misleads consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label, and Plaintiffs and the class paid an unwarranted premium price for the Misbranded Food Products, at least in part because of the misleading manner in which concealed the presence of sugar (*i.e.*, sucrose) as an ingredient in the products.

135.    As a result of Defendant's deceptive use of the term ECJ, Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive scheme.

## CLASS ACTION ALLEGATIONS

136.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States, or in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's Yogurt Products labeled with the ingredient, "Evaporated Cane Juice" or substantially identical term.

137.    The following persons are expressly excluded from each Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

138.    This action can be maintained as a class action because there is a well-defined

1    community of interest in the litigation and each proposed Class is easily ascertainable.

2         139.   <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to

3    the misbranded products at issue, it is estimated that each Class numbers in the thousands, and

4    that joinder of all Class members is impracticable.

5         140.   <u>Common Questions Predominate</u>:  This action involves common questions of law

6    and fact applicable to each Class member that predominate over questions that affect only

7    individual Class members.  Thus, proof of a common set of facts will establish the right of each

8    Class member to recover.  Questions of law and fact common to each Class member include:

9         a.    Whether Defendant engaged in unlawful, unfair or deceptive business
               practices by failing to properly package and label its food products it sold to
10              consumers;

11        b.    Whether the food products at issue were misbranded as a matter of law;

12        c.    Whether Defendant made unlawful and misleading ingredient and natural
               claims with respect to its food products sold to consumers;
13

14        d.    Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*,
               California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies
               Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15
15              U.S.C. § 2301, *et seq.*, and the Sherman Law;

16        e.    Whether Plaintiffs and the Class are entitled to equitable and/or injunctive
               relief;
17

18        f.    Whether Defendant's unlawful, unfair and/or deceptive practices harmed
               Plaintiffs and the Class; and

19        g.    Whether Defendant was unjustly enriched by its deceptive practices.

20        141.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of each

21   Class because Plaintiffs bought Defendant's Misbranded Food Products during the Class Period.

22   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices

23   described herein irrespective of where they occurred or were experienced.  Plaintiffs and each

24   Class sustained similar injuries arising out of Defendant's conduct in violation of California law.

25   The injuries of each member of each Class were caused directly by Defendant's wrongful

26   conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class

27   members of each class and represents a common thread of misconduct resulting in injury to all

28   members of each Class.  Plaintiffs' claims arise from the same practices and course of conduct

1    that give rise to the claims of the member of each Class and are based on the same legal theories.

2         142.  Adequacy:  Plaintiffs will fairly and adequately protect the interests of each Class.

3    Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to

4    the interests of either Class's members.   Plaintiffs have retained highly competent and

5    experienced class action attorneys to represent their interests and those of the members of each

6    Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and

7    vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary

8    responsibilities to the members of each class and will diligently discharge those duties by seeking

9    the maximum possible recovery for each Class.

10        143.  Superiority:   There is no plain, speedy or adequate remedy other than by

11   maintenance of this class action.  The prosecution of individual remedies by members of each

12   Class will tend to establish inconsistent standards of conduct for Defendant and result in the

13   impairment of each Class member's rights and the disposition of their interests through actions to

14   which they were not parties.  Class action treatment will permit a large number of similarly

15   situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

16   and without the unnecessary duplication of effort and expense that numerous individual actions

17   would engender.  Further, as the damages suffered by individual members of the Class may be

18   relatively small, the expense and burden of individual litigation would make it difficult or

19   impossible for individual members of the Class to redress the wrongs done to them, while an

20   important public interest will be served by addressing the matter as a class action.   Class

21   treatment of common questions of law and fact would also be superior to multiple individual

22   actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

23   the litigants, and will promote consistency and efficiency of adjudication.

24        144.  The prerequisites to maintaining a class action for injunctive or equitable relief

25   pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

26   generally applicable to each Class, thereby making appropriate final injunctive or equitable relief

27   with respect to each Class as a whole.

28        145.  The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3)

1    are met as questions of law or fact common to each class member predominate over any questions

2    affecting only individual members, and a class action is superior to other available methods for

3    fairly and efficiently adjudicating the controversy.

4         146.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to

5    be encountered in the management of this action that would preclude its maintenance as a class

6    action.

7                                    **CAUSES OF ACTION**

8                                   **FIRST CAUSE OF ACTION**
                          **Business and Professions Code § 17200, *et seq.***
9                              **Unlawful Business Acts and Practices**

10

11        147.    Plaintiffs incorporate by reference each allegation set forth above.

12        148.    Defendant's conduct constitutes unlawful business acts and practices.

