Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

Darren L. Brown *(pro hac vice)* (TX SBN 03108350)
PROVOST ★ UMPHREY LAW FIRM
490 Park Street
Beaumont, TX 77701
Telephone: (409) 838-8881
Fax: (409) 813-8630
dbrown@pulf.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANK MORGAN and JANET HOOD, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALLABY YOGURT COMPANY, INC.,<br><br>Defendant. | Case No. CV 13-0296-WHO<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:   February 12, 2014<br>Time:                  2:00 p.m.<br>Courtroom:       2 – 17th Floor<br>Judge:              Hon. William H. Orrick<br>Action Filed:     January 22, 2013 |

.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ viii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ....................................................................................................................... 1

FACTUAL ALLEGATIONS ....................................................................................................... 2

ARGUMENT ............................................................................................................................... 2

I.    Plaintiffs adequately alleged that calling sugar "evaporated cane juice" is likely
      to deceive a reasonable consumer. ................................................................................. 2

      A.    Plaintiffs adequately alleged that the use of ECJ is misleading........................... 2

      B.    Whether a reasonable consumer would be deceived by the use of ECJ
            on the food label is a question of fact not appropriate for decision on
            a motion to dismiss. .............................................................................................. 4

II.   Plaintiffs have Article III and statutory standing. ......................................................... 5

      A.    Plaintiffs adequately alleged reliance................................................................... 5

      B.    Plaintiffs have alleged they suffered harm "as a result of" Defendant's
            unlawful conduct. .................................................................................................. 7

            1.    Plaintiffs adequately alleged causation. ..................................................... 8

                  a.    Reliance is not required where the predicate
                        unlawfulness does not depend on fraud or
                        misrepresentation. ........................................................................ 12

                  b.    Plaintiffs' adequately alleged causation and injury for
                        their "unlawful" claims. .............................................................. 15

            2.    Plaintiffs have adequately alleged injury in fact. .................................... 16

            3.    Plaintiffs have standing to seek injunctive relief. ................................... 17

      C.    Plaintiffs can represent a class that includes purchasers of identically
            misbranded products. .......................................................................................... 17

III.  Plaintiffs alleged sufficient unlawful conduct to support a UCL "unlawful"
      claim. ............................................................................................................................. 20

      A.    Defendant's assertion that ECJ complies with the common or usual
            name for the ingredient is irrelevant to whether Plaintiffs stated a
            claim. ................................................................................................................... 21

      B.    Plaintiffs' claims arise under California law, not the 2009 Draft
            Guidance. ............................................................................................................. 23

C.   There is no basis to revisit the Court's rulings on preemption and primary jurisdiction. ........................................................................................ 23

IV.   Plaintiffs adequately stated a claim under the "unfair" prong. ..................................... 24

CONCLUSION ............................................................................................................................ 25

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Aho v. Americredit Fin. Servs.*,
   No. 10cv1373 DMS (BLM), 2011 U.S. Dist. LEXIS 80426 (S.D. Cal. 2011)............................ 11

4

*Arevalo v. Bank of Am. Corp.*,
   No. C10-4959 THE, 2011 U.S. Dist. LEXIS 34151 (N.D. Cal. Mar. 29, 2011)........................ 19

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................ 7

7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................ 7

8

9

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524, 530-31 (C.D. Cal. 2011). ..................................................................... 19

10

*Bruton v. Gerber Prods. Co.*,
   No.: 12-CV-02412-LHK, 2013 U.S. Dist. LEXIS 129241 (N.D. Cal. Sept. 6,
   2013). ............................................................................................................................... 16

11

12

*Bryson v. Gonzales*,
   534 F.3d 1282 (10th Cir. 2008). ........................................................................................ 7

13

*Cardenas v. NBTY, Inc.*,
   870 F. Supp. 2d 984 (E.D. Cal. 2012). ......................................................................... 19

14

15

*Chacanaca v. Quaker Oats, Co.*,
   752 F.Supp.2d 1111 (2012). ............................................................................................ 17

16

*Chaves v. Blue Sky Natural Beverage Co.*,
   340 Fed. App'x 359 (9th Cir.2009). ............................................................................... 17

17

18

*Clancy v. Bromley Tea Co.*,
   No. 12-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9,
   2013). ...........................................................................................................................18, 19

19

20

*Clayworth v. Pfizer, Inc.*,
   49 Cal. 4th 758 (2010). ................................................................................................... 14

21

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012). ......................................................................................... 4

22

23

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998).......................................................................................18, 19

24

*Figy v. Amy's Kitchen, Inc.*,
   No. 13-3816, 2013 U.S. Dist. LEXIS 167723 (N.D. Cal. Nov. 25, 2013)................................ 14

25

26

*Frezza v. Google Inc.*,
   No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22,
   2013). ............................................................................................................................... 11

27

28

*Galvan v. KDI Distrib.,*
  No. SACV 08-0999-JVS, 2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25,
  2011). ....................................................................................................... 11, 12, 13

*Gitson v. Trader Joe's Company,*
  No. 13-cv-01333-WHO (N.D. Cal. Oct. 4, 2013) .................................................... 8, 23

*Greenwood v. CompuCredit Corp.,*
  No. 08-04878 CW, 2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010) ...................... 19

*Grodzitsky v. Am. Honda Motor Co.,*
  No. 2:12-cv-1142-SVW-PLA, 2013 U.S. Dist. LEXIS 82746 (C.D. Cal. June
  10, 2013) ................................................................................................................. 19

*Gustavson v. Wrigley Sales Co.,*
  No.: 12-CV-01861-LHK, 2013 U.S. Dist. LEXIS 132934 (N.D. Cal. Sept. 16,
  2013). ......................................................................................................................... 6

*Henderson v. Gruma Corp.,*
  CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr.
  11, 2011). .................................................................................................................... 17

*Hinojos v. Kohl's Corp.,*
  718 F.3d 1098 (9th Cir. 2013). ........................................................... 5, 14, 15, 16, 17

*In re Actimmune Mktg. Litig.,*
  No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Sept. 1,
  2010). ......................................................................................................................... 11

*In re Ditropan XL Antitrust Litig.,*
  529 F. Supp. 2d 1098 (N.D. Cal., May 11, 2007). ............................................... 11

*In re Steroid Hormone Prod. Cases,*
  181 Cal. App. 4th 145 (2010). ........................................................................ 9, 10, 14

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009). ...................................................... 4, 7, 9, 10, 12, 13, 14, 15

*Intri-Plex Techs., Inc. v. Crest Group, Inc.,*
  499 F.3d 1048 (9th Cir. 2007). ................................................................................ 21

*Johnson v. Lucent Techs. Inc.,*
  653 F.3d 1000 (9th Cir. 2011). ................................................................................. 7

*Kane v. Chobani, Inc.,*
  No.: 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19,
  2013). .................................................................................................................. 2, 3, 14

*Khasin v. Hershey Co.,*
  No. 12-1862, 2012 U.S. Dist. LEXIS 161300 (N.D. Cal. Nov. 9, 2012). ...................... 6

*Koehler v. Litehouse, Inc.,*
  No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13,
  2012). .................................................................................................................... 17, 19

*Kwikset v. Superior Court,*
  51 Cal. 4th 310 (2011). ............................................................................................5, 13, 14, 15, 16

*Lanovaz v. Twinings N. Am., Inc.,*
  No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25,
  2013) ............................................................................................................................... 16

*Lanovaz v. Twinings N. Am., Inc.,*
  No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 1639 (N.D. Cal. Jan. 6, 2014). ...................... 17

*Larsen v. Trader Joe's Co.,*
  No. C 11-05188 SI, 2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012). ..................... 17

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011). ......................................................................................... 16

*Medrazo v. Honda of N. Hollywood,*
  205 Cal. App. 4th 1 (2012) ........................................................................................9, 10, 14

*Moss v. U.S. Secret Service,*
  572 F.3d 962 (9th Cir. 2009) .............................................................................................. 7

*Olivera v. Am. Home Mortg. Servicing, Inc.,*
  689 F. Supp. 2d 1218 (N.D. Cal. 2010) ............................................................................... 11

*Perretta v. Prometheus Dev. Co.,*
  No. C 05-02987 WHA, 2005 U.S. Dist. LEXIS 38729 (N.D. Cal. Dec. 15,
  2005); ............................................................................................................................. 21

*Rand v. Am. Nat'l Ins. Co.,*
  No. C 09-0639 SI, 2010 U.S. Dist. LEXIS 82584 (N.D. Cal. June 22, 2010). ......................... 11

*Ries v. Arizona Beverages USA, LLC,*
  287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................................... 11

*Stearns v. Ticketmaster Corp.,*
  655 F.3d 1013 (9th Cir. 2011). ......................................................................................... 11

*Tooley v. Napolitano,*
  586 F.3d 1006 (2009) ....................................................................................................... 7

