UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MORGAN, et al., | Case No. 13-cv-00296-WHO |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| WALLABY YOGURT COMPANY, INC., | |
| Defendant. | Re: Dkt. No. 37 |

Plaintiffs Frank Morgan and Janet Hood bring this putative class action on behalf of either a nationwide class or a statewide class of California consumers who, since January 22, 2009, purchased any yogurt product produced by defendant Wallaby Yogurt Company, Inc. ("Wallaby"), labeled with the ingredient "evaporated cane juice."  Wallaby moves to dismiss because, among other reasons, there is nothing illegal about the use of "evaporated cane juice" on yogurt products and no reasonable consumer would be misled by that term.  Because the plaintiffs have asserted a plausible claim, and for the reasons below, the motion to dismiss is DENIED and the plaintiffs' prayer for injunctive relief is STRUCK.

## BACKGROUND

Wallaby produces yogurt products. FAC ¶ 24.  The First Amended Complaint alleges, and I must accept as true for purposes of analyzing this motion, that Wallaby markets at least 17 different kinds of yogurt[1] that are "misbranded" "because they list 'evaporated cane juice' sometimes modified by the term 'organic' as a listed ingredient." FAC ¶ 16.  It does so to "make

---

[1] These include Wallaby Organic Low-Fat Yogurt in the following flavors:  Banana Vanilla, Black Cherry, Blueberry, Lemon, Maple, Orange Passion-Fruit, Peach, Raspberry, Strawberry, Vanilla, Vanilla Bean, Key Lime, Bartlett Pear, Blackberry, Mango Lime, Strawberry Guava, and Vanilla Bean.  FAC Ex. 1.

United States District Court
Northern District of California

its products appear healthier than a product that contains 'added sugar' as an ingredient," allowing it "to increase sales and to charge a premium."  FAC ¶ 36.

The plaintiffs are "health conscious consumers who wished to avoid 'added sugars' in the yogurt products they purchased."  FAC ¶ 58.  The plaintiffs only purchased Wallaby's Organic Low-Fat Yogurt with blueberry, strawberry, raspberry, and vanilla flavors.  FAC ¶ 2, Ex. 1.  "During the Class Period, Plaintiffs spent more than [$25.00] on the Purchased Products."  FAC ¶ 110.  They "were unaware that the Wallaby yogurt products they purchased contained 'added sugars' that were added as an ingredient into Defendant's yogurt during processing or preparation."  FAC ¶ 58.  "While Plaintiffs were aware that the Wallaby yogurt products contained some sugars, they believed these sugars were naturally occurring sugars that were found *naturally* in the ingredients used by Wallaby such as fruit (fructose) and milk (lactose)."  FAC ¶ 58.

The plaintiffs "scanned the ingredient lists of the Purchased Products for forms of added sugar" but "failed to recognize the term 'evaporated cane juice' as a form of added sugar."  FAC ¶ 59.  "This is hardly surprising" because "the FDA [Food and Drug Administration] considers the term to be false and misleading *because* it fails to reveal that the ingredient is a sugar or a syrup" and "'juice' is considered to be a healthy food that does not contain added sugars."  FAC ¶ 59.  "Plaintiffs were thus deceived by Wallaby's use of the false and misleading term ECJ."  FAC ¶ 59.  "The Plaintiffs would not have bought the Wallaby yogurt products that they purchased had they known they contained 'added sugar.'"  FAC ¶ 85.  The plaintiffs also would not have purchased the products had they known that the products contained added syrups.  FAC ¶ 113.  The plaintiffs read the ingredient lists of the products they purchased and relied on them, but did not realize that evaporated cane juice was sugar.  FAC ¶¶ 85, 114.  They thought that because the term "juice" was used, "it sounded like something healthy."  FAC ¶¶ 124, 126.  "After Plaintiffs learned that Defendant's Purchased Products were falsely labeled, each of them stopped purchasing them."  FAC ¶ 116.

"The Nutrition Facts listing of total sugars does not allow a consumer to determine if a product has any added sugars.  Consumers are only able to determine the presence of added sugars by reading a product's ingredient list."  FAC ¶ 60.  "Disclosure of the total number of grams of

2

sugar in the Nutrition Panel of a foods [sic] label does not render the use of ECJ in the ingredients list non-misleading" because "the total sugars disclosure does not disclose the presence of added sugars as opposed to sugars occurring naturally in other ingredients" and "does not disclose the nature of the added sugars."  FAC ¶ 62.  "All varieties of Wallaby yogurt other than its plain varieties have significant added sugar."  FAC ¶ 84.

The FDA issued a draft guidance statement in 2009, which states that "FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice . . . ."  FAC ¶ 41.  Ingredients labeled on a food product "shall be listed by common or usual name," and "'evaporated cane juice' is not the common or usual name of any time of sweetener, including dried cane syrup.  Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'"  FAC ¶ 41.  The draft statement says that the FDA considers labeling sweeteners derived from cane syrup with "names which suggest that the ingredients are juice, such as 'evaporated cane juice,'" to be "false and misleading."  FAC ¶ 41.  "Wallaby has actual knowledge of this FDA Guidance Letter . . . ."  FAC ¶ 42.