13        149.    Under California Law, unlawful injury causing conduct, such as Defendant's

14   unlawful sale of an illegal product, is the only element necessary for the UCL claim.  No reliance

15   is necessary.  Plaintiffs' claims here are based upon California law which is identical to the

16   federal laws California adopted.

17        150.    Defendant sold Plaintiffs and the class the Purchased Products and Class Products

18   that were not capable of being legally sold or possessed and have no economic value and thus

19   legally worthless.  Plaintiffs and the class lost money as a direct result of Defendant's unlawful

20   conduct.

21        151.    Defendant sold Misbranded Food Products, the Purchased Products and Class

22   Products in California and throughout the United States during the Class Period.

23        152.    Defendant is a corporation and, therefore, is a "person" within the meaning of the

24   Sherman Law.

25        153.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

26   Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

27   misbranded food provisions of Article 6 of the Sherman Law.

28        154.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

1   Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

2       155.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

3   Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

4       156.    Defendant sold Plaintiffs and the Class Misbranded Food Products that were not

5   capable of being sold, or legally held and which were legally worthless.  Plaintiffs and each Class

6   paid a premium price for the Misbranded Food Products.

7       157.    As a result of Defendant's illegal business practices, Plaintiffs and the members of

8   each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining

9   such future conduct and such other orders and judgments which may be necessary to disgorge

10  Defendant's ill-gotten gains and to restore to any Class Member any money paid for the

11  Misbranded Food Products.

12      158.    Defendant's unlawful business acts present a threat and reasonable continued

13  likelihood of injury to Plaintiffs and each Class member.

14      159.    As a result of Defendant's conduct, Plaintiffs and the members of each Class,

15  pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

16  conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

17  Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

18  Products by Plaintiffs and the members of each Class.

19                              **SECOND CAUSE OF ACTION**
                    **Business and Professions Code § 17200, *et seq.***
20                         <u>**Unfair Business Acts and Practices**</u>

21

22      160.    Plaintiffs incorporate by reference each allegation set forth above.

23      161.    Defendant's conduct as set forth herein constitutes unfair business acts and

24  practices.

25      162.    Defendant sold Misbranded Food Products in California and throughout the United

26  States during the Class Period.

27      163.    Plaintiffs and the members of each Class suffered a substantial injury by virtue of

28  buying Defendant's Misbranded Food Products that they would not have purchased absent

Defendant's illegal conduct.

164.    Defendant's deceptive and unethical marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial.

165.    Defendant sold Plaintiffs and the members of each Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

166.    Plaintiffs and the members of each Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

167.    The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be unlawful, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the members of each Class.

168.    As a result of Defendant's conduct, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Fraudulent Business Acts and Practices

169.    Plaintiffs incorporate by reference each allegation set forth above.

170.    Defendant's conduct as set forth herein constitutes fraudulent business practices

1 | under California Business and Professions Code sections § 17200, *et seq.*

2 |     171.    Defendant sold Misbranded Food Products in California and throughout the United

3 | States during the Class Period.

4 |     172.    Defendant's misleading marketing, advertising, packaging and labeling of the

5 | Misbranded Food Products and misrepresentations and material omissions that the products were

6 | capable of sale, capable of possession and not misbranded were likely to deceive reasonable

7 | consumers, and in fact, Plaintiffs and the members of each Class were deceived.  Defendant has

8 | engaged in fraudulent business acts and practices.

9 |     173.    Defendant's fraud and deception caused Plaintiffs and the members of each Class

10 | to purchase Defendant's Misbranded Food Products that they would otherwise not have

11 | purchased had they known the true nature of those products.

12 |     174.    Defendant sold Plaintiffs and the members of each Class Misbranded Food

13 | Products that were not capable of being sold or legally held and that were legally worthless.

14 | Plaintiffs and the members of each Class paid a premium price for the Misbranded Food

15 | Products.

16 |     175.    As a result of Defendant's conduct as set forth herein, Plaintiffs and each Class,

17 | pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

18 | conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

19 | Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

20 | Products by Plaintiffs and the members of each Class.

21 |

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

24 |     176.    Plaintiffs incorporate by reference each allegation set forth above.

25 |     177.    Plaintiffs assert this cause of action for violations of California Business and

26 | Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendant.

27 |     178.    Defendant sold Misbranded Food Products in California and throughout the United

1    States during the Class Period.

2        179.    Defendant engaged in a scheme of offering Defendant's Misbranded Food

3    Products for sale to Plaintiffs and the members of each Class by way of, *inter alia*, product

4    packaging and labeling, and other promotional materials.  These materials misrepresented and/or

5    omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's

6    advertisements and inducements were made within California and throughout the United States

7    and come within the definition of advertising as contained in Business and Professions Code

8    §17500, *et seq.* in that such product packaging and labeling, and promotional materials were

9    intended as inducements to purchase Defendant's Misbranded Food Products and are statements

10   disseminated by Defendant to Plaintiffs and the members of each Class that were intended to

11   reach the members of each Class.  Defendant knew, or in the exercise of reasonable care should

12   have known, that these statements were misleading and deceptive as set forth herein.