*Trazo v. Nestlé USA, Inc.,*
  No.: 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9,
  2013). ..................................................................................................................8, 18, 23

*Union Mut. Life Ins. Co. v. Simon,*
  22 F.R.D. 186 (E.D. Pa. 1958). ......................................................................................... 15

*United States v. S. Cal. Edison Co.,*
  300 F. Supp. 2d 964 (E.D. Cal. 2004). ................................................................................ 21

*Werdebaugh v. Blue Diamond Growers,*
  No.: 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2,
  2013). ............................................................................................................................. 24

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ................................................................................... 4

*Wilson v. Frito-Lay N. Am.,*
    No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136 (N.D. Cal. Oct. 24, 2013) ............................ 14

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) ................................................................................... 7

**Statutes**

15 U.S.C. § 1502 ..................................................................................................... 22

21 U.S.C. § 301 ...................................................................................................... 23

21 U.S.C. § 343 ....................................................................................................... 6

CAL. BUS. & PROF. CODE § 17200 ................................................................................. 1

CAL. BUS. & PROF. CODE § 17500. ............................................................................ 1, 13

CAL. BUS. & PROF. CODE § 17533.7. ............................................................................. 13

CAL. CIV. CODE § 1750. .............................................................................................. 1

CAL. CIV. CODE § 1770. ............................................................................................ 13

CAL. HEALTH & SAF. CODE § 110660. ........................................................................... 24

CAL. HEALTH & SAF. CODE § 110725. ......................................................................20, 24

CAL. HEALTH & SAF. CODE § 110760. ........................................................................... 15

**Rules**

FED. R. CIV. P. 23 ................................................................................................... 18

FED. R. EVID. 201 ................................................................................................... 21

**Regulations**

21 C.F.R. § 101 ...................................................................................................... 20

21 C.F.R. § 102.5 ...................................................................................................... 6

21 C.F.R. § 168.130. ................................................................................................ 20

21 C.F.R. § 184.1854. ..........................................................................................20, 22, 25

**Other Authorities**

1 Rubenstein, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed.). ................................................ 18

7AA Wright et al., FEDERAL PRACTICE AND PROCEDURE (3d 2005) § 1785. .........................18, 19

Stern, § 5.166, Bus & Prof. C. § 17200 Practice (The Rutter Group 2012)......................................... 11

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

1.   Whether Plaintiffs adequately alleged that a reasonable consumer would likely be deceived by Defendant's mislabeling sugar as "evaporated cane juice"

3

4

2.   Whether Plaintiffs adequately alleged that they were injured "as a result of" Defendant's unlawful conduct.

5

3.   Whether Plaintiffs adequately alleged that that they relied on Defendant's label misrepresentations

6

7

4.   Whether Plaintiffs can represent a class that includes purchasers of substantially similar and identically misbranded products.

8

5.   Whether allegations of specific Sherman Law violations allege unlawful conduct.

9

6.   Whether Plaintiffs adequately alleged a claim under the "unfair" prong of the UCL.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                          **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Plaintiffs Frank Morgan and Janet Hood oppose the motion to dismiss by Defendant

3 Wallaby Yogurt Company, Inc., (hereinafter "Wallaby" or "Defendant").

4                                         **INTRODUCTION**

5        This is Defendant's second motion to dismiss.[1] On Defendant's first motion, the Court ruled

6 that the Plaintiffs had article III standing, that the primary jurisdiction doctrine did not apply, that

7 their yogurt claims were not preempted, and that Plaintiffs were not impermissibly attempting to

8 enforce FDA regulations. *See* Doc. 34 at 5-12. The Court also ruled that Plaintiffs properly stated a

9 claim under the "unlawful" claims brought under California's Unfair Competition Law ("UCL") CAL.

10 BUS. & PROF. CODE §§ 17200, *et seq.*, based on Defendant's use of the term "evaporated cane juice"

11 ("ECJ") on its ingredient lists. *See* Doc. 34 at 14-15. However, the Court dismissed without prejudice

12 Plaintiffs' remaining claims under the "fraudulent" and "unfair" prongs of the UCL, as well Plaintiffs'

13 claims under California's False Advertising Law ("FAL"), CAL. BUS. & PROF CODE §§ 17500 *et seq.*;

14 and Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*; primarily because the

15 Court determined that the Plaintiffs had not adequately alleged that a "reasonable consumer" would

16 "likely be deceived" by the challenged statements. *See* Doc. 34 at 12-14, 16-18.

17        The Court ruled that the allegation in the Complaint that Plaintiffs would not have purchased

18 Defendants products had they known they "contained sugar or dried cane syrup" was inconsistent

19 with the fact that the Plaintiffs did purchase the products "despite the clear presence of sugar." *See*

20 Doc. 34 at 14. Based on the disclosure of the number of grams of total sugars on the Nutrition Panel,

21 the Court found the allegations, as pleaded, to be contradictory and thus not meeting the heightened

22 pleading requirement for fraud. In response to Plaintiffs argument in their briefing that the total

23 sugars disclosure was not the same as disclosing the presence of added sugar, the Court said, "If their

24 claim is that they would purchase products containing naturally occurring sugar, but not those with

25 added sugar, they need to allege that with particularity in their complaint." *Id.* In their First Amended

26

27 [1] Much of Defendant's motion to dismiss the FAC involves rehashing arguments that the Court considered and rejected in ruling on Defendant's motion to dismiss the Complaint. Plaintiffs therefore would incorporate by reference the arguments and authorities set out in their response to

28 Defendants previous motion, Doc. 20, as well as those Exhibits A-I to their request for judicial notice, Doc. 21, which the Court previously ruled were judicially noticeable, *see* Doc. 34 at 4 n.2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Complaint ("FAC"), Plaintiffs have done just that. The FAC explains the difference between "total sugars" and "added sugar" and contains extensive allegations demonstrating that the ingredient that Defendant labels as ECJ is a particular type of sugar—"sucrose" as defined in 21 C.F.R. § 184.1854-- which is essentially the nutritional equivalent of ordinary white sugar, and a type of sugar that reasonable consumers like the Plaintiffs prefer to avoid. *See* FAC ¶¶58-100.

## FACTUAL ALLEGATIONS

Plaintiffs' FAC painstakingly details Defendant's systematic practice of placing unlawful and misleading labels on its food products to increase sales. Plaintiffs incorporate herein the extensive facts alleged within the TAC.

## ARGUMENT

**I.**    **Plaintiffs adequately alleged that calling sugar "evaporated cane juice" is likely to deceive a reasonable consumer.**

Defendant asserts that Plaintiffs have not plausibly alleged that the use of ECJ is misleading because they supposedly did not plead what they thought it was. In fact, as alleged in the FAC, Plaintiffs were mislead because they thought ECJ was something other than added sugar (in particular, the type devoid of any beneficial nutritional value and contributes only empty calories). *See, e.g.,* FAC ¶¶ 61-62, 85-87, 98, 113, 114, 122, 124, 126. While they did not know exactly what ECJ was, they thought, based on the use of the word "juice" (as opposed to, say, "sugar" or "syrup"), that it was something healthy. *See* FAC ¶¶ 124, 126. Moreover, the FAC explains in some detail why the Nutrition Facts listing of total sugars is not the same as a disclosure of added sugars in general, or the particularly nutritionally desolate type of sugar that ECJ really is. *See, e.g.,* FAC ¶¶ 60-63, 66.

### A.    Plaintiffs adequately alleged that the use of ECJ is misleading.

Although Plaintiffs clearly addressed the issues this Court identified in granting in part Defendant's motion to dismiss the Complaint, Defendant asserts that Plaintiffs did not adequately address deficiencies identified by a different judge in a different case looking at different allegations in a different complaint. In particular, Defendant asserts that under Judge Koh's ruling in *Kane v. Chobani, Inc.*, No.: 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013), Plaintiffs have to plead what they thought ECJ was here, and apparently any case involving an ECJ

claim. That is not the law, and it is not what the court in *Chobani* ruled.

In *Chobani*, the court stated, "the SAC fails to explain how Plaintiffs could have realized that dried cane syrup was a form of sugar, but nevertheless believed that evaporated cane *juice* was not…. Absent *some* factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained 'only natural sugars from milk and fruit and did not contain added sugars or syrups' is simply not plausible." *Id.* at *24-25. Judge Koh's ruling was essentially based on her perception that the plaintiffs in *Chobani* alleged in the pleadings that they were looking for "dried *cane* syrup" on the ingredient list, but failed to explain what they thought "evaporated *cane* juice" was, if not the same thing. *See id.* at *24 ("Significantly, the SAC suggests that Plaintiffs understood that dried cane *syrup* was a form of sugar, since Plaintiffs refer to sugar and dried cane syrup interchangeably throughout the SAC.") In this case, Plaintiffs did not plead that they "realized that dried cane syrup was a form of sugar." In fact, the FAC contains a disclaimer explaining the use of the term in the FAC:

> In this Complaint Plaintiffs refer to "dried cane syrup" as a possibly permissible alternative to "sugar" because the FDA has suggested that "dried cane syrup" might be an acceptable way to refer to the ingredient.