Wallaby's products identify "'Evaporated Cane Juice' as an ingredient, despite the fact that the [Food, Drug, and Cosmetic Act] requires that the ingredient be called 'sugar' or 'dried cane syrup.'  The ingredient is not 'juice,' but is 'sugar' or 'syrup.'"  FAC ¶ 38.  The plaintiffs "would not have purchased a product that is illegal to own or possess."  FAC ¶ 7.  They "relied upon the Defendant's implied representation that Defendant's products were legal that arose from Defendant's material omission of the facts."  FAC ¶ 7.  They were "misled into believing [that Wallaby's products] do not contain added sugars or syrups."  FAC ¶ 10.

### PROCEDURAL HISTORY

The plaintiffs filed this action on January 22, 2013.  Dkt. No. 1.  The original complaint contained identical causes of action as the FAC, but with the addition of a Seventh Cause of Action for "restitution based on unjust enrichment/quasi-contract."  On April 8, 2013, Wallaby moved to dismiss the complaint.  Dkt. No. 13.  On October 4, 2013, I granted in part and denied in

3

part the motion to dismiss.  Dkt. No. 34 ("Order").  Wallaby's motion to dismiss the plaintiffs'

First Cause of Action for violation of the "unlawful" prong of the UCL was denied except to the

extent that the cause of action was premised on a violation of the FDA's Standard of Identity for

yogurt.  Wallaby's motion to dismiss the plaintiffs' Seventh Cause of Action and First Cause of

Action premised on an alleged violation of the FDA's Standard of Identity for yogurt was granted

with prejudice.  All other causes of action were dismissed with leave to amend.

In the Order, I held that (1) the plaintiffs have Article III standing; (2) the "primary

jurisdiction" doctrine does not apply; (3) the yogurt claims are not preempted by federal law; and

(4) the plaintiffs are not seeking to enforce FDA regulations.

The plaintiffs bring this suit on behalf of a class defined as "All persons in the United

States, or in the alternative, all persons in the state of California who, within the last four years,

purchased Defendant's Yogurt Products labeled with the ingredient, 'Evaporated Cane Juice' or

substantially identical term."  FAC ¶ 136.  They bring six causes of action:  (1) violation of the

"unlawful" prong of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE

§§ 17200 *et seq.*; (2) violation of the "unfair" prong of the UCL; (3) violation of the "fraudulent"

prong of the UCL; (4) misleading and deceptive advertising under California's False Advertising

Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; (5) untrue advertising under the FAL;

and (6) violation of California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE

§§ 1750 *et seq.*  The plaintiff seeks both damages and injunctive relief.  Wallaby moves to dismiss

the FAC in its entirety.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

pleadings fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The

court must "accept factual allegations in the complaint as true and construe the pleadings in the

light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

F.3d 1025, 1031 (9th Cir. 2008).  The complaint "does not need detailed factual allegations," but

instead only needs enough factual allegations "to raise a right to relief above the speculative

level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory allegations

United States District Court
Northern District of California

1    and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am.*

2    *Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

3         Additionally, fraud claims are subject to a higher standard and must be pleaded with

4    particularity. FED. R. CIV. P. 9(b).  This is true of state law claims, such as those under the UCL,

5    CLRA, and FAL, that are grounded in fraud, which must "be accompanied by the who, what,

6    when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

7    1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted).  Such claims "must be specific

8    enough to give defendants notice of the particular misconduct which is alleged to constitute the

9    fraud charged so that they can defend against the charge and not just deny that they have done

10   anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  A

11   plaintiff claiming fraud must also plead reliance.  *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51

12   Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines v. Super. Ct. of Los Angeles Cnty.*, 101

13   Cal. Rptr. 3d 323, 331 (Ct. App. 2009) (CLRA).  The challenged statements must be judged

14   against the "reasonable consumer" standard under the UCL, CLRA, and FAL.  *Consumer*

15   *Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).

16                                   **DISCUSSION**

17         In the Order, I held that the plaintiffs have Article III standing to bring this case, that they

18   stated a claim under the "unlawful" prong of the UCL, that the primary jurisdiction doctrine does

19   not apply, and that the plaintiffs are not seeking to enforce FDA regulations.  Despite these

20   holdings, Wallaby attempts to re-litigate these issues without any justifiable basis and without

21   properly seeking leave of court as required by Civil Local Rule 7-9.  *See* Br. 7 (Article III

22   standing); Br. 14 ("unlawful" claim); Br. 17 n.15 (primary jurisdiction doctrine); Reply Br. 9 n.6

23   (preemption).  Wallaby's efforts are "really an unauthorized motion for reconsideration."

24   *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-cv-5696-CRB, 2011 WL 2690437, at

25   *2 (N.D. Cal. July 8, 2011).  I previously considered those arguments and will not decide them

26

27

28

United States District Court
Northern District of California

1  again.[2]

2      For the reasons below, I conclude that the plaintiffs have adequately stated a claim under

3  all three prongs of the UCL, the CLRA, and the FAL.

4  **I.    STANDING**

5      **A.  The Plaintiffs Have Article III Standing.**

6      I previously held that the plaintiffs have Article III standing.  Order 5.  The issue is settled

7  for purposes of pleading.