13       180.    In furtherance of its plan and scheme, Defendant prepared and distributed within

14   California and nationwide via product packaging and labeling, and other promotional materials,

15   statements that misleadingly and deceptively represented the composition and the nature of

16   Defendant's Misbranded Food Products.  Plaintiffs and the members of each Class necessarily

17   and reasonably relied on Defendant's materials, and were the intended targets of such

18   representations.

19       181.    Defendant's conduct in disseminating misleading and deceptive statements in

20   California and nationwide to Plaintiffs and the members of each Class was and is likely to

21   deceive reasonable consumers by obfuscating the true composition and nature of Defendant's

22   Misbranded Food Products in violation of the "misleading prong" of California Business and

23   Professions Code § 17500, *et seq.*

24       182.    As a result of Defendant's violations of the "misleading prong" of California

25   Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the

26   expense of Plaintiffs and the members of each Class.  Misbranded products cannot be legally sold

27   or held and are legally worthless.  Plaintiffs and the members of each Class paid a premium price

28   for the Misbranded Food Products.

183.     Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500,** *et seq.*
**<u>Untrue Advertising</u>**

184.     Plaintiffs incorporate by reference each allegation set forth above.

185.     Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

186.     Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

187.     Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and the members of each Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiffs and the members of each Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

188.     In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiffs and the members of each Class were the intended targets of such representations and would reasonably be deceived by

1    Defendant's materials.

2        189.    Defendant's conduct in disseminating untrue advertising throughout California

3    deceived Plaintiffs and the members of each Class by obfuscating the contents, nature and quality

4    of Defendant's Misbranded Food Products in violation of the "untrue prong" of California

5    Business and Professions Code § 17500.

6        190.    As a result of Defendant's violations of the "untrue prong" of California Business

7    and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of

8    Plaintiffs and the members of each Class.  Misbranded products cannot be legally sold or held and

9    are legally worthless.  Plaintiffs and the members of each Class paid a premium price for the

10   Misbranded Food Products.

11       191.    Plaintiffs and the members of each Class, pursuant to Business and Professions

12   Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such

13   other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and

14   restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members

15   of each Class.

                                        **SIXTH CAUSE OF ACTION**
16               <u>**Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***</u>

17
18       192.    Plaintiffs incorporate by reference each allegation set forth above.

19       193.    This cause of action is brought pursuant to the CLRA.  On June 25, 2012,
20   Plaintiffs provided Defendant with notice pursuant to Cal. Civ. Code § 1782.

21       194.    Defendant's violations of the CLRA were willful, oppressive and fraudulent, thus
22   supporting an award of punitive damages.

23       195.    Consequently, Plaintiffs and the members of each Class are entitled to actual and
24   punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal.

     Civ. Code § 1782(a)(2), Plaintiffs and the members of each Class will be entitled to an order
25
     enjoining the above-described acts and practices, providing restitution to Plaintiffs and the
26
     members of each Class, ordering payment of costs and attorneys' fees, and any other relief
27
     deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.
28

196. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

197. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

198. Plaintiffs and the members of each Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

199. Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

200. By engaging in the conduct set forth herein, Defendant has violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

201. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

202. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

203. By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

204. Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If

Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the members of each Class will continue to suffer harm.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.    For an order certifying this case as a national class action, and also a separate and distinct California class action and appointing Plaintiffs and their counsel to represent each Class;

B.    For an order awarding all relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780;

C.    For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding punitive damages;

G.    For an order awarding pre-and post-judgment interest; and

H.    For an order providing such further relief as this Court deems proper.

Dated:  October 23, 2012.                      Respectfully submitted,


                                    /s/ Ben F. Pierce Gore
                                   Ben. F. Pierce Gore (SBN 128515)
                                   PRATT & ASSOCIATES
                                   1901 S. Bascom Avenue, Suite 350
                                   Campbell, CA  95008
                                   Telephone:  (408) 429-6506
                                   Fax:  (408) 369-0752
                                   pgore@prattattorneys.com

1

2

 /s/ Darren L. Brown

3

Darren L. Brown (SBN 03108350)
*(pro hac vice)*

4

PROVOST & UMPHREY

5

490 Park Street
Beaumont, TX 77701

6

Telephone:  (409) 838-8881
Fax:  (409) 813-8630

7

dbrown@pulf.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*1st Amended Class Action Complaint*                    *Case No. CV 13-CV-00296=WHO*