FAC ¶ 18 n.3.

Plaintiffs used the term "dried cane syrup" in the FAC expressly because the FDA uses that term in the 2009 Draft Guidance as a possibly acceptable way to refer to ECJ. Plaintiffs nowhere allege that they were looking for the phrase "dried cane syrup" on the ingredient list or that they were familiar with "dried cane syrup" as a food ingredient (although the word "syrup" would have tipped them off that it ingredient was a form of added sugar). There is nothing in the FAC suggesting that the word "cane" entered into their thought process when they were making their purchasing decision. Rather, they alleged that they were looking for "added sugar," and "they did not realize that evaporated cane juice was 1) sugar or a syrup; 2) a form of added sugar; 3) a refined sugar, or 4) not a juice," and that they would not have purchased the products "if they had known they contained an added sugar or syrup; a refined sugar or sweetener; or that evaporated cane juice was not a juice, but

rather sugar or syrup and an added sugar and a refined sweetener." *See* FAC ¶¶59, 85-86 Plaintiffs were not looking for the word "cane;" they were looking for "sugar" or "syrup" as a reasonable consumer would when scanning the label for added sugar. There is nothing implausible about that.

      **B.**    **Whether a reasonable consumer would be deceived by the use of ECJ on the food label is a question of fact not appropriate for decision on a motion to dismiss.**

Defendant asserts that Plaintiffs claims should be dismissed because a reasonable consumer supposedly would not be deceived it its use of the term ECJ to describe what is really just a 99% sucrose product that is properly simply "sugar" for food labeling purposes. Defendant offers no reason why it is implausible other than its assertion that a reasonable consumer would know that vanilla and fruit flavored yogurts have "some sugar-based sweetener." The Ninth Circuit has said that it is a "rare situation" where granting a motion to dismiss claims under the UCL is appropriate. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). The Ninth Circuit made it clear that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Williams v. Gerber*, 552 F.3d at 939). Here, nothing on the label discloses that ECJ is really just added sugar (*i.e.*, sucrose), nor is there any other basis on which the Court could rule, as a matter of law, that a reasonable consumer would be deceived by the misrepresentation. The fact that the FDA says it is false and misleading should be sufficient in itself to deny Defendant's motion on this ground.

Defendant also asserts that Plaintiffs have not plausibly alleged that its illegal use of the term ECJ to mask the presence of added sugar would be material to the average consumer. As a matter of fact, this is nonsense. *See, e.g.*, FAC ¶¶ 60-84. Moreover, it is wrong as a matter of law. Materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009). Here, however, Defendant's failure to identify the ingredient by its common or usual name is specifically proscribed by statute, and "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that

the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *see also*, *Kwikset v. Superior Court*, 51 Cal. 4th 310, 333 (2011). Defendant's misrepresentation is material as a matter of law.

## II.   Plaintiffs have Article III and statutory standing.

### A.   Plaintiffs adequately alleged reliance.

Defendant asserts that Plaintiffs have not plausibly alleged reliance with respect to their "unlawful" claim, essentially reiterating its "reasonable consumer" argument. Repeating the argument does not improve it.

As alleged in the FAC, Plaintiffs are "health conscious consumers who wished to avoid 'added sugars' in the yogurt products they purchased." FAC ¶ 58. As further set out in considerable detail in the FAC, there is a well-recognized distinction between "added sugar" – that is, sugar that is added as a separate ingredient – and sugars that naturally occur as components of other ingredients such as milk or fruit or juice. *See* FAC ¶¶ 58, 61-62, 72-73, 77. Public health authorities advise consumers to avoid added sugars, and point to the ingredient list (and not the total sugars) to determine whether a product contains added sugar. *See* FAC ¶¶ 61-82. Plaintiffs scanned the ingredient lists of the Defendant's products for added sugar and failed to recognize the term "evaporated cane juice" as a form of added sugar. This is hardly surprising since 1) the FDA considers the term to be false and misleading *because* it fails to reveal that the ingredient is a sugar or a syrup; 2) juice is considered to be a healthy food that does not contain added sugars, 3) most lists of added sugars and sugar aliases do not list "evaporated cane juice" as an added sugar or sugar alias; and 4) consumer studies confirm that most purchase decisions are made in a fraction of a second and thus the potential for a false and misleading term to mislead is significant. FAC ¶ 59

As alleged in the FAC, Defendant illegally uses the term ECJ on its labels to describe sugar to conceal the fact that it uses added sugar as an ingredient in its products. *See* FAC ¶¶ 34-36, 60. As further alleged in the FAC, "[a]ccording to the FDA's published policy, 'evaporated cane juice' is simply a 'false and misleading' way of describing sugar, and therefore, it is improper to disguise sugar in a product as a type of 'juice.'" FAC ¶ 40. As stated by the FDA, "FDA considers such

representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21CFR 102.5." FAC ¶ 41. Plaintiffs were mislead by Defendant's labels because what was actually added sugar was misrepresented as "juice" and not identified as a sugar or syrup. FAC ¶ 86.

Furthermore, the product that Defendant lists as ECJ is not just evaporated cane juice; it is a refined sugar. While the unprocessed juice of the sugar cane plant contains naturally occurring sugars, it is not the same as "added sugar" as described in the FAC. *See* FAC ¶¶97-98. But all of that is really beside the point because Plaintiffs were looking for words like "sugar" or "syrup" when the scanned the ingredient list, not "cane," and certainly not "juice."

While words like "sugar" and "syrup" indicate added sugar to reasonable consumers, the word "juice" does not. FAC ¶¶ 85, 90, 92. Plaintiffs alleged that they did not know that "evaporated cane juice" was the same thing as added sugar or syrup, that they would not have purchased the products had they known, and while they did not know what "evaporated cane juice" was at the time they purchased the products, because it used the term "juice" it sounded like something healthy. FAC ¶¶ 124, 126. Plaintiffs believed that ECJ was some type of ingredient that was healthier than sugar due to the inclusion of the word "juice" and the omission of the words "sugar" or "syrup," and did not recognize that the ingredient was sugar, much less a refined or added sugar. FAC ¶¶ 124, 126.

Defendant's arguments that the Court should disregard Plaintiffs allegations of reliance as implausible goes beyond the proper scope of a motion to dismiss. *See Khasin v. Hershey Co.*, No. 12-1862-EJD, 2012 U.S. Dist. LEXIS 161300 at *21 (N.D. Cal. Nov. 9, 2012) (rejecting a similar plausibility argument because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion"); *Gustavson v. Wrigley Sales Co.*, No.: 12-CV-01861-LHK, 2013 U.S. Dist. LEXIS 132934 at *68-69 (N.D. Cal. Sept. 16, 2013) (citing *Khasin*). On a motion to dismiss, the Court is charged with determining whether, under the facts alleged, the complaint states a plausible claim; not to weigh the credibility of the Plaintiffs' factual allegations. *See Johnson v. Lucent*

*Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011) ("On a motion to dismiss, all allegations of material

fact are taken as true and construed in the light most favorable to the nonmoving party."); *Zucco*

*Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) ("We accept the plaintiffs'

allegations as true and construe them in the light most favorable to the plaintiffs."). In considering

dismissal, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "This is not to say that the

factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say

that relief must follow from the facts alleged." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir.

2008); *see also, e.g., Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) ("When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."). Plaintiffs' allegations of reliance are not self-

contradictory or otherwise facially implausible, nor are the allegations in the FAC contradicted by

judicially noticeable facts. Plaintiffs alleged that they were misled for the very reasons that the FDA

has said that the use of ECJ on food ingredient lists is misleading. By any reasonable standard, the

TAC adequately pleads reliance on Plaintiffs' ECJ claims.

   **B.      Plaintiffs have alleged they suffered harm "as a result of" Defendant's**
           **unlawful conduct.**

   To state a claim under the UCL, a plaintiff has to allege that he suffered injury in fact and lost

money or property "as a result of" the alleged UCL violation. *Tobacco II*, 46 Cal. 4th at 310. The UCL

"unlawful" violations included selling misbranded products that could not be legally be sold,

delivered, held, offered for sale, or received in commerce. CAL. HEALTH. & SAF. CODE §§ 110760,

---

[2] While there are limits to what the Court must accept as true, the allegations in this case do not come within light-years of testing those limits. *See Iqbal*, 556 U.S. at 696 (Souter, J., dissenting) ("The sole exception to th[e] rule [that allegations must be credited at the pleading stage] applies to allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel."); *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting Justice Souter's dissent in *Iqbal*).