8      **B.  The Plaintiffs Have Statutory Standing.**

9      A plaintiff's "illegal product theory could pass muster under Article III" but "fail[ ] as a

10 basis for establishing statutory standing under the UCL, FAL, and CLRA."  *Brazil v. Dole Food*

11 *Co., Inc.*, No. 12-cv-1831-LHK, 2013 WL 5312418, at *8 (N.D. Cal. Sept. 23, 2013).  The UCL,

12 FAL, and CLRA require a plaintiff to establish that he or she suffered an economic injury in order

13 to have standing.  *Kwikset*, 51 Cal. 4th at 323, 326.  "A plaintiff has suffered economic injury

14 when she has either:  (1) expended money due to the defendants' acts of unfair competition; (2)

15 lost money or property; or (3) been denied money to which he or she has a cognizable claim."

16 *Samet v. Procter & Gamble Co.*, No. 12-cv-1891-PSG, 2013 WL 3124647, at *3 (N.D. Cal. June

17 18, 2013) (citation and quotation marks omitted).  Plaintiffs bringing these causes of action must

18 show actual reliance and causation if they are based on fraud or misrepresentations.[3]  *Figy v.*

19 *Amy's Kitchen, Inc.*, No. 13-cv-3816-SI, 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013)

20 ("actual reliance requirement also applies to claims under the unlawful prong of the UCL where

21 the alleged unlawful conduct is that the defendant engaged in misrepresentations and consumer

22 deception"); *In re Actimmune Mktg. Litig.*, No. 08-cv-2376-MHP, 2010 WL 3463491 (N.D. Cal.

23

24 _____

[2] On March 4, 2014, Wallaby filed a notice that the FDA intends to reopen the comment period on
25 draft guidance for the industry concerning evaporated cane juice. Dkt. No. 48.  The FDA requests
comments, data, and information about evaporated cane juice, how it is produced, and how it
26 relates to other sweeteners.  It remains unclear when or if the FDA will conclusively resolve this
issue.  *See* Dkt. No. 48-1 at 6 ("we [the FDA] intend to revise the draft guidance, *if appropriate*")
27 (emphasis added).  Lacking definitive guidance, this case will proceed apace.
[3] Actual reliance is also necessary to have standing under the CLRA and FAL.  *Williamson v.*
28 *Reinalt-Thomas Corp.*, No. 11-cv-03548-LHK, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25,
2012).

United States District Court
Northern District of California

Sept. 1, 2010) ("the 'as a result of' language places the burden on plaintiffs to establish that they actually relied upon the representations"); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (Ct. App. 2010); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (Ct. App. 2010).

To show reliance, a plaintiff must establish that "the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). However, "[w]hile a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause." *Id.* The plaintiff must only show that it was a "substantial factor" in his decision. A "material" misrepresentation—one to which "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question"—creates the inference of reliance. *Id.* at 327.

The plaintiffs have statutory standing.[4] As another judge in this district explained, where plaintiffs "allege that as health-conscious consumers, they relied on the misleading product labels in purchasing the products, and had they known the truth, they would not have purchased the products at the premium price paid," they have statutory standing. *Samet*, 2013 WL 3124647, at *3. The plaintiffs here alleged that they are health conscious consumers who wish[ ] to avoid 'added sugars' in the yogurt products they purchase[ ]." FAC ¶ 58. They read the ingredient list on Wallaby products, saw "evaporated cane juice" listed, but did not realize it was added sugar. FAC ¶¶ 59, 86, 111. While they could see the total amounts of sugar listed in the nutritional information, those figures did not disclose what sugars were from the fruits or dairy in the yogurt (which the plaintiffs do not mind) and that sugars were added (which the plaintiffs do mind). FAC ¶¶ 60-62. Because Wallaby improperly labeled what was actually added sugar as "evaporated cane juice," and the ingredient lists did not say "sugar" anywhere, the plaintiffs were misled into

---

[4] The plaintiffs argue that pleading reliance is not required for standing under the "unlawful" prong of the UCL if the predicate action does not sound in fraud. Opp'n 12-14. I need not decide the issue here because although the plaintiffs attempt to characterize their "unlawful" claim as a pure mislabeling issue, the gravamen of their claim is grounded in fraud. They must plead reliance.

United States District Court
Northern District of California

purchasing products they otherwise would not have purchased. FAC ¶ 10. "Courts in this district have overwhelmingly found that such allegations are sufficient to establish economic injury." *Samet*, 2013 WL 3124647, at *3. The same is true of reliance and causation. *See Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at *4 (N.D. Cal. Feb. 25, 2013) ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims.").

Wallaby argues that the plaintiffs lack statutory standing because they have not plausibly alleged that they relied on the term "evaporated cane juice." Wallaby is correct that the allegations of reliance in this case are virtually identical to those rejected as implausible in *Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, 2013 WL 5289253, at *6-8 (N.D. Cal. Sept. 19, 2013). Both sets of plaintiffs alleged that the phrase "evaporated cane juice" concealed the fact that the yogurts contained added sugar; both claimed they believed that the yogurts contained only "naturally occurring" sugar, such as fructose and lactose; and both stated that they would not have purchased the yogurts had they known that there was added sugar in them. Br. 9. Wallaby points out that the plaintiffs appear to suggest that "dried cane syrup" is an "acceptable" description for a form of added sugar. Br. 9 (citing FAC ¶ 18 & 6 n.3). However, as in *Kane*, "the [complaint] fails to explain how Plaintiffs could have realized that dried cane syrup was a form of sugar, but nevertheless believed that evaporated cane juice was not." *Kane*, 2013 WL 5289253, at *7. *Kane* continues:

> What is more, the [complaint] fails to allege what Plaintiffs believed evaporated cane juice to be if not a form of sugar. Indeed, Plaintiffs do not allege that there is some other form of cane besides sugar cane. Absent *some* factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups" is simply not plausible.