110770. The injury to the Plaintiff was caused when he unknowingly purchased products sold by Defendant that could not legally be bought or sold. *See*, e.g., FAC ¶¶ 6, 52-54, 113, 115, 119, 125, 127, 129, 130, 132, 133. That is all that is required to state a cause of action.

Although Defendant acts as though Plaintiffs' "unlawful" theory is something new to get around this Court's non-existent holding that ECJ "is not deceptive as a matter of law," *see* Doc. 37 at 11, it is the same "unlawful" theory that the Court ruled was adequately stated a claim in its ruling on Defendant's first motion to dismiss, *see* Doc. 34 at 14-15, 19. It is also the same "unlawful" theory that the Court found adequate in *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917 at *31-32 (N.D. Cal. Oct. 4, 2013). Judge Grewal also recently addressed what is required to state a UCL unlawful claim based on the illegal use of ECJ in *Trazo v. Nestlé USA, Inc.*, No.: 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013). In *Trazo*, the court ruled that to plead an unlawful claim, the plaintiff had to allege plausible facts supporting a claim that the defendant violated the Sherman Law, and that the plaintiff satisfied that requirement by alleging that ECJ violates the common or usual name requirement, and by presenting the FDA's draft guidance demonstrating the FDA's view that ECJ is not the common or usual name for any sweetener. *Id.* at 15-17 (footnotes omitted). The FAC, like Plaintiffs' prior pleading, contains the same type of allegations, and sufficiently alleges an "unlawful" claim regardless of reliance or "reasonable consumer" issues or other requirements of a claim brought under the "fraudulent" prong. Thus, under this Court's prior ruling in this case and *Gitson* and *Trazo*, Plaintiff has sufficiently pled an unlawful claim in this case, regardless of reliance.

### 1.   Plaintiffs adequately alleged causation.

When products are offered for sale through the usual channels of commerce, there is an implicit representation that the products can legally be bought and sold. Plaintiffs alleged an "implicit misrepresentation" that the products were legal to sell and possess. *See* FAC ¶¶ 52, 133. Moreover, the Sherman Law provides that misbranded products cannot legally be sold, delivered, held, offered for sale, or received in commerce. CAL. HEALTH. & SAF. CODE §§ 110760, 110770. A violation of *any* provision of the Sherman Law or any regulation promulgated thereunder is a crime punishable by up

to a year in jail, a fine of up to $1000, or both, with more severe penalties when done with the intent to defraud or mislead. *See* CAL. HEALTH & SAF. CODE § 111825. Plaintiffs injuries resulted from Defendant's "unlawful sale of an illegal product that is crime to sell and crime to possess," that Plaintiffs would not have purchased had they known of the illegality. *See, e.g.*, FAC. ¶¶ 53, 54, 115, 119, 132. The allegation that Defendant sold Plaintiffs an illegal product that they would not have purchased had they known the truth is sufficient to show that the injury occurred as a result of Defendant's unlawful conduct.[3] *See, e.g., Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 11-12 (2012); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010).

California courts have specifically stated that actual reliance by plaintiffs or class members on labeling that is unlawful is <u>not</u> a necessary element to prevail under the UCL's unlawful prong. In *Tobacco II*, the California Supreme Court explained that while actual reliance is required in a UCL action "based on a fraud theory involving false advertising and misrepresentations to consumers," the "UCL defines 'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice…'" (§ 17200)" and "[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." 46 Cal. 4th at 325 n.17. One such practice is selling a product that is illegal to sell because some aspect of the product does not comply with state law.

For instance, in *Medrazo* the plaintiff purchased a motorcycle that did not have a "hanger tag" that showed the manufacturer's suggested retail price and any dealer-added costs, in violation of California's Vehicle Code. The plaintiff admitted that she never saw the hanger tag, so she could not have "relied" upon it in deciding whether to purchase the product, and the dealer-added charges were set out in the sales contract which the plaintiff admittedly read and signed. Based on this evidence, the trial court granted the defendant's motion for judgment because neither the plaintiff nor other class members were actually "misled by the nondisclosure of those charges on a hanger tag attached to the motorcycle." *Medrazo*, 205 Cal. App. 4th at 11. The appellate court reversed because "[t]he

---

[3] Defendant suggests that Plaintiffs have taken the position that a person who knows of the illegality but buys the product anyway could bring an "unlawful" claim. Plaintiffs have not advanced that theory. It is a straw man invented by Defendant.

[trial] court's analysis fail[ed] to take into account the different prongs of the UCL." *Id.* The court noted that the UCL outlaws as unfair competition "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and that "[b]ecause the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition. *Id.* at 11-12. Citing *Tobacco II*, the court recognized that "an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory." *Id.* at 12. The court also found that the plaintiff had established an economic injury caused by the defendant's alleged unfair competition: she had purchased a product that the defendant "allegedly was not legally allowed to sell." *Id.* Reliance by the plaintiff or the class on the presence or absence of the hanger tags was not relevant.

That point was driven home in *Steroid Hormone*, where the plaintiff brought a class action after he had purchased nutritional supplements from GNC that contained a controlled substance (a steroid known as androstenediol). California law prohibited the sale of that steroid without a prescription. The plaintiff brought several claims including one under the UCL's unlawful prong. The trial court refused to certify the class based on an incorrect conclusion that Proposition 64 imposed a requirement on unnamed class members to prove reliance and causation. *Steroid Hormone*, 181 Cal. App. 4th at 154-55. The appellate court ruled that the "two predominant issues (other than [the plaintiff]'s individual standing)" were (1) whether GNC's sale of androstenediol products was unlawful; and if so, (2) the amount of money GNC "may have ... acquired by means of" those sales that must be restored to the class." *Id.* The court emphasized that Proposition 64 had not changed the UCL except as to the class representative's standing requirements. *Id.* ("As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and "before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.'") Thus, "where the UCL claim is based upon the unlawful prong of the UCL" there is "no issue regarding reliance." *Id.*

What *Medrazo, Steroid Hormone* and the other cases cited herein make clear is that if the

defendant's product is sold in violation of some state law, and thereby violates the UCL's unlawful prong, neither the plaintiff nor any members of the class need establish actual reliance. The reason is simple: because the product is illegal, it should never have been sold to the plaintiff in the first place. *That is the unlawful act that creates the defendant's liability under the UCL and causes the economic injury required by Proposition 64.* Whether the plaintiff relied upon the alleged unlawful aspect of the product is not relevant, especially since the UCL's intended focus is on the *defendant's* conduct. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (explaining that a California state law claim under the UCL focuses on "defendant's conduct," rather than any reliance by plaintiff or individualized proof of deception or injury). To require actual reliance would be reading into the UCL an additional requirement that the neither the California legislature nor the people via Proposition 64 intended to include.

    California Federal District Courts have held similarly,[4] and *Galvan v. KDI Distrib.*, No. SACV

---

[4] Numerous other cases and treatises have held that reliance is not relevant under the UCL's unlawful prong. *See e.g., Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ("no reliance is required to prove violations of the UCL based on 'unlawful' or 'unfair' conduct."); *Olivera v. Am. Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218 (N.D. Cal. 2010) ("For claims based on …'unlawful" prong of the UCL claim, courts have held that the plaintiff need not allege reliance on misrepresentations, and may allege 'causation more generally.'"); *Rand v. Am. Nat'l Ins. Co.*, No. C 09-0639 SI, 2010 U.S. Dist. LEXIS 82584 (N.D. Cal. June 22, 2010)("reliance …is not an element under the 'unfair' or 'unlawful' prongs of that statute'); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal., May 11, 2007) ("Plaintiffs Need Not Allege Reliance.…where, as here, plaintiffs allege that they were harmed by other types of misconduct actionable under the UCL the Court finds no basis for requiring reliance on misrepresentations."); *Aho v. Americredit Fin. Servs.*, No. 10cv1373 DMS (BLM), 2011 U.S. Dist. LEXIS 80426 at *25-26 (S.D. Cal. 2011) ("The claim… that Defendant has engaged in unlawful conduct under the UCL, does not require reliance"); Stern, § 5.166, BUS & PROF. C. § 17200 PRACTICE (The Rutter Group 2012) ("[t]here are a number of theories that have been litigated and rejected as defenses to claims alleging 'unlawful' business practices…. That no one was actually deceived by the practice is not a defense to a section 17200 "unlawful" business practice claim"); *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012) (liability is imposed under the unlawful prong "without individualized proof of deception, reliance, and injury.").
Nor does *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Sept. 1, 2010), indicate that reliance would be required for the unlawful claims brought in this case. *In re Actimmune* involved alleged off-label marketing of an approved drug for an unapproved use. *See In re Actimmune,* 2010 U.S. Dist. LEXIS 90480 at *17-18. The court said "[i]n the context of this case, the 'as a result of' language places the burden on plaintiffs to establish that they actually relied upon the representations delivered through defendants' off-label marketing." *Id.* at 23. In the context of that case, the product was misbranded only to the extent that it was promoted to the plaintiff for an unapproved off-label use, and the plaintiffs failed to allege that their doctors believed Actimmune was an effective treatment for the condition at issue "as a result of" defendants' off-label promotion. *See id.* at 30-33. In this case, in contrast, the Misbranded Food Products are illegal to buy sell or hold regardless of whether the plaintiff sees the illegal label, and to show causation, the