*Kane*, 2013 WL 5289253, at *7. The court therefore found that the plaintiffs lacked statutory standing, which the court reaffirmed in a subsequent order dismissing the case entirely. *Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, Dkt. No. 168, at 16 (N.D. Cal. Feb. 20, 2014).

United States District Court
Northern District of California

1    Without indicating a view regarding the merits of this claim, this Order disagrees with

2    *Kane* on the issue of standing.  The plaintiffs plead that they only care about added sugar:  if they

3    see additional sugar in an ingredient list, as opposed to sugar "naturally occurring" in the fruit and

4    milk in yogurt products, they would not purchase the product.  FAC ¶ 59.  Because the plaintiffs

5    did not realize that "evaporated cane juice" was actually sugar, they bought Wallaby's yogurt

6    products despite seeing "evaporated cane juice" in the ingredients.  The FAC does state that the

7    plaintiffs believe that "dried cane syrup" is a permissible designation for sugar.[5]  But assuming

8    that the plaintiffs knew that dried cane syrup is sugar, I do not find it implausible, at least for

9    purposes of a motion to dismiss, that a reasonable consumer would not equate "dried cane *syrup*"

10   with "evaporated cane *juice*."  Juice and syrup are quite different.  More importantly, it does not

11   matter what the plaintiffs thought "evaporated cane juice" was if not sugar.  Wallaby's arguments

12   are unavailing and the plaintiffs adequately plead reliance.

13         **C.   The Plaintiffs Do Not Have Standing To Seek Injunctive Relief.**

14         The FAC seeks "equitable remedies available pursuant to Cal. Civ. Code § 1780," FAC

15   ¶ D, which provides for "[a]n order enjoining the methods, acts, or practices" deeded to constitute

16   unfair competition.  CAL. CIV. CODE §§ 1770, 1780.  Wallaby argues that the plaintiffs lack

17   standing to seek injunctive relief because they now know what "evaporated cane juice" is and

18   cannot be harmed again in the future.  Br. 13 n.11; Reply 10-11.

19         A plaintiff seeking prospective injunctive relief "must demonstrate that he has suffered or

20   is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood

21   that he will again be wronged in a similar way.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

22   985 (9th Cir. 2007) (citation omitted).  The plaintiff must "establish a 'real and immediate threat

23   of repeated injury'" that "must be likely to be redressed by the prospective injunctive relief."  *Id.*

24   "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not

25   represent a class seeking that relief."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir.

26

27   ───────────────────────
     [5] The FAC does not say that the plaintiffs actually know what "dried cane syrup" is; it merely
     contains numerous (and irrelevant, at least for purposes of this motion) paragraphs that their
28   counsel appears to have included to explain what may or may not be appropriate labeling under
     the applicable laws.

1999).  Without a fear of future harm, injunctive relief is not available.

"District courts in this circuit are split over the issue of whether a plaintiff, who is seeking to enjoin a seller or manufacturer from making false or misleading misrepresentations about an item the plaintiff previously purchased, must be able to establish that he would likely purchase the item again to establish standing."  *Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019, 2013 WL 1969957, at *2 (S.D. Cal. May 13, 2013).  At least three judges in this district have found that such a plaintiff has standing even if he does not allege that he would purchase the product again. *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646-RMW, 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014); *Koehler v. Litehouse, Inc.*, No. 12-cv-4055-SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (Seeborg, J.).  Judge Illston explained, "To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."  *Koehler*, 2012 WL 6217635, at *6; *see also Larsen v. Trader Joe's Co.*, No. 11-cv-5188-SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012).

On the other hand, at least two judges in this district have required a showing of a likelihood of future harm before allowing injunctive relief.  *See Jou v. Kimberly-Clark Corp.*, No. 13-cv-3075-JSC, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626-27 (N.D. Cal. 2011) (Grewal, J.).  Reexamining this question, Judge Illston recently held that "to establish standing, plaintiff must allege that he intends to purchase the products at issue in the future."  *Rahman v. Mott's LLP*, No. 13-cv-3482-SI, 2014 WL 325241, at *10 & n.9 (N.D. Cal. Jan. 29, 2014) ("The Court declines to follow its prior analysis in *Larsen* and *Koehler v. Litehouse, Inc.*, to the extent it conflicts with the above analysis.") (citations omitted).