08-0999-JVS, 2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011), is on point. In *Galvan*, the plaintiff sued because the calling card he bought did not comply with labeling requirements related to ancillary charges, which meant he actually got about half the minutes he expected. The plaintiff sued under both the fraudulent and unlawful prongs. Regarding his unlawful claim, the court said:

> A UCL violation that is not based on a "fraud theory involving false advertising and misrepresentations to consumers" does not require a showing of reliance or causation. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 n. 17, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) (clarifying that the discussion of standing under the UCL as amended by Proposition 64 relates only to cases in which a UCL action is based on a fraud theory involving false advertising and misrepresentation to consumers and affirming that there are "doubtless many types of unfair business practices" in which reliance is not required). Section 17538.9 is not an action for fraud; there is no language suggesting a customer need rely on the inaccurate packaging or labeling information or that the distributor must intend to deceive the customer. Rather, on its face, it is a strict liability action. *See Prata v. Superior Court*, 91 Cal. App. 4th 1128, 111 Cal. Rptr. 2d 296, 302 (Ct. App. 2001) (describing UCL violations as strict liability offenses where plaintiff need not show defendant intended to injure anyone). In *Hale*, a putative class action brought under a UCL claim based on a Chapter One violation required the representative plaintiff to show reliance because the defendant has allegedly violated section 17204, which required a plaintiff to show he "suffered injury in fact . . . as a result of the unfair competition." 108 Cal. Rptr. 3d at 679. Because there was a reliance requirement implied in the statute by the phrase "as a result of" and because the predicate unlawful conduct was misrepresentation, the UCL claim required a showing of the representative plaintiff's reliance. *Id*. Unlike *Hale*, here the Chapter One violation has no built-in reliance requirement and the predicate unlawful conduct is not misrepresentation. Rather, the unlawful conduct is a failure to properly label and package the calling cards in compliance with the statute. Accordingly, a UCL claim predicated on a section 17538.9 violation does not require a showing of the class representative's reliance.

*Id*. at *28-30.    The same is true of Plaintiffs' unlawful claims predicated on Sherman Law violations. The illegal conduct under the Sherman Law is selling misbranded food.

### a.    Reliance is not required where the predicate unlawfulness does not depend on fraud or misrepresentation.

After Proposition 64, all UCL claims brought by private parties include a requirement that the damages be "as a result of" the defendant's unlawful conduct. The distinguishing feature, as explained by the court in *Galvan*, is whether misrepresentation is an element of the predicate offense. In this case, Plaintiffs have alleged a crime predicated on the Sherman's Law's prohibition against selling misbranded food. Misrepresentation is not an element of the predicate offense. Plaintiffs have

---

Plaintiff would only need to allege that she would not have purchased the product had she known it was not a legally saleable product.

1   also alleged that the food is misbranded because Defendant violated the requirement that ingredients

2   be listed by their common or usual name. The unlawful conduct is not misrepresentation; it is a

3   labeling violation. While the conduct may also be misleading, that is not an element of the predicate

4   offense, either in the case of selling a misbranded product, or in the misbranding itself. Here, as in

5   *Galvan*, "the unlawful conduct is a failure to properly label and package the [product] in compliance

6   with the statute." *Galvan*, 2011 U.S. Dist. LEXIS 127602 at *30. A showing of actual reliance under

7   the UCL is reserved for those cases where the product is not illegal to sell or possess. *See e.g.*, *Kwikset*

8   *v. Superior Court*, 51 Cal. 4th 310 (2011). In *Kwikset*, the plaintiff alleged the defendant marketed and

9   sold locks falsely labeled as "made in the USA". *Id.* at 317. Based upon the reasoning of *Tobacco II*

10   noted above, the Court found that since the predicate of the UCL claims was misrepresentation and

11   deception, reliance was an element of the Plaintiff's claim. *Id.* Like it did in *Tobacco II*, the *Kwikset*

12   court "express[ed] no views concerning the proper construction of the cause requirement in other

13   types of cases" that were not based upon fraud, misrepresentation or deception. *Id.* at 326, n.9.

14       Footnote 9 in *Kwikset* does not counsel a different result under the facts of this case. In

15   *Kwikset*, the court said that to prove "as a result of" causation in a fraud based claim, the plaintiff has

16   to show "actual reliance on the allegedly deceptive or misleading statements." *Kwikset*, 51 Cal. 4th at

17   326. The court also noted that the plaintiff had to show reliance in an unlawful claim because the

18   predicate unlawfulness was based on statutes that "simply codify prohibitions against certain specific

19   types of misrepresentations." *Id.* at *326 n.9. The statutes at issue were Cal. Bus. & Prof. Code §

20   17500 ("False or misleading statements generally"), Cal. Bus. & Prof. Code § 17533.7 (prohibiting

21   "made in U.S.A." representations on products made outside of the U.S.A.), and Cal. Civ. Code §

22   1770(a)(4) ("Using deceptive representations or designations of geographic origin in connection with

23   goods or services."), are all expressly based on making false or misleading statements. Here, the

24   predicate unlawfulness is selling a misbranded product that cannot legally be *bought* or sold.

25       Plaintiffs' "illegal product" theory would not eviscerate the enhanced standing requirements

26   imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*. While pre-

27   Proposition 64 anyone could bring a UCL claim even if he had no business dealings at all with the

28

defendant, Proposition 64 limited standing to those who suffered injury in fact and lost money or property. *Kwikset*, 51 Cal. 4th at 320-21. As explained in *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010), the purpose of Proposition 64 was to "curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the defendant." *Id.* at 788 (internal quotation marks omitted). However, as the Ninth Circuit observed in *Hinojos*, "Proposition 64 'just as plainly preserved standing for those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices.'" 718 F.3d at 1104 (quoting *Clayworth*, 49 Cal. 4th at 788). In this case, Plaintiffs did have business dealings with Defendant, which is all that is required under *Kwikset* and *Hinojos*.[5]

---

[5] In *Kane v. Chobani*, Judge Koh took this language from *Clayworth* (as quoted in *Kwikset*) as setting out a requirement that the plaintiff have viewed the defendant's advertising, and said that the plaintiffs' "'illegal product' theory would eviscerate the standing requirements imposed by Proposition 64" and *Kwikset* based on an unwarranted emphasis on the "viewed the defendant's advertising" language. *See Kane*, 2013 U.S. Dist. LEXIS 134385 at *33-34. With all due respect to Judge Koh, this misreading of *Kwikset* / *Clayworth* as imposing a specific requirement that the plaintiff have viewed the advertising is inconsistent with the plain language selected by the California courts and with the Ninth Circuit's reading in *Hinojos*. If the courts meant to state specific, independent requirements for standing, the last one would not have been the catchall "any other business dealings."

In *Wilson v. Frito-Lay N. Am.*, No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136 (N.D. Cal. Oct. 24, 2013), Judge Conti also rejected UCL unlawful theory on the theory that "as a result of" causation implies a reliance requirement. *See id.* at 20-25. Quoting *Kwikset*, Judge Conti stated that "this rule exists to curb 'shakedown suits by parties who had never engaged in any transactions with would-be defendants.'" *Id.* at *23 (quoting *Kwikset*, 51 Cal. 4th at 335 n.21). The allegations this case do not fit that reasoning because Plaintiffs did have business dealings with the Defendant, and they alleged they would not have purchased the products had they known of the illegality. The Plaintiffs suffered exactly the same economic injury from buying an illegal product that they would not otherwise have purchased as they would if they alleged they had been mislead by a label misrepresentation.

Finally, in *Figy v. Amy's Kitchen, Inc.*, No. 13-3816, 2013 U.S. Dist. LEXIS 167723 (N.D. Cal. Nov. 25, 2013), Judge Illston distinguished *Steroid Hormone* on the basis that it was "decided prior to the California Supreme Court's decision in *Kwikset* and the alleged unlawful conduct was not based on a statute prohibiting specific types of misrepresentations." *Id.* at *11 n.1. However, What Judge Illston failed to appreciate is that at least some of the illegal conduct alleged here is not based on any sort of misrepresentation. As with the products in *Steroid Hormone*, it is not just illegal to sell misbranded products, it is also illegal to buy them. *See* CAL. HEALTH AND SAF. CODE § 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food."). Because *any* violation of the Sherman Law is a crime potentially punishable by up to a year in the county jail and/or up to a $1000 fine, *see* CAL. HEALTH AND SAF. CODE § 111825, consumers have reasons to avoid buying misbranded products that are independent of the specific labeling violations or the "specific types of misrepresentations" that render them misbranded.