I agree that the plaintiffs must be threatened by the same alleged harm in order to seek injunctive relief, even if on behalf of a class of consumers.  While granting an injunction would undoubtedly further the California legislature's intent of protecting consumers, a federal court's power to grant relief is limited by the authority granted by the United States Constitution as interpreted by the courts.  Here, I am limited to only granting damages since the plaintiffs now

know what evaporated cane juice is and have unambiguously stated that they would not have purchased the product had they known it contained added sugar.  They cannot plausibly allege that they would purchase the challenged products in the future if they were properly labeled.  While damages may not be the most effective remedy to achieve the California legislature's goals, the threat of damages and other available relief may also give businesses pause should they decide not to abide by consumer protection laws.  Injunctive relief, however, is not available based on the allegations in this action.

### D.  The Plaintiffs Have Standing To Challenge Products They Did Not Purchase.

Wallaby argues that the plaintiffs lack standing to assert claims based on products they did not purchase.  Br. 13.  The plaintiffs argue that "[w]hatever differences there may be between the Purchased Products and the Class Products are not material to the claims alleged in the Complaint."  Opp'n 19.

"There is no controlling authority on whether [p]laintiffs have standing for products they did not purchase."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012) (Beeler, J.).  Some judges treat this question as one relevant to standing.  *See, e.g.*, *Granfield v. NVIDIA Corp.*, No. 11-cv-5403-JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Larsen*, 2012 WL 5458396, at *4 (holding that a plaintiff challenging the labeling of a product he did not purchase "cannot establish a legally cognizable injury under Article III").  One judge noted that "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (Beeler, J.); *see also Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012).

Other judges in this district have observed that "standing is merely a threshold inquiry that requires the class action plaintiff to demonstrate she suffered economic injury by virtue of the purchases she herself made, not for the other transactions that she seeks to represent," and

1   questions of substantial similarity are more appropriately deferred until the class certification

2   stage.  *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272 PSG, 2013 WL 4083218, at *4 (N.D. Cal. Aug.

3   9, 2013); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910-EMC, 2012 WL

4   2990766, at *13 (N.D. Cal. July 20, 2012) ("any concerns . . . about material differences are better

5   addressed at the class certification stage rather than at the 12(b)(6) stage").

6        Regardless of the approach, judges look to various factors showing "substantial similarity"

7   between the purchased and unpurchased products.  In *Anderson v. Jamba Juice Co.*, 888 F. Supp.

8   2d 1000, 1006 (N.D. Cal. 2012), Judge Gonzales Rogers allowed the plaintiff's claims about a

9   class of products to go forward, finding that "[t]here is sufficient similarity between the products

10  purchased . . . because the same alleged misrepresentation was on all of the [products] regardless

11  of flavor" and all of the products contained the same challenged ingredients.  In *Wilson v. Frito-*

12  *Lay North America, Inc.*, Judge Conti explained that courts often consider "whether the challenged

13  products are of the same kind, whether they are comprised of largely the same ingredients, and

14  whether each of the challenged products bears the same alleged mislabeling."  No. 12-cv-1586-

15  SC, 2013 WL 5777920, at *4 (N.D. Cal. Oct. 24, 2013).  In *Astiana v. Dreyer's Grand Ice Cream*,

16  Judge Chen reasoned, "Plaintiffs are challenging the same kind of food products (*i.e.*, ice cream)

17  as well as the same labels for all of the products—*i.e.*, 'All Natural Flavors' for the Dreyer's/Edy's

18  products and 'All Natural Ice Cream' for the Haagen-Dazs products.  That the different ice creams

19  may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same

20  basic mislabeling practice across different product flavors."  2012 WL 2990766, at *13.

21        In *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196, I considered the various approaches

22  that judges in this district have taken in applying the substantial similarity test.  I concluded that

23  whether products are substantially similar depends on whether the type of claim and consumer

24  injury between products the plaintiff did and did not purchase is substantially similar.  As I

25  explained in *Ang*:

26        That determination necessarily focuses on whether the resolution of the asserted claims
          will be identical between the purchased and unpurchased products.  For example, a claim
27        that products are illegally mislabeled as a matter of law because the labels fail to disclose
          something required by a statute or regulation can be resolved without a context-specific

28

12

analysis of each product's label.  The label is either illegal or it is not.  That the products bearing the challenged label may be different – or that the labels themselves are different in other respects – is immaterial to the determination of whether the label is in fact illegal. On the other hand, a claim that a reasonable consumer would be misled by a representation on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label. In those circumstances, a consumer may only be allowed to pursue those claims for products with identical labels.  Finally, where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance.

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196, slip op. at 14 (N.D. Cal. March 13, 2014).

Without deciding issues relevant to class certification, I am persuaded that the plaintiffs have standing to bring claims challenging the 17 Wallaby yogurt products labeled with "evaporated cane juice."  The alleged misrepresentation is identical across all the challenged products, with the possible exception of the additional modifier of "organic" to "evaporated cane juice," but the plaintiffs make no allegations concerning the term "organic."  FAC ¶ 1.  The plaintiffs allege that they care about whether products have added sugar and were misled because they did not know that "evaporated cane juice" is sugar.  A product that lists "evaporated cane juice" in its ingredients, but not sugar, will mislead and harm the plaintiffs and others similarly situated.  While Wallaby argues that the products are not "substantially similar" because ingredients vary across the 17 flavors, differences in ingredients do not change the fact that, as alleged, the challenged representations are the same and cause the same harm.  Wallaby does not argue that the differences in ingredients affect the nature of or harm from the alleged misrepresentation, so any such differences are insufficient to defeat substantial similarity for purposes of standing.