Judge Illston also found *Medrazo* "unpersuasive" because *Tobacco II* and *Kwikset* said that the holding that actual reliance was required was limited to cases where the UCL action is based on a fraud theory rather than definitively stating that reliance was not required outside of that context. *See Figy*, 2013 U.S. Dist. LEXIS 167723 at *11-12 n.1. However, the fact that the California Supreme Court

**b.    Plaintiffs' adequately alleged causation and injury for their "unlawful" claims.**

While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. *Tobacco II*, 46 Cal. 4th at 326-28. A presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. *Id.* A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" and as such materiality, is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* "Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination."[6] *Hinojos*, 718 F.3d at 1107; *see also Kwikset*, 51 Cal. 4th at 333.

When Plaintiffs purchased a misbranded product there is causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is crime to sell and crime to possess. Plaintiffs have been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of "hold[ing]" or "receiv[ing] in commerce" such a product, *see* CAL. HEALTH & SAF. CODE §§110760, 110770, Plaintiffs have been unwittingly placed by Defendant's conduct in a legal position that no reasonable consumer would agree to placed. *Steroid Hormone*, 181

---

may not have specifically held that the reliance requirement does not apply where the claim is not essentially fraud based is not a reason to import such a requirement where, as here, it is not logically required to show causation.

As the Supreme Court of California observed, while reliance is required where the predicate unlawfulness is a fraud-based theory, "[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." *Tobacco II*, 46 Cal. 4th at 325 n.17; *see also, Kwikset*, 51 Cal. 4th at 326, n.9 (while reliance was required where the predicate unlawfulness was fraud or misrepresentation, the court "express[ed] no views concerning the proper construction of the cause requirement in other types of cases" that were not based upon fraud, misrepresentation or deception). Here, the predicate unlawfulness is selling a misbranded product that cannot legally be *bought* or sold, and predicate unlawfulness does not depend on anyone being deceived or mislead.

[6] Even for claims where reliance is required, the failure to plead reliance does not warrant dismissal where state law would presume reliance upon a false statement in the absence of proof to the contrary. *See Union Mut. Life Ins. Co. v. Simon*, 22 F.R.D. 186 (E.D. Pa. 1958).

Cal. App. 4th at 157 (finding that "a reasonable person would not knowingly commit a criminal act"). To the extent there is a reliance requirement, it is reliance on Defendant not to sell an illegal product, not on any particular label claims, and in the context of the purchase of an illegal product, such reliance is easily proven. Consumers rely on sellers to not sell them illegal products. And, as logic would suggest, it is *presumed* that a reasonable person would not knowingly purchase an illegal product. *Id.* at 157 ("[t]the question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product, that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is 'yes'—we assume that a reasonable person would not knowingly commit a criminal act").

### 2. Plaintiffs have adequately alleged injury in fact.

Plaintiffs alleged they would not have purchased Defendant's products had they known that the products were illegal to sell or possess, that they paid a premium price for Defendant's products, and that the products were worthless due to their illegality. FAC ¶¶ 7, 119, 129-132. As this Court previously ruled, "a plaintiff 'claiming that [he] paid for products that [he] would not otherwise have purchased' is sufficient to confer standing." Doc. 34 at 5 (quoting *Bruton v. Gerber Prods. Co.*, No.: 12-CV-02412-LHK, 2013 U.S. Dist. LEXIS 129241 at *51 (N.D. Cal. Sept. 6, 2013). Indeed, a "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Where plaintiffs allege that they paid more than they otherwise would have paid, or purchased a product they otherwise would not have purchased, they allege an "economic injury" under the UCL. *See Hinojos*, 718 F.3d at 1104-1105; *see also, e.g., Kwikset*, 51 Cal. 4th at 317 (allegation that plaintiff would not otherwise have purchased the product is a sufficient economic injury); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612 at *16 (N.D. Cal. Feb. 25, 2013) (*Lanovaz I*) ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims."); *Ivie I*, , 2013 U.S. Dist. LEXIS 25615 at *11-12 (N.D. Cal. Feb. 25, 2013) (*Ivie I*) (same); *Brazil v. Dole Food Co.*, 2013 U.S. Dist. LEXIS 42026 at *38 (plaintiff had

standing where he "paid money that he would not otherwise have paid had he known about the true nature of Defendants' products."); *Chacanaca v. Quaker Oats, Co.,* 752 F.Supp.2d 1111, 1125 (2012) ("The injury alleged here is the purchase of food products that contain an ingredient the plaintiffs find objectionable. Had they known about the trans fat content, they insist, they would not have purchased the product. Defendant's health-based harm argument misses the mark, as plaintiffs have adequately alleged an injury directly related to the redress they seek."); *Chaves v. Blue Sky Natural Beverage Co.,* 340 Fed. App'x 359, 360–61 (9th Cir.2009). Furthermore, where plaintiff alleged he purchased a product that he otherwise would not have purchased, there was an economic injury regardless of any "benefit of the bargain" rationale. *Hinojos v. Kohl's Corp.,* 718 F.3d at 1107.

Defendant also asserts that Plaintiffs have not adequately alleged that they paid a premium price for Defendant's products. However, whether they did or not is a matter for a later stage in the litigation, and the allegation that Plaintiffs paid a higher price is sufficient to plead economic loss. *See Samet v. Proctor & Gamble,* 2013 U.S. Dist. LEXIS 86432 at *10-11. Plaintiffs adequately plead an injury if they allege they would not have purchased the product had they known of the illegality *or* that they paid a premium price. Either will suffice.

### 3. Plaintiffs have standing to seek injunctive relief.

Defendant asserts in a footnote that Plaintiffs lack standing to seek injunctive relief because they now know what ECJ is, and thus cannot be fooled in the future. This argument should be rejected for the reasons set out in cases such as *Lanovaz v. Twinings N. Am., Inc.,* No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 1639 at *29-32 (N.D. Cal. Jan. 6, 2014); *Ries v. Arizona Beverages,* 287 F.R.D. at 533; *Koehler v. Litehouse, Inc.,* No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971 at *15-17 (N.D. Cal. Dec. 13, 2012); *Larsen v. Trader Joe's Co.,* No. C 11-05188 SI, 2012 U.S. Dist. LEXIS 162402 at*11 (N.D. Cal. June 14, 2012); and *Henderson v. Gruma Corp.,* CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077 at*19-20 (C.D. Cal. Apr. 11, 2011).

### C. Plaintiffs can represent a class that includes purchasers of identically misbranded products.

Plaintiffs have sought to represent a class that includes not only people who purchased the same flavors as the Plaintiffs, but also those who purchased the "Class Products," which are different

flavors of Defendant's organic low-fat and non-fat blended yogurt products in 6 oz. containers like those purchased by the Plaintiffs. As set out in the FAC, the Class products contain the same label misrepresentations and violate the same Sherman Law provisions, and differ primarily by flavoring. All are manufactured from the same primary ingredients. *See* FAC ¶ 3 & Exhibit 1. Defendant asserts that Plaintiffs lack standing to represent a class of persons who purchased products that, though misbranded and illegal in the exact same way as the products purchased by Plaintiffs, were not actually purchased by Plaintiffs themselves.

Judge Tigar exhaustively addressed this issue in *Clancy v. Bromley Tea Co.*, No. 12-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013), and persuasively demonstrated that whether Plaintiffs can assert claims on behalf of a class for products they did not purchase is a matter of commonality or typicality, not standing. *Id.* at *10-20. ("Transmogrifying typicality or commonality into an issue of standing would undermine the well-established" class action standing principles); *see also, e.g., Trazo v. Nestle*, 2013 U.S. Dist. LEXIS 113534 at *11 ("standing is merely a threshold inquiry that requires the class action plaintiff to demonstrate she suffered economic injury by virtue of the purchases she herself made, not for the other transactions that she seeks to represent"); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing).