A legitimate concern of overbroadening the scope of challenged products in cases such as this one is the potential for burdensome and undefined discovery for the defendant.  Here, there is little danger of Wallaby being subjected to onerous and expansive discovery:  the plaintiffs are challenging nearly identical products that largely differ based on flavor only.  "That the different [yogurts] may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors."  *Astiana*, 2012 WL 2990766, at *13.  "[T]he Court can address [the] concern [about prejudicial discovery] with careful case

1    management and the supervision of discovery." *Clancy v. The Bromley Tea Co.*, No. 12-cv-

2    03003-JST, 2013 WL 4081632, at *6 (N.D. Cal. Aug. 9, 2013).

3           The cases cited by Wallaby do not support its argument that the plaintiffs cannot bring

4    claims based on products they did not purchase. *Wilson v. Frito-Lay North America* involved

5    "potato chips, corn chips, and puffed corn products," which the plaintiff claimed "are made by the

6    same manufacturer and, with the exception of flavors, contain the same ingredients and implicate

7    the same concerns." 2013 WL 5777920, at *4. Judge Conti held that "substantial similarity" was

8    not shown, not because the products were not similar, but because the plaintiffs did not explain

9    how 85 products—which were being challenged for being wrongly claimed to be "all natural,"

10   have no trans fats, have no monosodium glutamate, etc.—were actionably mislabeled. In

11   particular, he noted differences between the labels, particularly differences in the use of the term

12   "natural," and refused to "assume that every one of the Non-Purchased Products' labels is

13   actionable in the same way . . . ." *Id.* at *5. That is not the same problem here where there is only

14   one alleged misrepresentation that causes one type of harm. *Bruton v. Gerber Products Co.*, No.

15   12-cv-02412-LHK, 2014 WL 172111, at *8 (N.D. Cal. Jan. 15, 2014), is similarly unhelpful

16   because the court did not analyze whether the claims asserted against the unpurchased products

17   were identical in terms of the injury suffered by plaintiff and other purchasers, but simply

18   dismissed unpurchased products because of their physical differences from the purchased

19   products.

20   **II.      UCL, CLRA, AND FAL CLAIMS**

21          Claims under the fraudulent and unfair prongs of the UCL, as well as claims under the

22   CLRA and FAL are generally held to the "reasonable consumer" standard. *See Williams v.*

23   *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff must show that consumers are

24   "likely to be deceived" by the challenged statements. *Id.* (citation omitted). As the Ninth Circuit

25   noted, "The California Supreme Court has recognized that these laws prohibit not only

26   [statements] which are false, but also [statements] which, although true, [are] either actually

27   misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public."

28   *Id.* (quotation marks and brackets omitted).

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.  Unfair Competition Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.  "Each of these three adjectives captures a separate and distinct theory of liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).  The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### 1.  The plaintiffs state a claim under the "fraudulent" prong.

The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived."  *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002).  "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  *Williams*, 552 F.3d at 938; *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *see also Gustavson v. Wrigley Sales Co.*, 12-cv-1861-LHK, 2013 WL 5201190, at *18 (N.D. Cal. Sept. 16, 2013) ("While Defendants' [sic] dispute the plausibility of these statements, arguing that no reasonable consumer would attach any significance to these alleged labeling violations, the Court recognizes that whether a practice is 'deceptive, fraudulent, or unfair' is generally a question of fact that is not appropriate for resolution on the pleadings."); *Khasin v. Hershey Co.*, No. 12-cv-1862 EJD, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) ("the issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion)).  "[W]here a plaintiff fails to advance a plausible claim that a reasonable consumer was likely to be misled by a particular statement or advertisement, the Ninth Circuit has stated nonetheless that it is the 'rare situation in which granting a motion to dismiss is appropriate.'"  *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 830 (N.D. Cal. 2013) (Chen, J.).

The plaintiffs allege that they are health-conscious consumers who want to avoid "added sugar."  Opp'n 5 (citing FAC ¶ 58).  They particularly steer clear from sugar added as a separate ingredient as opposed to ones "that naturally occur as components of other ingredients such as

1   milk or fruit or juice." Opp'n 5 (citing FAC ¶¶ 58, 61-62, 72-73, 77). The plaintiffs looked at the

2   ingredient lists of Wallaby's products and failed to recognize "evaporated cane juice" as a form of

3   added sugar. Opp'n 5 (citing FAC ¶ 59). "[W]hat was actually added sugar was misrepresented

4   as 'juice' and not identified as a sugar or syrup." Opp'n 6 (citing FAC ¶ 86). "Sugar" or "syrup"

5   indicates added sugar to reasonable consumers, but "juice" does not. Opp'n 6 (citing FAC ¶¶ 85,

6   90, 92). The plaintiffs would not have purchased Wallaby products had they known that

7   evaporated cane juice was sugar. Opp'n 6 (citing FAC ¶¶ 124, 126). They argue that whether

8   their reliance was reasonable is a question that must be addressed outside a motion to dismiss.