While some courts have addressed this matter as a standing issue, the better reasoned view is that it is not an issue of standing, but a Rule 23 issue. "Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others depends not on standing, but on an assessment of typicality and adequacy of representation." 7AA Wright et al., FEDERAL PRACTICE AND PROCEDURE (3d 2005) § 1785.1 at 388-389. "[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class." 1 Rubenstein, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed.) (explaining why certification approach is preferable to the standing approach). Thus, as one court in the Central

District of California stated:

> The Court agrees with Plaintiff that treatises and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed. District courts in California routinely hold that the issue of whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Greenwood v. CompuCredit Corp.*, No. 08-04878 CW, 2010 U.S. Dist. LEXIS 127719, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 34151, at *12-13 (N.D. Cal. Mar. 29, 2011). Treatises and other circuits reach the same conclusion. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing); 7AA Wright et al., FEDERAL PRACTICE AND PROCEDURE (3d 2005) § 1785.1.[7]

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (C.D. Cal. 2011); *see also, e.g., Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-1142-SVW-PLA, 2013 U.S. Dist. LEXIS 82746 (C.D. Cal. June 10, 2013); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971 at *14 (N.D. Cal. Dec. 13, 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

To the extent that Plaintiffs may only represent persons who purchased products are deemed at the pleadings stage to be "substantially similar" to the ones Plaintiff did purchase (what Judge Tigar refers to as the "middle-ground position," *see Clancy*, 2013 U.S. Dist. LEXIS 112722 at *11-12), the Class Products listed in the complaint are all sold by the Defendant and are all misbranded in the same way and in violation of the same statutes and regulations. Whatever differences there may be between the Purchased Products and the Class Products are not material to the claims alleged in the Complaint. While Defendant asserts that some of the Class Products (it actually identifies two) have "additional sweeteners," *see* Doc. 37 at 14, things like maple syrup in maple flavored yogurt or passion fruit juice concentrate and orange juice concentrate in passion fruit flavored yogurt are pretty obviously flavoring ingredients and would be regarded as such by consumers, and are not merely added refined sugar like ECJ. And even if these differences were substantial, which they are not, it would only affect those two products, and not the remainder of the Class Products.

---

[7] In the version of *Bruno* available on LEXIS, the Wright, *et al.* cite is to § 1758.1, which does not exist and would be in a different volume if it did.

1    **III.    Plaintiffs alleged sufficient unlawful conduct to support a UCL "unlawful" claim.**

2        This Court has already determined that Plaintiffs adequately pleaded their ECJ unlawful

3    claim, and expressly rejected Defendants arguments in its prior motion regarding the allegedly non-

4    binding nature to the 2009 Draft Guidance. Doc. 34 at 14-15. Ignoring the Court's previous ruling in

5    this case, Defendant asserts that the FDA is wrong and that "evaporated cane juice" really is the

6    common or usual name of the ingredient and that the allegedly non-binding nature of the FDA's

7    guidance documents somehow establishes that Plaintiffs have failed to allege that the use of ECJ on

8    food labels is unlawful. *See* Doc. 37 at 14-18.

9        Defendant begins its argument with the false assertion that Plaintiffs "do not argue that

10   Wallaby had to list 'sugar' in the ingredient list, but rather argue that the phrase 'evaporated cane

11   syrup' or 'dried cane syrup' could have been used." *See* Doc. 37 at 14. In fact, Plaintiffs alleged that

12   the proper name of the ingredient is "sucrose" as defined in 21 C.F.R. § 184.1854, and that it is

13   properly labeled as "sugar" under 21 C.F.R. § 101.4(b)(20). *See* FAC ¶17. Plaintiffs also alleged that

14   "the FDA has suggested that 'dried cane syrup' *might* be an acceptable way to refer to the ingredient."

15   FAC ¶18 n.3. Plaintiffs further alleged that while they now believe the ingredient "ECJ" to be

16   "sugar," it was possible that it was actually "'dried cane syrup' as detailed in 21 C.F.R. § 168.130," but

17   either way, ECJ is not a legal way to designate the ingredient. FAC ¶35 & n.4; *see also* FAC ¶¶43, 48.

18   Contrary to the assertion in Defendant's motion, Plaintiffs never suggested that the phrase

19   "evaporated cane syrup" might be a permissible alternative. The phrase does not even appear in the

20   complaint. Defendant also asserts that Plaintiffs do not explain why "dried cane syrup" would be

21   more accurate than "evaporated cane juice." *See* Doc. 37 at 14. In fact, to the contrary, the FAC

22   alleges at that the term ECJ fails to reveal the "characterizing properties, *i.e.* the ingredients are sugar

23   or syrups" and instead misrepresent the ingredient as "juice." *See e.g.* FAC ¶¶41, 46, 50 n.7, 58, 87, 88,

24   91. The FAC further alleges that "ECJ is not the common or usual name of any sweetener as

25   established by common usage or by regulation," which means that its use on a food ingredient list is

26   a violation of Cal. Health & Saf. Code § 110725 and corresponding federal regulations

27   incorporated into the Sherman Law. *See* FAC ¶¶ 38, 41, 43, 47, 86, 50. And, as this Court has

28   previously ruled, that is sufficient to state a claim.

A.      Defendant's assertion that ECJ complies with the common or usual name for the ingredient is irrelevant to whether Plaintiffs stated a claim.

In denying Defendant's motion to dismiss Plaintiffs' "unlawful" claims, the Court observed: "The Court need not decide now whether Wallaby is in fact violating federal labeling requirements and, thus, the Sherman Law as well. The plaintiffs allege facts that plausibly show that Wallaby is not complying with the law, and that is enough at the pleading stage." Doc. 34 at 15. Defendant now asserts that ECJ really is the "common or usual name" because someone sent a comment to the FDA arguing that the terms it is widely used, and because certain government agencies not in the business of regulating food ingredient labels failed to object to the use of the term in other contexts. However, the fact that someone sent a comment to the FDA saying ECJ is "widely used" does not establish that it is the "common or usual name," contradicts the FDA's position, and is not something that the court can take as true in considering a motion to dismiss.[8] Likewise, the fact that certain agencies may have let the term slip by in other circumstances does not mean that the FDA misinterpreted its own regulations when it told the food industry that the term was illegal for the purposes of ingredient labeling. Whether ECJ is or is not the common or usual name of the ingredient is a fact issue that cannot properly be determined at the pleadings stage. *See  Jones v. Conagra*, 2012 U.S. Dist. LEXIS 178352 at *13 n.4  ("Whether 'propellants' is the common or usual name of the ingredient is a factual dispute that can be addressed at a different stage in the proceedings.").

Defendant asserts that the USDA[9] and the USPTO[10] have not objected to the use on the

---

[8] Defendant asks the Court to take judicial notice of its Exhibits K and L, which are public comments received by the FDA regarding the 2009 Draft Guidance. In the Court's ruling on Defendant's previous motion to dismiss, the Court took judicial notice of comments submitted to the FDA regarding the 2009 Draft Guidance over the Plaintiffs' objection. *See* Doc. 4 at n2. Plaintiffs recognize that the Court has made its ruling, but Plaintiffs would point out that records of an administrative body are judicially noticeable only to the extent the facts noticed are not subject to reasonable dispute. *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). The fact that the comments were submitted may not be subject to reasonable dispute, but the facts alleged in contents are, and are not judicially noticeable. *See Perretta v. Prometheus Dev. Co.*, No. C 05-02987 WHA, 2005 U.S. Dist. LEXIS 38729 at *5-6 (N.D. Cal. Dec. 15, 2005); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Plaintiffs would therefore object to the Court taking judicial notice of anything regarding the fact that certain non-parties have made statements to the FDA which may or may not be true. The contents of the comments are not facts generally known within this district, and do not constitute facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201(b).

[9] Exhibit J to Defendant's request for judicial notice lists information reported to the National Organic Program by food manufacturers, and is concerned with the use of the word "organic" under the Organic Food Production Act, not food ingredient labeling under the FDCA.

phrase "evaporated cane juice" in other contexts, and that some unidentified U.S. organization did not object to the use of the word "juice" in response to a request for comments on a proposed international standard for a completely different product.[11] Neither the USDA nor the USPTO nor the U.N. is charged with enforcing the FDCA or the parallel California law. However, the FDA, which actually is the agency that actually promulgated the "common or usual name" regulation pursuant to the FDCA, has weighed in on the matter, and, as the Court observed in its previous ruling, that interpretation, even if informal, is controlling unless plainly erroneous or inconsistent with the regulation. *See* Doc. 34 at 15. Even if the FDA's pronouncements on ECJ are not binding, they carry at least as much weight as statements by other government agencies cited in Defendant's memorandum. And even if relevant and properly judicially noticeable, the materials referred to in Defendant's memorandum could at most suggest that there is a fact issue on whether ECJ is the "common or usual name" of the ingredient (as opposed to having the issue conclusively decided in the Plaintiff's favor based on the FDA's pronouncements).

---

[10] Exhibits G-I to Defendant's request for judicial notice, the registration of trademarks including "cane juice evaporated" or "evaporated cane juice," are likewise the action of an agency that does not have regulatory authority over food labeling. Moreover, if anything, the USPTO's acceptance of "evaporated cane juice" as a registered word mark, would indicate that it is not the common or usual name of the ingredient because if ECJ were "merely descriptive" of a food ingredient, it would not be properly registerable as a trademark. 15 U.S.C. § 1502(e)(1).

[11] Exhibit M to Defendant's request for judicial notice is the Joint FAO/WHO Food Standards Programme's Codex Alimentarius Commission's "Request for Comments on the Proposed Draft Standard for Non-Centrifugated Dehydrated Sugar Cane Juice." This document, which relates to a completely different product, does not help Defendant's case.