9   Opp'n 6.

10          Based on these arguments, the plaintiffs sufficiently plead a violation of the "fraudulent"

11   prong of the UCL. The plaintiffs' only burden at this stage is to articulate a plausible claim for

12   relief. That they were misled about whether there was added sugar in Wallaby's yogurt product

13   because the ingredient list did not say "sugar" or "dried cane syrup" but said "evaporated cane

14   juice" instead is plausible. As one judge in this district has held in the FAL context, where

15   plaintiffs allege that they "read the ingredient lists and were lead [sic] to believe that the product

16   contained no added sugar, only those sugars naturally occurring in the food, based on the term

17   evaporated can[e] juice," that is sufficient to survive a motion to dismiss because "[a]lthough

18   Defendants may be correct as a factual matter, once again, the Ninth Circuit has made it clear that

19   such questions are issues of fact and inappropriate for resolution on a motion to dismiss." *Samet*,

20   2013 WL 6491143, at *6-7.

21          In their original complaint, the plaintiffs alleged that they would not purchase products that

22   "contained sugar or dried cane syrup." Compl. ¶ 71. I found that their claim was contradictory

23   and implausible in light of the fact that the nutrition information actually disclosed that there was

24   sugar in the product. I stated, "If their claim is that they would purchase products containing

25   naturally occurring sugar, but not those with added sugar, they need to allege that with

26   particularity in their complaint." Order 14. The plaintiffs have done so. Whether the term

27   "evaporated cane juice" is actually misleading to a reasonable consumer is a question of fact for a

28   jury to decide, but I cannot say that the plaintiffs' claim is unreasonable as a matter of law.

Wallaby argues that the plaintiffs have not plausibly alleged that "evaporated cane juice" is misleading because they have not plausibly alleged what they or a reasonable consumer thought it was instead.  Br. 5-6 (citing FAC ¶ 85); Reply 2.  As discussed above, Wallaby relies primarily on *Kane v. Chobani*, in which the court concluded that the complaint failed to state a claim because it "fails to allege what Plaintiffs believed evaporated cane juice to be if not a form of sugar."  *Kane*, 2013 WL 5289253, at *7.  The court continues, "Indeed, Plaintiffs do not allege that there is some other form of cane besides sugar cane.  Absent some factual allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained 'only natural sugars from milk and fruit and did not contain added sugars or syrups' is simply not plausible."  *Id.*  In an earlier order denying the plaintiffs' motion for a preliminary injunction, the court similarly stated that it was "not persuaded that consumers are likely to be confused as to whether evaporated cane juice is a form of sugar or an ingredient containing sugar.  The fact that the name of the ingredient discloses that it is derived from cane seriously undermines any contention that consumers are unlikely to be under the impression that the ingredient is or contains sugar.  Thus, I am not persuaded that consumers are likely to be deceived into consuming unwanted sugar."  *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 WL 3776172, at *9 (N.D. Cal. July 15, 2013).

Again, this Order disagrees with *Kane.*  The plaintiffs must only plausibly allege that a reasonable consumer would not know that "evaporated cane juice" was actually sugar and would be misled into believing that a food product, which had an ingredient list that did not otherwise list "sugar," did not have added sugar.  That a reasonable consumer does not know that "evaporated cane juice" is "sugar" is not so implausible that the plaintiffs fail to state a claim as a matter of law.  This is true even if the plaintiffs concede that they knew that "dried cane syrup" was sugar.  The plaintiffs do not need to identify what they believed evaporated cane juice to be if not sugar, or what other forms of cane there are besides sugar cane.  There is no need for the plaintiffs to have any understanding of "evaporated cane juice" at all—it is sufficient to plead that they did not

think, and a reasonable consumer would not know, that it was really just added sugar.[6]  A reasonable consumer need not be a knowledgeable and encyclopedic consumer as well.

Wallaby argues that the plaintiffs' "added sugar" theory is implausible because a reasonable consumer would recognize that sweet, vanilla-flavored, or fruit-flavored, yogurts would include some sugar-based sweetener.  Br. 6.  Wallaby says that "it is a 'well-known fact of life' that sweet-flavored yogurts have some added sugars."  Reply 2.  It asserts that "there does not appear to be a single sweet-flavored yogurt on the market that does *not* include 'added sugars.'"  Br. 6.  Wallaby argues, "it is implausible that a reasonable consumer would believe that a sweet-tasting yogurt does not have any 'added sugars,' and instead would believe that the '20g' of 'sugars' disclosed in the Nutrition Facts box of the label was 'natural' sugar found in milk or an apple."  Reply 1.  "A reasonable consumer skimming the supermarket shelf would be aware of other fruit-flavored yogurts with added sugar and would recognize that flavored yogurts are made with sugar-based sweeteners," Wallaby contends.  Br. 7.  "Indeed, Plaintiffs have not rebutted Wallaby's point that every single fruit or vanilla-flavored yogurt available in the market today has some 'added sugars.'"  Reply 3.

Wallaby's assertions may be persuasive on the merits, but they are unsupported at this point.  Even if they were true, the information proffered is outside the scope of the FAC and cannot be considered by me on a motion to dismiss.  The issue is whether the FAC plausibly states a claim, not whether some unsupported assertion of outside fact must be rebutted.  This claim survives Wallaby's motion to dismiss.