First, the food at issue there bears little resemblance to the ingredient that Defendant calls ECJ. ECJ is "sucrose" as defined in 21 C.F.R. § 184.1854. *See* FAC ¶¶ 17, 43. Rather, "non-centrifugated dehydrated sugar cane juice" is the product "evaporated cane juice" pretends to be—essentially dried sugar cane "juice." As opposed to the ingredient labeled as "evaporated cane juice," which it a 99% sucrose product that is only slightly less refined than plain white sugar and is insignificantly different nutritionally from plain white sugar, "non-centrifugated dehydrated sugar cane juice," as described in Exhibit M, is unrefined and with "a maximum total sugar (saccharose) content of 83%." *See* Doc. 37-1 at 44. While ECJ is highly refined product with almost all of the non–sucrose component s to the "juice" stripped away, "non-centrifugated dehydrated sugar cane juice," on the other hand, "maintains its constituent elements," including minerals. Def. Exh. M, Annex 1, ¶¶3, 3.2.4. While the granulated version is allowed a higher sugar content (maximum of 93% for the granulated variety), it is still a far cry from the refined 99% sucrose product that Defendant palms off as ECJ.

Second, Defendant has not shown that the UN or the WHO, or the unidentified United States commenters are in any way involved with U.S. food labeling regulations, and, in any event, it does not purport to be the common or usual name of the product. *See* Def. Exh. M, Annex 1, ¶ 7.1.1. Finally, "non-centrifugated dehydrated sugar cane juice" has the word "sugar" in the name.

**B.     Plaintiffs' claims arise under California law, not the 2009 Draft Guidance.**

Plaintiffs' "unlawful" claim is predicated on Defendant for violations of various provisions of California's Sherman Law, including the provision that incorporated regulations promulgated under the Food Drug & Cosmetics Act, 21 U.S.C. § 301 *et. seq.* ("FDCA"). Defendant asserts that these claims should be dismissed because Plaintiffs did not allege that the Sherman Law incorporates the FDA's interpretation of its regulations along with the regulations themselves, and because the 2009 Draft Guidance is not binding.

Whether the FDA interpretations of its regulations were incorporated into the Sherman Law and whether they are binding is irrelevant to whether Plaintiffs stated an "unlawful" claim. Plaintiffs have alleged that Defendant's use of ECJ on food ingredient lists violates the Sherman Law, and unless Defendant can show, as a matter of law, that its labels comply with the law, Plaintiffs have stated a claim. As the Court wrote in rejecting essentially the same arguments the first time around:

> [A]t this juncture, the plaintiffs are not required to unequivocally establish that Wallaby has in fact broken the law--they merely need to plead sufficient facts to show that it is plausible that Wallaby broke the law. More to the point, the purpose of pleading is to put Wallaby on fair notice of the bases for the plaintiffs' claims, which the Complaint does. Thus, the plaintiffs' "unlawful" claim under the UCL survives.

Doc. 34 at 15; *see also, e.g., Samet*, 2013 U.S. Dist. LEXIS 86432 at *29 ("As alleged, Defendants' products contain 'sugar,' which should be cited by its "common or usual name" under the FDA regulations. This is sufficient to proceed no matter what final guidance may be issued by the agency."); *Trazo v. Nestlé*, 2013 U.S. Dist. LEXIS 113534 at *29-30 (plaintiffs stated "unlawful" ECJ claim based on violation of common or usual name requirement even though 2009 Draft Guidance is not a "binding regulation."); *Gitson v. Trader Joe's*, 2013 U.S. Dist. LEXIS 144917 at *31-32 (FDA's guidance and warning letters supported conclusion that defendant violated Sherman Law). And as in *Gitson*, Wallaby's "argument that the guidance and warning letters are nonbinding is beside the point." 2013 U.S. Dist. LEXIS 144917 at *31 n.9.

**C.     There is no basis to revisit the Court's rulings on preemption and primary jurisdiction.**

Defendant asserts in a footnote that he Court should dismiss under the primary jurisdiction doctrine. Doc. 37 at 17 n.15. The Court already considered and rejected these arguments in ruling on

Defendant's first motion to dismiss. *See* Doc.34 at 6-7. As set out in the FAC, the FDA's 2009 Draft Guidance on ECJ was a restatement of the FDA's long-held position, first set out in the 2000 Guidance Letter, and consistently maintained since, that the use of ECJ on food labels is misleading and violates the common or usual name requirement. *See* FAC ¶¶39-42, 46-48; *see also Werdebaugh v. Blue Diamond Growers*, No.: 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 at *31 (N.D. Cal. Oct. 2, 2013) (Observing that "in both binding and non-binding communications, the FDA has articulated a consistent position opposing the use of the term 'evaporated cane juice.'"). Defendant has not pointed to anything indicating that the FDA 's position has changed, or is likely to change in the future, nor has it pointed to anything that would suggest the Court was wrong in rejecting its primary jurisdiction argument the first time around.

In that same footnote, Defendant makes what looks to be a preemption argument, asserting that it is required to include a total sugars number on the label, and that the FDA does not allow food manufacturers to break that figure down to specify whether they are "added" or "naturally-occurring." However, since Plaintiffs have never alleged that any such label disclosure was required, Defendant's argument is irrelevant. All Plaintiffs asked is that Defendant comply with the law and identify the ingredient it calls ECJ by a proper common or usual name (which, as the FDA has repeatedly said, would entail identifying the ingredient as a "sugar" or "syrup") and stop calling it juice, thereby aiding consumers in identifying the ingredient as added sugar.

## IV.   Plaintiffs adequately stated a claim under the "unfair" prong.

Defendant asserts, without argument, that Plaintiffs "failed to correct the pleading failures identified in the prior complaint" with respect to the unlawful claim. This assertion is plainly false.

The Court said that under Plaintiffs failed to plead an "unfair" claim under the first test because they had not identified the "'*specific* constitutional, statutory, or regulatory provisions" Wallaby's practice of calling sugar 'evaporated cane juice' offends…." *See* Doc. 34 at 17. In the FAC, Plaintiffs alleged that this conduct is false and misleading in violation of CAL. HEALTH & SAF. CODE § 110660 and that violates the "common or usual name" requirement set out in CAL. HEALTH & SAF. CODE § 110725. FAC ¶33. Plaintiffs further detailed the specific statutory and regulatory provisions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

violated in ¶¶101-109 and Exhibit 1 to the FAC.

The Court said that the original complaint did not "claim that the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See* Doc. 34 at 17. In the FAC, Plaintiffs alleged, "This illegal label term is used to increase sales and to charge a premium by making a product seem healthier than it is in reality by making it appear that no sugar has been added as an ingredient." FAC ¶36 Plaintiffs further alleged: "Members of the public who purchased Wallaby's yogurt products at issue were likewise deceived by Defendant's unethical, unscrupulous business and marketing practice of using the false and misleading term ECJ to identify the sugar (sucrose) that it added to its yogurt." FAC ¶59.

With respect to the second test, the Court stated that Plaintiffs had failed to plead sufficient facts for the Court to say "whether the utility of the defendant's conduct does or does not outweigh the gravity of the alleged harm to the plaintiffs." *See* Doc. 34 at 17. The ingredient that Defendant calls ECJ is properly labeled as "sugar" under 21 C.F.R. § 184.1854. *See* FAC ¶17. Consequently, there is no need for Defendant to use ECJ on its labels. Plaintiffs specifically pleaded that "[t]he consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor," FAC ¶ 167, and the facts alleged throughout the FAC demonstrate that the only "utility" to the Defendant is calling sugar (sucrose) ECJ is in that it illegally misleads consumers who would prefer to avoid products containing added sugar. Misleading the public serves no legal purpose and there is no genuine utility to balance against the harm to the Plaintiffs and to the public.

Finally, the Court said that under either test, the original complaint did not sufficiently allege that Wallaby's conduct would deceive a reasonable consumer. The FAC addresses this issue at length, and sufficiently alleges facts showing that the use of the term ECJ to disguise the presence of added sugar (sucrose) would deceive a reasonable consumer. *See, e.g.,* FAC ¶¶56-100

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court deny Defendant's motion.

Dated: <u>January 17, 2014</u>

Respectfully submitted,

<u>/s/ Darren L. Brown</u>
Darren L. Brown (*pro hac vice*)
PROVOST UMPHREY LAW FIRM, LLP
490 Park St.
Beaumont, TX 77701
(409) 835-6000
dbrown@pulf.com

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
(408) 429-6506
pgore@prattattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on January 17, 2014, filed and served through the Court's ECF system a true and correct copy of the foregoing.

<u>/s/ Darren L. Brown</u>
Darren L. Brown (*pro hac vice*)