### 2.  The plaintiffs state a claim under the "unlawful" prong.

I previously held that the plaintiffs have stated a claim under the "unlawful" prong of the UCL.  Order 14.  The issue is settled for purposes of pleading.

---

[6] Wallaby points out that I stated in my Order that "[t]he plaintiffs do not explain what precisely a reasonable consumer would find misleading about the term 'evaporated cane juice.'"  Br. 6 (quoting Order 13).  That observation was made in the context of explaining that in the original complaint, the plaintiffs did not make clear what it is about the term "evaporated cane juice" that led them to believe that Wallaby's yogurt products had no sugar content at all even though the sugar content was printed right next to the ingredient list.

United States District Court
Northern District of California

### 3. The plaintiffs state a claim under the "unfair" prong.

"California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." *Rubio*, 613 F.3d at 1204; *Davis v. Ford Motor Credit Co.*, 101 Cal. Rptr. 3d 697, 707 (Ct. App. 2009). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provisions." *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006). (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Ct. App. 2000).

In my Order, I held, "Under the first test, because the plaintiffs fail to identify under their unfair-prong pleading what '*specific* constitutional, statutory or regulatory provisions' Wallaby's practice of calling sugar 'evaporated cane juice' offends, nor do they claim that the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' they fail to state a claim under the first test of the 'unfair' prong." Order 17. In their FAC, the only changes the plaintiffs made were the addition of "and unethical" to Paragraph 164 of the FAC and the deletion of "and that had no economic value" from Paragraph 107 of the original complaint. Because the plaintiffs have made no substantive changes to their FAC in this regard despite my identification of the original complaint's deficiencies, they again fail to state a claim under the first test of the "unfair" prong.

In my Order, I also held, "Under the second test, the plaintiffs fail to plead sufficient facts for me to say whether the utility of the defendant's conduct does or does not outweigh the gravity of the alleged harm to the plaintiffs, which is their burden. Most importantly, because all of the plaintiffs' claims are grounded in fraud (except the 'unlawful' claim), the plaintiffs must sufficiently allege that Wallaby's alleged mislabeling would deceive a reasonable customer." Order 17. I have now found that the plaintiffs sufficiently allege that Wallaby's alleged mislabeling would deceive a reasonable customer. Because the plaintiffs and others similarly

United States District Court
Northern District of California

situated care about the presence of added sugar for any number of reasons, including health

reasons, I conclude that the plaintiffs have adequately pleaded that the gravity of the alleged harm

outweighs any utility of Wallaby's conduct.

**B.  The plaintiffs state a claim under the Consumer Legal Remedies Act.**

The CLRA prohibits "[r]epresenting that goods . . . have . . . characteristics, . . . benefits, or

quantities which they do not have" or "[r]epresenting that goods . . . are of a particular standard,

quality, or grade . . . if they are of another."  CAL. CIV. CODE § 1770 (West 2013).  Like the UCL

and FAL, the CLRA is governed by the reasonable consumer test, and the relevant question is

whether members of the public are likely to be deceived.  *Williams*, 552 F.3d at 938.

I have found that the plaintiffs have adequately pleaded a cause of action under the

"fraudulent" prong of the UCL.  Because the "standard for deceptive practices under the

fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA,"

*Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) (Koh, J.), the

plaintiffs have also stated a claim under the CLRA.

**C.  The plaintiffs state a claim under the False Advertising Law.**

The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  *Williams*,

552 F.3d at 938.  The statute prohibits "not only advertising which is false, but also advertising

which, although true, is either actually misleading or which has a capacity, likelihood or tendency

to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (brackets and

quotation marks omitted).  The plaintiff must show that the challenged statements will mislead an

"ordinary consumer acting reasonably under the circumstances."  *Lavie v. Procter & Gamble Co.*,

129 Cal. Rptr. 2d 486, 498 (Ct. App. 2003).  "In determining whether a statement is misleading

under the statute, the primary evidence in a false advertising case is the advertising itself," and the

"misleading character of a given representation appears on applying its words to the facts."

*Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 46 (Ct. App. 2006) (citations and

quotation marks omitted).

The Supreme Court of California has held, "[a] violation of the UCL's fraud prong is also

a violation of the false advertising law."  *In re Tobacco II Cases*, 46 Cal. 4th at 312 n.8.  Because I

1    have found that the plaintiffs adequately state a claim under the "fraudulent" prong of the UCL,

2    they also state a claim under the FAL.

3

4                                    **CONCLUSION**

5            The plaintiffs have standing to bring this action challenging Wallaby's yogurt products that

6    were labeled with "evaporated cane juice" instead of sugar or a similar term.  The plaintiffs may

7    not seek injunctive relief, however, and their prayer for injunctive relief is STRUCK.  Otherwise,

8    the motion to dismiss is DENIED.  Wallaby shall file an answer within 20 days.

9            The parties shall attend a case management conference on April 15, 2014, at 2 p.m., in

10   Courtroom 2, at which a scheduling order will be entered.  The parties shall file a joint case

11   management statement one week in advance addressing all issues that should be discussed at the

12   conference.

13           **IT IS SO ORDERED.**

14   Dated:  March 13, 2014



15

16                                    WILLIAM H. ORRICK
                                     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*